**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONTINENTAL CASUALTY COMPANY,
CNA Plaza
333 S. Wabash Street
Chicago, Illinois 60685, and

THE CONTINENTAL INSURANCE COMPANY, as Successor By Merger To Kansas City Fire And Marine Insurance Company,
CNA Plaza
333 S. Wabash Street
Chicago, Illinois 60685,

Plaintiffs,

*-vs-*

DEAUVILLE ASSOCIATES, LIMITED PARTNERSHIP,
3143 Mount Pleasant Street, NW
Washington, D.C. 20001-2709,

DEAUVILLE LIMITED PARTNERSHIP,
3143 Mount Pleasant Street, NW
Washington, D.C. 20001-2709,

MOUNT PLEASANT STREET REVOCABLE TRUST,
c/o John R. Redmond
7132 Brookstone Court
Potomac, Maryland 20854,

JOHN R. REDMOND,
7132 Brookstone Court
Potomac, Maryland 20854, and

AFLORESI FIGUEROA as Parent and Next Friend of her Minor Son, C.J.F.,
3900 14th Street, NW, Suite 603
Washington, D.C. 20011

Defendants.

Case No. ________________

**COMPLAINT FOR DECLARATORY JUDGMENT**

**JURY TRIAL DEMANDED**

Plaintiffs, Continental Casualty Company ("Continental Casualty") and The Continental Insurance Company as Successor by Merger to Kansas City Fire and Marine Insurance Company ("Kansas City"), for their Complaint against Defendants, Deauville Associates, Limited Partnership ("Deauville Associates"), Deauville Limited Partnership ("Deauville Limited"), Mount Pleasant Street Revocable Trust ("Trust"), John R. Redmond ("Redmond") and Afloresi Figueroa ("Figueroa") as Parent and Next Friend of her Minor Son, C.J.F., allege as follows:

**NATURE OF ACTION**

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, for the purpose of determining an actual controversy among the parties and construing the rights and legal obligations arising under contracts of insurance issued by Plaintiffs, Kansas City and Continental Casualty, to the Named Insured "Deauville Limited Partnership."

2. This controversy involves three (3) insurance policies, two (2) issued by Kansas City and one (1) issued by Continental Casualty, to Deauville Limited. These policies provided business liability coverage to Deauville Limited in accordance with all their terms and conditions. Defendants Deauville Associates, Trust and Redmond (together, the "Deauville Associates Defendants") are not identified as Named Insureds.

3. Kansas City and Continental Casualty are entitled to a declaration that they have no duty to defend to or indemnify either Deauville Limited or the Deauville Associates Defendants under the policies in connection with certain bodily injury claims asserted by Figueroa, allegedly arising out of lead exposure at the Deauville Associates Defendants' premises in Washington D.C., based upon the operation of the policies' terms and conditions, specifically including the Lead Exclusions and other provisions as set forth below.

**THE PARTIES**

4. Prior to October 2006, plaintiff Kansas City was a South Carolina corporation, incorporated under the laws of the State of South Carolina. On October 1, 2006, Kansas City was re-domesticated to Pennsylvania.

5. At all relevant times, Kansas City was authorized to do business in Washington D.C.

6. Effective December 31, 2006, Kansas City Fire and Marine Insurance Company merged with and into The Continental Insurance Company, which succeeded to all of Kansas City's rights, assets, debts and liabilities.

7. Continental Insurance Company is incorporated under the laws of the State of Pennsylvania with its principal place of business in Chicago, Illinois. At all relevant times, Continental Insurance Company was and is authorized to do business in Washington D.C.

8. Continental Casualty Company is incorporated under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. At all relevant times, Continental Casualty was and is authorized to do business in Washington, D.C.

9. Upon information and belief, at all times mentioned herein, Deauville Limited Partnership was and is a domestic partnership, with its headquarters, principal place of business and other business premises located in Washington D.C. Specifically, 3145 Mt. Pleasant Street NW, in Washington DC, is the location of Deauville Limited's principal place of business and the location of the minor Figueroa's alleged injurious exposure.

10. Upon information and belief, at all times mentioned herein, Deauville Associates, Limited Partnership was and is a domestic partnership, with its headquarters, principal place of

business and other business premises located in Washington D.C. Specifically, 3145 Mt. Pleasant Street NW, in Washington DC, is the location of Deauville Associates' principal place of business and the location of the minor Figueroa's alleged injurious exposure.

11. Upon information and belief, Mount Pleasant Street Revocable Trust is a revocable trust, the corpus of which includes the premises located at 3145 Mount Pleasant Street NW, in Washington, D.C.

12. Upon information and belief, John R. Redmond is a natural person who resides in the State of Maryland and regularly transacts business in the District of Columbia. He is alleged to be a general partner of Deauville Associates and trustee for Mount Pleasant Street Revocable Trust and to have owned, operated, managed, supervised and/or maintained the Mount Pleasant Street premises.

13. Upon information and belief, at all times mentioned herein, defendant Figueroa was and is the natural parent of the underlying plaintiff, injured minor "C.J.F.", who was under eight (8) years old in 1996. Defendant Afloresi Figueroa, and the minor C.J.F., allegedly were tenants and residents of the premises located at 3145 Mt. Pleasant Street NW, Apt 202 in Washington D.C. from November of 1995 to September of 1996.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, 2201 and 2202 because there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Further, there is a justiciable case or controversy between Plaintiffs and Defendants with respect to the coverage dispute described in this Complaint.

15. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims involved in this action occurred in Washington D.C., and Defendants are subject to this Court's jurisdiction as a result of their purposeful contacts and transacting business in Washington D.C.

## STATEMENT OF FACTS

### A. The Underlying Figueroa Complaint

16. The underlying plaintiff, on behalf of the minor C.J.F., asserted a claim for bodily injury against the Deauville Associates Defendants arising out of alleged lead exposure. The Figueroa Complaint (Exhibit "A" hereto) was filed in the Superior Court of the District of Columbia on July 12, 2007.

17. The Figueroa Complaint alleges that the minor C.J.F. resided at 3145 Mt. Pleasant Street NW, Apt 202 in Washington D.C. from November of 1995 to September of 1996. During this time, the minor C.J.F. allegedly was "frequently exposed to toxic lead-based paint and ingested lead-based paint chips and powder in and about the apartment. As a consequence of exposure to toxic lead-based paint and ingestions of lead-based paint chips and powder, C.J.F. suffered lead poisoning." (Ex. A, ¶ 12.)

18. The Figueroa Complaint further alleges that, on May 20, 1991, Deauville Associates was cited by the District of Columbia housing authorities for violating the housing code's prohibition against exposing a minor child to flaking, loose and peeling lead-based paint and that Deauville Associates otherwise was aware of lead-based paint housing code violations at the same apartment unit before Figueroas' tenancy at 3145 Mt. Pleasant Street, N.W.

19. The Figueroa Complaint alleges at Paragraph 17, "At all relevant times herein, Defendant Deauville Associates negligently and intentionally failed to prevent the minor Plaintiff's exposure to toxic lead-based paint and to lead-based paint chips and dust on the premises, and negligently and intentionally failed to timely and fully correct the hazardous condition which resulted in the exposure of lead-based paint to the minor Plaintiff. Defendant Deauville Associates' systematic and continuous negligent acts and/or omissions were committed with fraud, deceit, ill will, recklessness, wantonness, oppressiveness, malice, and/or willful disregard to the minor Plaintiff's health. Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to prevent the minor Plaintiff's exposure to toxic lead-based paint and to lead-based paint chips and dust on the premises with a willful disregard to the minor Plaintiff's health. Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to timely and fully correct said hazardous condition on the premises with a willful disregard to the minor Plaintiff's health. Additionally, Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to provide and maintain the premises in a lead-free condition with a willful disregard to the minor Plaintiff's health."

20. As such, on information and belief, the Deauville Associates Defendants already were aware of the dangerous lead conditions allegedly existing at 3145 Mt. Pleasant Street, N.W., at the time Kansas City and Continental Casualty issued the insurance policies at issue in this coverage action.

**B. The Policies**

21. Policy 25 BC 08028780-95 was issued by Kansas City to Deauville Limited Partnership, effective February 1, 1994 to February 1, 1995. This policy was renewed to

February 1, 1996 pursuant to Policy 25 BC 08028780-96, (together with 25 BC 08028780-95, the "Kansas City policies").

22. The Continental Casualty policy, C1 43137450, effective February 1, 1996 to February 1, 1997, also was issued to Deauville Limited Partnership.

23. To date, plaintiffs have been unable to locate complete copies of the Kansas City and Continental Casualty policies. Plaintiffs thus have attached as Exhibit "B" to this Complaint the relevant terms, conditions and exclusions of the policies, to the extent located.

24. Subject to various terms, conditions, definitions, exclusions and limits of liability, the Kansas City and Continental Casualty policies provide for defense and indemnification with respect to claims alleging, *inter alia*, bodily injury that takes place during the policy period and that arises out of an occurrence.

25. The declarations page of both the Kansas City and Continental Casualty policies identifies "Deauville Limited Partnership" as the Named Insured.

26. Moreover, Section II – "Who Is An Insured" – states that, if the Named Insured is a partnership, then its partners, members and spouses also are insured, but only with respect to the conduct of the Named Insured's business; but "no person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations."

27. The coverage afforded under the Kansas City policies is further subject to the following Lead Exclusion:

**Lead Liability Exclusion**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion amends the insurance provided by this policy:

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal injury" arising out of or caused by lead, paint containing lead, or any other material or substance containing lead;

**(2)** Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal injury" caused by lead, paint containing lead, or any other substance or material containing lead;

**(3)** Any loss, cost, expense or damages arising out of any:

**(a)** request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

**(b)** claim or suit relating to, testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

28. The coverage afforded under the Continental Casualty policy is also subject to a Lead Exclusion:

**EXCLUSION – LEAD PAINT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage" arising out of the actual or alleged manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

This endorsement does not apply in Massachusetts.

29. Deauville Limited has submitted the Figueroa lawsuit to Kansas City for coverage under its policy. In response, Kansas City has denied coverage and also has reserved its rights generally and on certain specified grounds, as set forth more fully in correspondence between Deauville Limited and Kansas City.

30. Both Kansas City and Continental Casualty expressly reserve all rights they may have under the policies, including but not limited to the right to raise the applicability of other policy defenses not specifically mentioned herein, as appropriate after further investigation and discovery in this litigation during discovery.

**FIRST CAUSE OF ACTION**

**(No Coverage for Any Persons or Entities Not Insured Under the Policies)**

31. Plaintiffs repeat and reallege each and every allegation made in Paragraphs 1 through 30, inclusive, with the same force and effect as if fully set forth herein.

32. None of the Deauville Associates Defendants is identified in the declarations page of the Kansas City and the Continental Casualty policies as the Named Insured. As such, on information and belief, they are not Named Insureds under the policies.

33. Plaintiffs are entitled to a declaration that they have no duty to defend or to indemnify the Deauville Associates Defendants under the Kansas City and Continental Casualty policies to the extent the Deauville Associates Defendants are not insured under those policies.

**SECOND CAUSE OF ACTION**

**(No Coverage Because of the Lead Exclusions)**

34. Plaintiffs repeat and reallege each and every allegation made in Paragraphs 1 through 33, inclusive, with the same force and effect as if fully set forth herein.

35. Even if the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, Plaintiffs are entitled to a declaration that they have no duty to defend or to indemnify either Deauville Limited or the Deauville Associates Defendants for the underlying Figueroa Complaint based upon the application of the Lead Exclusion in the Kansas City and Continental Casualty policies. Plaintiffs are entitled to a declaration that they have no duty to defend or to indemnify either Deauville Limited or the Deauville Associates Defendants for any bodily injury claim asserting injurious exposure to lead-paint based upon the application of the Lead Exclusion in the Kansas City and Continental Casualty policies.

## THIRD CAUSE OF ACTION

**(No Coverage for Expected and Intended Injury or Damage)**

36. Plaintiffs repeat and reallege each and every allegation made in Paragraphs 1 through 35, inclusive, with the same force and effect as if fully set forth herein.

37. Even if any of the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, coverage would not available to the extent that the acts complained of in the Figueroa Complaint are excluded from coverage under the Expected or Intended Injury Exclusion in the Kansas City and Continental Casualty policies.

38. Plaintiffs are entitled to a declaration that, to the extent that the allegations of the underlying Figueroa Complaint fall within the Expected or Intended Injury Exclusion in the Kansas City and Continental Casualty policies, Plaintiffs have no duty to defend or to indemnify either Deauville Limited or the Deauville Associates Defendants for the Figueroa Complaint.

**FOURTH CAUSE OF ACTION**

**(No Duty to Indemnify Absent an Occurrence)**

39. Plaintiffs repeat and reallege each and every allegation made in Paragraphs 1 through 38, inclusive, with the same force and effect as if fully set forth herein.

40. Even if any of the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, then coverage only would be available to the extent the alleged bodily injury is caused by an "occurrence" under the policies.

41. Plaintiffs are entitled to a declaration that, to the extent that the underlying Figueroa Complaint does not involve a covered "occurrence" as defined in the Kansas City and Continental Casualty policies, Plaintiffs have no duty to indemnify either Deauville Limited or the Deauville Associates Defendants for the Figueroa Complaint.

**FIFTH CAUSE OF ACTION**

**(No Duty to Indemnify Absent Bodily Injury During the Policy Period)**

42. Plaintiffs repeat and reallege each and every allegation made in Paragraphs 1 through 41, inclusive, with the same force and effect as if fully set forth herein.

43. Even if any of the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, coverage would be available under the Kansas City and Continental Casualty policies only for bodily injury that occurs during the policy period.

44. Plaintiffs are entitled to a declaration that, to the extent that the minor Figueroa did not suffer bodily injury during the policy periods of the Kansas City and Continental Casualty policies, Plaintiffs have no duty to indemnify either Deauville Limited or the Deauville Associates Defendants for the Figueroa Complaint.

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

(a) Determining and declaring that neither Deauville Limited nor the Deauville Associates Defendants is entitled to defense or indemnification under the Kansas City and Continental Casualty policies for any of the claims set forth in the Figueroa Complaint.

(b) Determining and declaring that the Deauville Associates Defendants are not entitled to defense or indemnification for the Figueroa Complaint to the extent they are not insured under the Kansas City and Continental Casualty policies.

(c) Even if the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, determining and declaring that neither Deauville Limited nor the Deauville Associates Defendants is entitled to defense or indemnification for the Figueroa Complaint because the Lead Exclusion in the Kansas City and Continental Casualty policies excludes the acts complained of acts from coverage.

(d) Even if the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, determining and declaring that neither Deauville Limited nor the Deauville Associates Defendants is entitled to defense or indemnification for the Figueroa Complaint to the extent the policies' Expected or Intended Injury Exclusion in the Kansas City and Continental Casualty policies excludes the acts complained of from coverage.

(e) Even if the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, determining and declaring that neither Deauville Limited nor the Deauville Associates Defendants is entitled to indemnity coverage for the Figueroa Complaint to the extent there was no "occurrence" under the Kansas City and Continental policies.

(f) Even if the Deauville Associates Defendants are insured under the Kansas City and Continental Casualty policies, determining and declaring that neither Deauville Limited nor the Deauville Associates Defendants is entitled to indemnity coverage for the Figueroa Complaint to the extent there is no bodily injury during the policy periods of the Kansas City and Continental Casualty policies.

(g) Granting plaintiffs Kansas City and Continental Casualty such other and further relief as this Honorable Court may deem just, proper and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

Dated: October 5, 2007

Respectfully submitted,

ROSS, DIXON & BELL, LLP

By: [signature]

Gabriela Richeimer, D.C. Bar No. 462520
2001 K. Street, N.W.
Washington, D.C. 20006-1040
202.662.2000 (p)
202.662.2190 (f)

*Counsel for Plaintiffs*

359257 v 4

# EXHIBIT A

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**AFLORESI FIGUEROA**, as Parent and )
Next Friend of her Minor Son, **C.J.F.**
3900 – 14th Street, NW, Suite 603 )
Washington, D.C. 20011
)
*Plaintiff,*
)
v. C.A. NO.: 2007CA003221 B
) **JURY TRIAL REQUESTED**
**JOHN R. REDMOND**
7312 Brookstone Court )
Potomac, Maryland 20854
Individually, as General Partner of )
Deauville Associates, Limited Partnership,
as Trustee for the Mount Pleasant Street )
Revocable Trust, and as Managing Member
for Deauville Partners, L.L.C. )

and )

**DEAUVILLE ASSOCIATES, LIMITED** )
**PARTNERSHIP**
3143 Mount Pleasant Street, NW )
Washington, D.C. 20001-2709
Serve On: John R. Redmond )
7312 Brookstone Court
Potomac, Maryland 20854 )

and )

**MOUNT PLEASANT STREET** )
**REVOCABLE TRUST**
Serve On: John R. Redmond )
7312 Brookstone Court
Potomac, Maryland 20854 )

and )

**DEAUVILLE PARTNERS, L.L.C.** )
1600 Market Street, Ste. 1410
Philadelphia, P.A. 19103-7206 )

Serve On: CT Corporation System )
1015 15th Street, N.W.
Ste. 1000 )
Washington, D.C. 20005
)
*Defendants.*
)

**FIRST AMENDED COMPLAINT**

Comes now the Plaintiff, Afloresi Figueroa, as parent and as next friend of her minor son, C.J.F., by and through her attorneys, Thomas C. Cardaro, Jeffrey L. Peek, C. Drew Fritch, and Cardaro & Peek, L.L.C., and sues John R. Redmond, Deauville Associates, Limited Partnership, Mount Pleasant Street Revocable Trust, and Deauville Partners, L.L.C., stating as follows:

**COUNT I**
**(Negligence)**

1. Jurisdiction of the Court is invoked pursuant to D.C. Code §11-921.

2. Plaintiff Afloresi Figueroa is the natural parent of the injured minor child, C.J.F. She brings this suit as parent and next friend of the minor child. At all relevant times herein, C.J.F. was under the age of eight (8) years.

3. The Defendants carry on a normal course of business, are employed, and habitually engage in a vocation in the District of Columbia. The Defendants' negligence and the minor Plaintiff's injury occurred in the District of Columbia. For these reasons, venue is appropriate in the District of Columbia.

4. At all relevant times herein, Defendant John R. Redmond was the General Partner of Defendant Deauville Associates, Limited Partnership and the Trustee for the Defendant Mount Pleasant Street Revocable Trust. As such, Defendant John R. Redmond, through his

agents (actual and/or apparent), servants and/or employees, and in conjunction with the other Defendants, owed to the minor Plaintiff a duty of reasonable care to protect C.J.F. from exposure to the toxic lead-based paint on the rental property at issue.

5. At all relevant times, Defendant Deauville Associates, Limited Partnership was registered in the District of Columbia, and owned, operated, and/or managed rental property in the District of Columbia. As such, Defendant Deauville Associates, Limited Partnership, by itself and through its agents (actual and/or apparent), servants and/or employees, and in conjunction with the other Defendants, owed to the minor Plaintiff a duty of reasonable care to protect C.J.F. from exposure to the toxic lead-based paint on the rental property at issue.

6. At all relevant times, Defendant Mount Pleasant Street Revocable Trust was a revocable trust, the corpus of which included the premises located at 3145 Mt. Pleasant Street, NW, Apt. 202, Washington, D.C. At all relevant times, Defendant Deauville Associates, Limited Partnership was the sole beneficiary of the Mount Pleasant Street Revocable Trust. As such, Defendant Mount Pleasant Street Revocable Trust, through its agents (actual and/or apparent), servants and/or employees, and in conjunction with the other Defendants, owed to the minor Plaintiff a duty of reasonable care to protect C.J.F. from exposure to the toxic lead-based paint on the rental property at issue.

7. At all relevant times herein, Defendants John R. Redmond, Deauville Associates, Limited Partnership, and Mount Pleasant Street Revocable Trust (hereafter jointly referred to as "Defendants Deauville Associates") owned, operated, managed, supervised, and/or maintained the premises located at 3145 Mt. Pleasant Street, NW, Apt. 202, Washington, D.C. ("3145 Mt. Pleasant Street"), which Defendant Deauville Associates offered for rental to the Plaintiff and

minor Plaintiff. As such, Defendant Deauville Associates had a duty to use reasonable care to protect C.J.F. from exposure to the toxic lead-based paint on the premises. The presence of these defects in and about the apartment posed a clear risk and danger that foreseeably could cause C.J.F. great harm. Defendant Deauville Associates knew or should have known of this danger prior to the time that C.J.F. was a resident of the property and became lead poisoned.

8. From November 1995 through approximately September 1996, C.J.F. resided with his mother at 3145 Mt. Pleasant Street. At all relevant times herein, Defendant Deauville Associates had actual and constructive notice and were aware that the Plaintiff would be and was living on the premises with her minor son, C.J.F. At all relevant times herein, Defendant Deauville Associates had actual and constructive notice that C.J.F. was a minor child under the age of eight (8) years. The lease agreement signed by Defendant Deauville Associates expressly documented that two (2) minor children would reside at 3145 Mt. Pleasant Street.

9. Prior to the Plaintiff and minor Plaintiff's tenancy at 3145 Mt. Pleasant Street, Apt. 202, District of Columbia Housing inspectors found lead-based paint peeling, chipping and flaking throughout the property in areas within the reach of the minor Plaintiff. Specifically, inter alia, on May 20, 1991, the property located at 3145 Mt. Pleasant Street, Apt. 202, tested positive in eighteen (18) different locations throughout the premises for loose, flaking and peeling lead-based paint chips and dust. To the best of Plaintiff's information and belief, Defendant Deauville Associates was cited for violating the District of Columbia housing code's prohibition against exposing a minor child to flaking, loose and peeling lead-based paint.

10. Despite having received lead-based paint housing code violations for the same apartment unit, Defendant Deauville Associates subsequently leased 3145 Mt. Pleasant Street,

Apt. 202 to the Plaintiff and her minor children – with knowledge that C.J.F. was under eight (8) years of age.

11. During the Plaintiff and minor Plaintiff's tenancy at 3145 Mt. Pleasant Street, toxic lead-based paint and flaking, peeling and loose lead-based paint chips and powder were exposed throughout the property including, but not limited to window sills, window frames, window sashes, living room, cooking room, common hallway, and other areas throughout the property. The lead-based paint chips and powder were left in areas easily and foreseeably accessible to small children, such as the minor Plaintiff.

12. While residing at 3145 Mt. Pleasant Street, C.J.F. was frequently exposed to toxic lead-based paint and ingested lead-based paint chips and powder in and about the apartment. As a consequence of exposure to toxic lead-based paint and ingestion of lead-based paint chips and powder, C.J.F. suffered lead poisoning.

13. Defendant Deauville Associates and/or its agents, servants or employees regularly entered the property prior to and during the Plaintiff and minor Plaintiff's tenancy and observed its condition, including loose, flaking and peeling lead-based paint chips and dust throughout the premises.

14. During the Plaintiff and minor Plaintiff's tenancy at 3145 Mt. Pleasant Street, and prior to the time that C.J.F. became lead poisoned, Defendant Deauville Associates and/or its agents, servants or employees entered the property at the request of the Plaintiff on at least three separate occasions and observed loose, flaking and peeling lead-based paint chips and dust throughout the premises. After each visit to the premises, Defendant Deauville Associates failed to take any action to correct the hazardous condition endangering C.J.F.'s health.

15. Defendant Deauville Associates either knew or should have known that the property located at 3145 Mt. Pleasant Street contained flaking and peeling lead paint which Defendant Deauville Associates either knew or should have known was hazardous to the health of C.J.F. Additionally, Defendant Deauville Associates either knew or should have known that the property located at 3145 Mt. Pleasant Street contained lead-based paint in a quantity sufficient to constitute a hazard to the health of the minor Plaintiff. Defendant Deauville Associates possessed or should have possessed this information prior to the time that C.J.F. became lead poisoned, and thus had a reasonable opportunity to correct the hazardous condition prior to C.J.F.'s lead poisoning.

16. Defendant Deauville Associates, by itself and through its agents (actual and/or apparent), servants and/or employees, breached its duty to the minor Plaintiff by exposing C.J.F. to toxic lead-based paint and to flaking and peeling lead-based paint chips and powder by, inter alia, negligently and carelessly:

(a) failing to remove the lead-based paint, powder, and paint chips on the property prior to and during minor Plaintiff's tenancy;

(b) failing to inform Plaintiff of the existence of a dangerous level of lead-based paint in the apartment;

(c) failing to properly inspect the apartment for the existence of lead-based paint;

(d) failing to timely remove the dangerous lead-based paint from the apartment;

(e) failing to properly maintain the property in order to prevent exposure to lead-based paint;

(f) failing to comply with the District of Columbia housing code and other statutory provisions which prohibit the existence of flaking, loose or peeling paint; restrict the use of lead-based paint on the walls and other surfaces in a quantity sufficient to constitute a hazard to the health of the minor Plaintiff; and otherwise require residential property to be provided and maintained in a lead-

free condition when a minor child under the age of eight (8) years resides therein; and

(g) otherwise acting negligently and carelessly.

17. At all relevant times herein, Defendant Deauville Associates negligently and intentionally failed to prevent the minor Plaintiff's exposure to toxic lead-based paint and to lead-based paint chips and dust on the premises, and negligently and intentionally failed to timely and fully correct the hazardous condition which resulted in the exposure of lead-based paint to the minor Plaintiff. Defendant Deauville Associates' systematic and continuous negligent acts and/or omissions were committed with fraud, deceit, ill will, recklessness, wantonness, oppressiveness, malice, and/or willful disregard to the minor Plaintiff's health. Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to prevent the minor Plaintiff's exposure to toxic lead-based paint and to lead-based paint chips and dust on the premises with a willful disregard to the minor Plaintiff's health. Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to timely and fully correct said hazardous condition on the premises with a willful disregard to the minor Plaintiff's health. Additionally, Defendant Deauville Associates intentionally, fraudulently, and maliciously refused to provide and maintain the premises in a lead-free condition with a willful disregard to the minor Plaintiff's health.

18. Defendant Deauville Associates' negligent acts and/or omissions directly and proximately caused C.J.F. to suffer severe and irreversible injury including, but not limited to, cognitive impairment, pain, anguish, mental distress, and permanent physical, mental and developmental injury, as well as economic injury for which claim is made. Minor Plaintiff has in the past and will in the future undergo otherwise unnecessary medical care and treatment and

incur other expenses, damages, and losses for which claim is made. In addition, the minor Plaintiff has lost his ability to enjoy normal life activities as both a normal child and as an adult. Further, his ability to seek and hold gainful employment has been significantly impaired.

19. The Plaintiff alleges that the negligence of Defendant Deauville Associates was the proximate cause of the minor Plaintiff's serious and irreversible injury, permanent damages, disability, and economic damages.

20. The Plaintiff and minor Plaintiff were in no way contributorily negligent. Prior to C.J.F.'s lead poisoning, the Plaintiff and minor Plaintiff were unaware of the unreasonably dangerous and defective condition of the property located at 3145 Mt. Pleasant Street. Further, the Plaintiff and minor Plaintiff did not substantially alter the property located at 3145 Mt. Pleasant Street.

WHEREFORE, Plaintiff, Afloresi Figueroa, as parent and as next friend of her minor son, C.J.F., demands judgment against Defendant Deauville Associates, jointly and severally, in the full sum of Five Million Dollars ($5,000,000.00) as compensatory damages, Ten Million Dollars ($10,000,000.00) as punitive damages, plus costs, interest, and what other relief this Court deems appropriate.

**COUNT II**
**(Negligence Per Se)**

21. Plaintiff hereby incorporates paragraphs 1-20.

22. At all relevant times herein, the District of Columbia housing code and other statutory provisions created a regulatory standard designed to protect the minor Plaintiff from exposure to lead-based paint to prevent lead poisoning and other injury.

23. Pursuant to the District of Columbia housing code and other statutory provisions, Defendant Deauville Associates, prior to and during the Plaintiff and minor Plaintiff's tenancy, was under an affirmative duty to prevent C.J.F.'s exposure to toxic lead-based paint and to prevent C.J.F.'s exposure to lead-based paint chips and dust at 3145 Mt. Pleasant Street. Additionally, prior to and during the Plaintiff and minor Plaintiff's tenancy, Defendant Deauville Associates was under an affirmative regulatory and statutory duty to conduct a reasonable inspection of the property located at 3145 Mt. Pleasant Street; to test the property for possible defects such as the existence of toxic lead-based paint and the existence of flaking, loose or peeling lead-based paint chips and/or dust; to prevent the occurrence of lead-based paint in a quantity sufficient to constitute a hazard to the health of the minor Plaintiff; to prevent the occurrence of flaking, loose or peeling lead-based paint chips and/or dust; to timely and fully correct any hazardous condition; and to perform any and all reasonable measures to provide and maintain the property located at 3145 Mt. Pleasant Street in a lead-free condition.

24. Defendant Deauville Associates negligently and inexplicably violated the District of Columbia housing code and other statutory provisions by failing to prevent minor Plaintiff's exposure to toxic lead-based paint and lead-based paint chips and dust on the premises, and by failing to timely and fully correct said hazardous condition which resulted in the minor Plaintiff suffering lead-poisoning and other injury.

25. Defendant Deauville Associates' negligent acts and/or omissions directly and proximately caused C.J.F. to suffer severe and irreversible injury including, but not limited to, cognitive impairment, pain, anguish, mental distress, and permanent physical, mental and developmental injury, as well as economic injury for which claim is made. Minor Plaintiff has

in the past and will in the future undergo otherwise unnecessary medical care and treatment and incur other expenses, damages, and losses for which claim is made. In addition, the minor Plaintiff has lost his ability to enjoy normal life activities as both a normal child and as an adult. Further, his ability to seek and hold gainful employment has been significantly impaired

WHEREFORE, Plaintiff, Afloresi Figueroa, as parent and as next friend of her minor son, C.J.F., demands judgment against Defendant Deauville Associates, jointly and severally, in the full sum of Five Million Dollars ($5,000,000.00) as compensatory damages, Ten Million Dollars ($10,000,000.00) as punitive damages, plus costs, interest, and what other relief this Court deems appropriate.

**COUNT III**
**(Breach of Warranty of Habitability)**

26. Plaintiff hereby incorporates paragraphs 1-25.

27. At all relevant times herein, under the terms of the rental lease and the District of Columbia law, Defendant Deauville Associates warranted to the Plaintiff that 3145 Mt. Pleasant Street was in compliance with the District of Columbia housing code and other statutory provisions and that 3145 Mt. Pleasant Street was safe and fit for human habitation.

28. Defendant Deauville Associates breached its express and implied warranty of habitability by leasing 3145 Mt. Pleasant Street to the Plaintiff, despite the fact that Defendant Deauville Associates knew or should have known that the property contained toxic lead-based paint and flaking, loose and/or peeling lead-based paint chips and dust which endangered the life, health and safety of C.J.F.

29. Defendant Deauville Associates also breached its express and implied warranty of habitability by failing to exercise reasonable care to maintain 3145 Mt. Pleasant Street safe

and fit for human habitation, despite the fact that Defendant Deauville Associates knew or should have known that the property contained toxic lead-based paint and flaking, loose and/or peeling lead-based paint chips and dust which endangered the life, health and safety of C.J.F.

30. As a direct and proximate result of Defendant Deauville Associates' breach of warranty of habitability, C.J.F. suffered severe and irreversible injury including, but not limited to, cognitive impairment, pain, anguish, mental distress, and permanent physical, mental and developmental injury, as well as economic injury for which claim is made. Minor Plaintiff has in the past and will in the future undergo otherwise unnecessary medical care and treatment and incur other expenses, damages, and losses for which claim is made. In addition, the minor Plaintiff has lost his ability to enjoy normal life activities as both a normal child and as an adult. Further, his ability to seek and hold gainful employment has been significantly impaired.

WHEREFORE, Plaintiff, Afloresi Figueroa, as parent and as next friend of her minor son, C.J.F., demands judgment against Defendant Deauville Associates, jointly and severally, in the full sum of Five Million Dollars ($5,000,000.00) as compensatory damages, Ten Million Dollars ($10,000,000.00) as punitive damages, plus costs, interest, and what other relief this Court deems appropriate.

**COUNT IV**
**(Successor Liability)**

31. Plaintiff hereby incorporates paragraphs 1-30.

32. Defendant Deauville Partners, L.L.C., ("Defendant Deauville Partners") is a limited liability corporation duly registered in the District of Columbia, and owns, operates, and/or manages rental property in the District of Columbia. Defendant Deauville Partners is the current owner, manager, and/or operator of the property located at 3145 Mt. Pleasant Street.

33. To the best of Plaintiff's information and belief, in May of 2002 Defendant Deauville Partners purchased all or substantially all of Defendant Deauville Associates' assets, including the property located at 3145 Mt. Pleasant Street, NW, Washington, D.C. To the best of Plaintiff's information and belief, Defendant Deauville Associates ceased business operations and became an inactive entity shortly after selling all of its assets or substantially all of its assets to Defendant Deauville Partners.

34. The Plaintiff alleges that after the purchase of all or substantially all of Defendant Deauville Associates' assets, Defendant Deauville Partners operated as and continues to operate as a mere continuation of Defendant Deauville Associates. To the best of Plaintiff's information and belief, Defendant Deauville Partners maintains all or substantially all of Defendant Deauville Associates' former employees to manage, supervise, and/or service the property located at 3145 Mt. Pleasant Street; utilizes the property located at 3145 Mt. Pleasant Street as a residential apartment complex in the same manner or substantially same manner as Defendant Deauville Associates; retains the same or substantially the same name for the apartment complex at issue as used by Defendant Deauville Associates; continues the same or substantially same general business operations as utilized by Defendant Deauville Associates; retains the same or substantially the same assets purchased from Defendant Deauville Associates; represents itself as the same or substantially the same business entity as Defendant Deauville Associates to the tenants of the property located at 3145 Mt. Pleasant Street; and otherwise conducts itself as a continuation of and/or substantial continuation of Defendant Deauville Associates. As such, the Plaintiff alleges that Defendant Deauville Partners is the successor corporation of Defendant Deauville Associates and is responsible for

all of Defendant Deauville Associates' past and current lead-based paint hazards and/or liabilities pertaining to the apartment complex at issue.

35. The Plaintiff alleges that prior to purchasing the property located at 3145 Mt. Pleasant Street, Defendant Deauville Partners was provided with all available records and reports pertaining to lead-based paint hazards and/or liabilities regarding the apartment complex at issue, including a lead-based paint Notice of Violation and other related records documenting Defendant Deauville Associates' negligent failure to prevent the minor Plaintiff's exposure to lead-based paint.

36. The Plaintiff alleges that prior to purchasing the property located at 3145 Mt. Pleasant Street, Defendant Deauville Partners had knowledge or constructive knowledge of all past and current lead-based paint hazards and/or liabilities regarding the apartment complex at issue, including Defendant Deauville Associates' liability for negligently failing to prevent the minor Plaintiff's exposure to lead-based paint.

37. To the best of Plaintiff's information and belief, pursuant to the terms of the purchase agreement including all addendums, attachments, notices, disclosures, and provisions thereof, the deed, and all other documents which consummated the sale and transfer of the property located at 3145 Mt. Pleasant Street, Defendant Deauville Partners expressly and/or impliedly assumed all past and current liabilities of Defendant Deauville Associates, including all past and current lead-based paint hazards and/or liabilities regarding the apartment complex at issue. The Plaintiff also alleges that Defendant Deauville Partners, through its actions, conduct and knowledge, before, during and after the sale and transfer of the property located at

3145 Mt. Pleasant Street, expressly and/or impliedly assumed all past and current lead-based paint hazards and/or liabilities regarding the apartment complex at issue.

38. Because Defendant Deauville Partners is a continuation of and/or substantial continuation of Defendant Deauville Associates, and because Defendant Deauville Partners expressly and/or impliedly assumed all of Defendant Deauville Associates' past and current lead-based paint hazards and/or liabilities regarding the property located at 3145 Mt. Pleasant Street, Defendant Deauville Partners is jointly and severally liable for all injuries suffered by the minor Plaintiff as a result of Defendant Deauville Associates' negligent and intentional failure to prevent the minor Plaintiff's exposure to toxic lead-based paint and to lead-based paint chips and dust on said property, as more fully described in Counts I, II and III, above.

WHEREFORE, Plaintiff, Afloresi Figueroa, as parent and as next friend of her minor son, C.J.F., demands judgment against Defendant Deauville Partners, jointly and severally, in the full sum of Five Million Dollars ($5,000,000.00) as compensatory damages, Ten Million Dollars ($10,000,000.00) as punitive damages, plus costs, interest, and what other relief this Court deems appropriate.

Respectfully submitted,

/s/ Thomas C. Cardaro

Thomas C. Cardaro (#418330)
Jeffrey L. Peek (#470442)
C. Drew Fritch (#485704)
***Cardaro & Peek, L.L.C.***
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
(202) 628-7778
***Attorneys for the Plaintiff***

**JURY DEMAND**

Plaintiff hereby requests that her case be tried before a jury.

/s/ Thomas C. Cardaro
Thomas C. Cardaro

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July 2007, a copy of the foregoing Plaintiff's First Amended Complaint was served via electronic transmission to the following:

Joseph F. Cunningham, Esq.
*Cunningham & Associates, PLC*
1600 Wilson Boulevard, Ste. 905
Arlington, VA 22209

Roger D. Luchs, Esq.
*Greenstein, DeLorme & Luchs, P.C.*
1620 L Street, N.W., Ste. 900
Washington, D.C. 20036

/s/ Thomas C. Cardaro
Thomas C. Cardaro

# EXHIBIT B

business choice℠

## Common Policy Declarations

Your Policy is issued by the Stock Company(ies) indicated below in Your Coverage Overview which are members or affiliates of Continental Insurance. Their administrative offices are at One Continental Drive, Cranbury, New Jersey 08570-0001

## Policy Information

Named Insured DEAUVILLE LIMITED PARTNERSHIP

Account Number 00269162

Mailing Address 3143 MOUNT PLEASANT STREET NW WASHINGTON DC 20010-2709

Policy Number 25 BC 08028780-95

Renewal Of BOX 07244432

Description of Your Business: APARTMENT

Payment plan OPTIBIL-QUARTERLY

## Policy Period

Your Policy is in effect from FEBRUARY 01, 1994 to FEBRUARY 01, 1995 at 12:01 A.M. Standard Time at your mailing address shown above.

## Your Insurance Representative

ASSURANCE INCORPORATED
5025 DRUID DRIVE
KENSINGTON MD 208951223

Telephone (301) 942-6166
Producer Code 19072263
Business Team 39N

## Your Coverage Overview

Your Policy consists of the following coverage parts. The company issuing it and a premium are indicated for each coverage part. This premium may be subject to adjustment. In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

| Coverage Part | Company | Premium |
|---|---|---|
| Commercial Property | | |
| Commercial General Liability | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Auto | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Excess Liability | Kansas City Fire & Marine Ins. Co. | Included |
| | | |
| | | |
| | | |
| Your Premium For This Policy is | | $19,543 |
| Add Companion Policy: | | |
| TOTAL PREMIUM | | $19,543 |

110002258C 08028019072261100000000575





COMPANY COPY

02/17/94

business choice SM

**Common Policy Declarations**

Policy No. 25 BC 08028780-95

**Information About Premium Computation**
Any premium shown in the Declarations for a Policy Period extending beyond one year was computed based on rates in effect at the time the Policy was issued. On each renewal, continuation, or anniversary of the effective date of this Policy, we will compute the premium for each Coverage Part in accordance with our rates and rules then in effect.

**Audit Information**
An annual audit is required for the following Coverage(s):

**Forms and Endorsements**
The Form(s) and Endorsement(s) applicable to all Coverage Parts and made a part of this Policy at the time it was issued are:

SIL 0017 1185

**Policy Summary**
These Declarations together with the Common Policy Conditions, Coverage Part Declarations, Coverage Form(s) and forms and endorsements, if any issued to form a part thereof, complete the above numbered Policy.

The Coverage Part Declarations for each of the Coverage Forms will indicate the coverages and the applicable limits provided by that Coverage Form.

Countersigned by: ____________________ Date: __________

110002258C 0802801907226510000000374



COMPANY COPY




**Common Policy Declarations**

Policy No. 25 BC 08028780-95

Named Insured

DEAUVILLE LIMITED PARTNERSHIP

C/O WASHINGTON REALTY







business ✔choice℠

**Commercial Property Coverage Part Declarations**
**Property Coverages/Optional Coverages**

Policy No. 25 BC 08028780-95

| Premises Number | Coverages and Descriptions of Premises | Value Used To Determine Premium | Premises Limit of Insurance |
|---|---|---|---|
| | Building(s) (at these premises) | | |
| 001 | 3143-45 MT PLEASANT STREET NW WASHINGTON DC 20010 | $3,463,000 | $3,463,000 |
| | Business Personal Property | | |

| | | | |
|---|---|---|---|
| | Building(s) (at these premises) | | |
| | Business Personal Property | | |

| | |
|---|---|
| | Mortgage Holder's Name and Address |
| 001 | SUBURBAN MORTG. ASSOC., INC.<br>7316 WISCONSIN AVE.<br>NW #208<br>BETHESDA MD 20814 |

NOTE: Your deductible is $ 1000 . The seasonal increase for Business Personal Property is 25 %.

Forms Or Endorsements Applicable To Specific Premises:

Prem. 001 BC 0001 0193

Forms Or Endorsements Applicable To The Commercial Property Coverage Part:

IL 0278 0489

11000225BC 08028019072265100000000576

BDEC 4 Ed. 1/93



COMPANY COPY

**business choice** SM

## Commercial Property Supplemental Declarations

Policy no. 25 BC 08028780-95

The Additional Coverages, Coverage Extensions and Limitations listed below are described in your Commercial Property Coverage Form. Except for the Building Glass Coverage Extension, the Limits of Insurance shown below for each of the Additional Coverages and Coverage Extensions are in addition to the Premises Limit of Insurance. The Limits of Insurance shown below for the Building Glass Coverage Extension and for each of the Limitations are not additional insurance.

If you purchase additional Limits of Insurance for any Additional Coverage, Coverage Extension or Limitation, that varies by premises, the Limits of Insurance stated in the Commercial Property-Optional Limits Declarations will be total limits including the applicable Limits of Insurance shown below.

| Additional Coverages | Limits of Insurance | | |
|---|---|---|---|
| Additional Debris Removal | $ | 10,000 | per premises |
| Fire Department Service Charge | $ | 15,000 | per premises |
| Pollutant Clean Up and Removal | $ | 10,000 | per premises |
| Business Income and Extra Expense | | Unlimited for 365 days | |
| Supplemental Business Income and Extra Expense: | | | |
| Miscellaneous Dependent Business Property | $ | 10,000 | per occurrence |
| Retailer's Product Impairment | $ | 10,000 | per occurrence |
| Newly Acquired Locations | $ | 100,000 | per occurrence |
| Crime: | | | |
| Employee Dishonesty (Money and Securities) | $ | 10,000 | per occurrence |
| Money and Securities | $ | 10,000 | inside the premises |
| | $ | 2,000 | outside the premises |
| Money Orders and Counterfeit Paper Currency | $ | 1,000 | per occurrence |
| Forgery | $ | 1,000 | per occurrence |
| **Coverage Extensions** | | | |
| Newly Acquired or Constructed Buildings | $ | 1,000,000 | per occurrence |
| Personal Property at Newly Acquired Locations | $ | 500,000 | per occurrence |
| Personal Effects | $ | 2,500 | per person |
| | $ | 10,000 | per occurrence |
| Valuable Papers and Records | $ | 10,000 | per premises |
| Accounts Receivable | $ | 10,000 | per premises |
| Property Off-Premises | $ | 10,000 | per occurrence |
| Property In Transit | $ | 10,000 | per occurrence |
| Outdoor Trees, Shrubs and Plants | $ | 1,000 | per item |
| | $ | 10,000 | per occurrence |
| Spoilage Coverage | $ | 1,000 | per premises |
| Building Glass-Tenant's | $ | 250 | per item |
| | $ | 2,500 | per occurrence |
| Electronic Data Processing Equipment, Data & Media | $ | 5,000 | per premises |
| | $ | 2,500 | in transit |
| Fine Arts | $ | 500 | per item |
| | $ | 2,500 | per occurrence |
| Automatic Fire Suppression System Recharge Expense | $ | 5,000 | per occurrence |
| Cost of Preparing a Statement of Loss | $ | 2,000 | per occurrence |
| **Limitations** | | | |
| Theft of Furs | $ | 2,500 | per item |
| | $ | 5,000 | per occurrence |
| Theft of Jewelry, Watches, Precious Stones, Alloys and Metals | $ | 2,500 | per item |
| | $ | 5,000 | per occurrence |
| Theft of Stamps, Tickets and Letters of Credit | $ | 1,000 | per occurrence |

Copyright, The Continental Corporation, 1992 Includes copyrighted material of the Insurance Services Office used with its permission.

BDEC 2 Ed. 1/93




COMPANY COPY

11002258C 0802801907226310000000577



## Commercial General Liability Coverage Part Declarations

Policy No. 25 BC 08028780-95

### Limits of Insurance

THIS COVERAGE PART CONTAINS AGGREGATE LIMITS; REFER TO SECTION III-LIMITS OF INSURANCE FOR DETAILS

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $1,000,000 | |
| Personal and Advertising Injury Limit | $1,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ 5,000 | Any One Person |

### Form of Business

__ Individual
__ Joint Venture

X Partnership
__ Organization (Other Than Partnership or Joint Venture)

### Premium

Advance Premium $Included

### Forms and Endorsements

Form(s) and Endorsement(s) attached to this policy at the time of its issuance and whose numbers appear in the Declarations Page of this Coverage Part affect your coverage even though the form(s) or endorsement(s) themselves may not so indicate.

BC 2201 0193 CG 0001 1188 CG 2011 1185 IL 0021 1185
IL 0278 0489 SCG 22501A 0691 SCG 22503A 0689 SCG 22510 0191

11000225BC 08028019072265100000000578





POLICY NUMBER: 25 BC 08U28780-95 COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

1. Designation of Premises (Part Leased to You): #1

2. Name of Person or Organization (Additional Insured): Washington Realty, Inc.

3. Additional Premium: Included

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.





Copyright, Insurance Services Office, Inc., 1984

02/24/94 vsb




Commercial Excess Liability Coverage Part Declarations

Policy No. 25 BC 08028780-95

Limits of Insurance

THIS COVERAGE PART CONTAINS AGGREGATE LIMITS; REFER TO SECTION III-LIMITS OF INSURANCE FOR DETAILS

| | |
|---|---|
| General Aggregate Limit | $1,000,000 |
| Products-Completed Operations Aggregate Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |

**Self-Insured Retention:**

Each Occurrence $ 5,000

**Underlying Insurance Schedule:**

| Required Underlying Insurance | Minimum Underlying Limits of Insurance |
|---|---|
| Automobile Liability: | Bodily Injury and Property Damage<br>$500,000 Each Accident |
| Commercial General Liability: | $1,000,000 General Aggregate<br>$500,000 Products-Completed Operations Aggregate<br>$500,000 Personal and Advertising Injury<br>$500,000 Each Occurrence |
| Employers Liability: | Bodily Injury by Accident<br>$100,000 Each Accident<br>Bodily Injury by Disease<br>$500,000 Policy Limit<br>$100,000 Each Employee |

**Advance Premium** $ Included

**Forms and Endorsements**

Form(s) and Endorsement(s) attached to this policy at the time of its issuance and whose numbers appear in the Declarations Page of this Coverage Part affect your coverage even though the form(s) or endorsement(s) themselves may not so indicate.

BC 0003 0193     IL 0278 0489

BC Chg ... renewal

1100022SBC 08028019072265100000000581



COMPANY COPY



business ✓choice℠

**Commercial General Liability Coverage Part Declarations**

Policy No. ____________________

**Limits of Insurance**

**THIS COVERAGE PART CONTAINS AGGREGATE LIMITS; REFER TO SECTION III-LIMITS OF INSURANCE FOR DETAILS**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $__________ | |
| Products-Completed Operations Aggregate Limit | $__________ | |
| Personal and Advertising Injury Limit | $__________ | |
| Each Occurrence Limit | $__________ | |
| Fire Damage Limit | $__________ | Any One Fire |
| Medical Expense Limit | $__________ | Any One Person |

**Form of Business**

__ Individual
__ Joint Venture
__ Partnership
__ Organization (Other Than Partnership or Joint Venture)

**Premium**

**Advance Premium $**____________

**Forms and Endorsements**

Form(s) and Endorsement(s) attached to this policy at the time of its issuance and whose numbers appear in the Declarations Page of this Coverage Part affect your coverage even though the form(s) or endorsement(s) themselves may not so indicate.





QUICK REFERENCE
READ YOUR POLICY CAREFULLY.

# Commercial General Liability Coverage Part

DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

Beginning on Page


SECTION I - COVERAGES

| | | |
|---|---|---|
| Coverage A - Bodily Injury and Property Damage Liability | Insuring Agreement | 1 |
| | Exclusions | 1 |
| Coverage B - Personal and Advertising Injury Liability | Insuring Agreement | 4 |
| | Exclusions | 4 |
| Coverage C - Medical Payments | Insuring Agreement | 5 |
| | Exclusions | 5 |

Supplementary Payments ........ 5

SECTION II - WHO IS AN INSURED ........ 6

SECTION III - LIMITS OF INSURANCE ........ 7

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS ........ 7

Bankruptcy ........ 7
Duties In The Event of Occurrence, Claim or Suit ........ 7
Legal Action Against Us ........ 8
Other Insurance ........ 8
Premium Audit ........ 9
Representations ........ 9
Separation of Insureds ........ 9
Transfer of Rights of Recovery Against Others To Us ........ 9
When We Do Not Renew ........ 9

SECTION V - DEFINITIONS ........ 9

COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

ENDORSEMENTS (If Any)


 Copyright, Insurance Services Office, Inc., 1982, 1988

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions.**

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.


Copyright, Insurance Services Office, Inc., 1982, 1988

d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

 Copyright, Insurance Services Office, Inc., 1982, 1988 

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

h. "Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

 Copyright, Insurance Services Office, Inc., 1982, 1988 

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work;" or

(3) "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury:"

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsi

(2) Arising out of oral or written publicatio of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

 Copyright, Insurance Services Office, Inc., 1982, 1988 

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury:"

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

 Copyright, Insurance Services Office, Inc., 1982, 1988 

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit."

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury," or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

      (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

      (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

   b. Any person (other than your employee), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but o with respect to duties as such. T... representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-employee of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if th

 Copyright, Insurance Services Office, Inc., 1982, 1988 

is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."



2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard;" and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Claim Or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

 Copyright, Insurance Services Office, Inc., 1982, 1988 

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected

unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

(2) That is Fire insurance for premises rente to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

 Copyright, Insurance Services Office, Inc., 1982, 1988 

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.


Copyright, Insurance Services Office, Inc., 1982, 1988

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

   b. Your fulfilling the terms of the contract or agreement.

6. "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving or failing to prepare or approve maps, drawings, opinio. reports, surveys, change orders, desig.. or specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

   d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.


Copyright, Insurance Services Office, Inc., 1982, 1988

7. "Loading or unloading" means the handling of property:
   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"
   b. While it is in or on an aircraft, watercraft or "auto;" or
   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."
8. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
   b. Vehicles maintained for use solely on or next to premises you own or rent;
   c. Vehicles that travel on crawler treads;
   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
      (1) Power cranes, shovels, loaders, diggers or drills; or
      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
      (2) Cherry pickers and similar devices used to raise or lower workers;
   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"
      (1) Equipment designed primarily for:
         (a) Snow removal;
         (b) Road maintenance, but not construction or resurfacing;
         (c) Street cleaning;
      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
   e. Oral or written publication of material that violates a person's right of privacy.

11.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

 Copyright, Insurance Services Office, Inc., 1982, 1988 

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

13. "Suit" means a civil proceeding in which damage because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materia[illegible] parts or equipment furnished in connect[illegible] with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b. The providing of or failure to prov[illegible] warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1982, 1988 

Form No. SDIS 83

# Important Notice to Policyholders
# Lead Liability Exclusion

This notice is not part of your policy. READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered. Only the provisions of your policy determine the scope of your insurance protection. Consult your insurance representative for details.

A major change introduced by this Lead Liability Exclusion endorsement is:

Scope of Coverage. This endorsement excludes from your policy all liability arising out of or caused by lead, paint containing lead, or any material or substance containing lead.

Copyright, The Continental Corporation, 1992. Includes copyrighted material of the Insurance Services Office used with its permission

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

Endorsement No. SCG22 510

## Lead Liability Exclusion

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion amends the insurance provided by this policy:

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal injury" arising out of or caused by lead, paint containing lead, or any other material or substance containing lead;

**(2)** Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury", "property damage" or "personal injury" caused by lead, paint containing lead, or any other substance or material containing lead;

**(3)** Any loss, cost, expense or damages arising out of any:

**(a)** request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

**(b)** claim or suit relating to, testing for, monitoring, cleaning up, removing, abating, containing, treating, or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

Copyright, The Continental Corporation, 1991

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

Endorsement No. SCG 22 503A

# Pollution Exclusion Endorsement With Hostile Fire Amendment

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

This endorsement replaces exclusion f. under COVERAGE A (Section I) of the Commercial General Liability Coverage Part. This endorsement also replaces exclusion j. under COVERAGES (Section I) of the Owners And Contractors Liability Coverage Part.

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of "waste";

(c) Which are or were at any time transported, handled, stored, treated, disposed of or processed as "waste" by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(2) Any loss, cost, expense or damages arising out of any:

(a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) claim or suit relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of "pollutants".

As used in this insurance:

"Pollutants" mean any noise, solid, semi-solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, biological and etiologic agents or materials, electromagnetic or ionizing radiation and energy, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials, "waste" and any irritant or contaminant.

"Waste" includes any materials to be disposed, recycled, reconditioned or reclaimed.

"Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

Copyright, The Continental Corporation, 1989. Includes copyrighted material of the Insurance Services Office used with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

Endorsement No. SCG22 501A

# Exclusion - Asbestos

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising in whole or in part, either directly or indirectly out of asbestos whether or not the asbestos is:
   a. Airborne as a fiber or particle;
   b. Contained in a product;
   c. Carried or transmitted on clothing or by any other means; or
   d. Contained in or a part of:
      (1) any building;
      (2) any building material;
      (3) any insulation product; or
      (4) any component part of any building, building material or insulation product.
2. The investigation, settlement or defense of any claim, "suit" or proceeding against the insured alleging any actual or threatened injury or damage which arises out of or would not have occurred but for asbestos, as described above.

Copyright, The Continental Corporation, 1991. Includes copyrighted material of the Insurance Services Office used with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

Endorsement No. SCG24 502

# Broad Form Endorsement - CGL Plus

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Medical Payments**

If Medical Payments Coverage (Coverage C.) is not otherwise excluded from this Coverage Part:

1. The Medical Expense Limit is changed, subject to all the terms of Limits Of Insurance (Section III), to the greater of:

   a. $15,000; or

   b. The Medical Expense Limit shown in the Declarations of this Coverage Part.

2. The requirement, in the Insuring Agreement of Coverage C., that expenses must be incurred and reported to us within "one year" of the accident date is changed to "three years".

**B. Supplementary Payments**

In the Supplementary Payments - Coverages A and B provision:

1. The limit for the cost of bail bonds is changed from $250 to $2,500; and

2. The limit for loss of earnings is changed from $100 a day to $300 a day.

**C. Fire, Lightning, Explosion, Smoke And Leaks From Sprinklers**

If damage by fire to premises rented to you is not otherwise excluded from this Coverage Part, the word "fire" is changed to "fire, lightning, explosion, smoke, or leakage from automatic fire protective systems" where it appears in:

1. The Limits Of Insurance section of the Declarations as the Fire Damage Limit. That limit:

   a. Is changed, subject to all the terms of Limits Of Insurance (Section III), to the greater of:

      (1) $100,000, or

      (2) The amount shown in the Declarations as the Fire Damage Limit.

   b. Subject to a. above, is the most we will pay for all damage proximately caused by the same event, whether such damage results from fire, lightning, explosion, smoke, or leaks from automatic fire protective systems, or any combination thereof.

2. The last paragraph of Coverage A. (Section I) after the Exclusions;

3. Paragraph 6. of Limits Of Insurance (Section III), and the word "event" is added as the last word of that paragraph 6.;

4. Paragraph b.(2) of the Other Insurance Condition (Section IV); and

5. Paragraph d. of the definition of "insured contract."

**D. Non-Owned Watercraft**

Paragraph g.(2) of Exclusions (Coverage A., Section I) is changed to read:

(2) A watercraft you do not own that is:

   (a) Less than 51 feet long; and

   (b) Not being used to carry persons or property for a charge.

This provision D. does not apply if the insured has any other insurance for "bodily injury" or "property damage" liability that would also apply to loss covered under this provision, whether the other insurance is primary, excess, contingent or on any other basis. In that case, this provision D. does not provide any insurance.

**E. Property Damage - Elevators**

With respect to Exclusions (Coverage A., Section I), paragraphs (3), (4) and (6) of Exclusion j., and Exclusion k. do not apply to the use of elevators.

Copyright, The Continental Corporation, 1991 includes Copyright material of the Insurance Services Office used with its permission.

The insurance afforded by this provision E. is excess over any valid and collectible property insurance (including any deductible) available to the insured, and the Other Insurance Condition is changed accordingly.

**F. Who Is an Insured**

Who Is An Insured (Section II) is changed as follows:

1. If coverage for newly acquired or formed organizations is not otherwise excluded from this Coverage Part, paragraph 4.a. is changed to read:

   a. Coverage under this provision is, subject to b. and c. below:

      (1) Effective on the acquisition or formation date; and

      (2) Afforded only until the end of the policy period of this Coverage Part, or the next anniversary of its inception date, whichever is earlier.

2. Each of the following is also an insured:

   a. Your volunteer workers, at the first Named Insured's option; and

   b. Any organization and subsidiary thereof which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this Coverage Part.

   However, the insurance afforded by b., above, for any organization and subsidiary thereof not named in the Declarations as a Named Insured, does not apply to injury or damage with respect to which an insured under this Coverage Part is also an insured under another policy, or would be an insured under such policy but for its termination or the exhaustion of its limits of insurance.

**G. Duties In The Event Of Occurrence, Claim Or Suit**

1. The requirement in condition 2.a. (Conditions, Section IV) that you must see to it that we are notified as soon as practicable of an "occurrence" or an offense, applies only when the "occurrence" or offense is known to:

   (a) You, if you are an individual;

   (b) A partner, if you are a partnership; or

   (c) An executive officer or insurance manager, if you are a corporation.

2. The requirement in condition 2.b. that yc must see to it that we receive notice of a claim or "suit" as soon as practicable will not be considered breached unless the breach occurs after such claim or "suit" is known to:

   (a) You, if you are an individual;

   (b) A partner, if you are a partnership; or

   (c) An executive officer or insurance manager, if you are a corporation.

**H. Advertising Injury - Televised Or Videotaped Publication/Infringement Of Trademark**

1. The definition of "advertising injury" is changed to read:

   "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral, written, televised or videotaped publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral, written, televised or videotaped publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of trademark, copyright, title or slogan.

2. Exclusions a.(1) and a.(2) of Coverage B., Personal And Advertising Injury Liability, are changed to read:

   a. (1) Arising out of oral, written, televised or videotaped publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   a. (2) Arising out of oral, written, televised or videotaped publication of material whose first publication took place before the beginning of the policy period;

**I. Bodily Injury - Mental Anguish**

The definition of "bodily injury" is changed to read:

"Bodily injury":

a. Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

b. Except for mental anguish, includes death resulting from the foregoing (item a. above) at any time.

**J. Mobile Equipment**

The following is added to paragraph f.(1), (a), (b) and (c) of the definition of "mobile equipment:"

Paragraph f. (1), (a), (b) and (c) does not apply to self-propelled vehicles of less than 1000 pounds gross vehicle weight.

**k. Personal Injury - Abuse Of Process/Discrimination**

If Personal Injury Liability Coverage (Coverage B.) is not otherwise excluded from this Coverage Part:

1. The definition of "personal injury" is changed by:

   a. Revising item b. of that definition to read:

      Malicious prosecution or abuse of process;

   b. Adding the following:

      "Personal injury" also means discrimination based on race, color, religion, sex, age or national origin, except when:

      (1) Done intentionally by or at the direction of, or with the knowledge or consent of:

         (a) Any insured; or

         (b) Any executive officer, director, stockholder, partner or member of the insured; or

      (2) Directly or indirectly related to the employment, former or prospective employment, termination of employment, or application for employment of any person or persons by any insured; or

      (3) Directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured; or

      (4) Insurance for such discrimination is prohibited by, or held in violation of, law, public policy, legislation, court decision or administrative ruling.

The insurance afforded by K.1.b., above, does not apply to fines or penalties imposed because of discrimination.

**L. Unintentional Failure To Disclose Hazards**

It is agreed that, based on our reliance on your representations as to existing hazards, if you should unintentionally fail to disclose all such hazards prior to the beginning of the policy period of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

**M. Liberalization**

If we revise this endorsement to provide more coverage without additional premium charge, we will automatically provide the additional coverage to all endorsement holders as of the day the revision is effective in your state.

**business ✓choice**

**Commercial Excess Liability Coverage Part Declarations**

Policy No. ____________________

**Limits of Insurance**

**THIS COVERAGE PART CONTAINS AGGREGATE LIMITS; REFER TO SECTION III-LIMITS OF INSURANCE FOR DETAILS**

| | |
|---|---|
| General Aggregate Limit | $__________ |
| Products-Completed Operations Aggregate Limit | $__________ |
| Each Occurrence Limit | $__________ |

**Self-Insured Retention:**

Each Occurrence $__________

**Underlying Insurance Schedule:**

| Required Underlying Insurance | Minimum Underlying Limits of Insurance |
|---|---|
| Automobile Liability: | Bodily Injury and Property Damage<br>$500,000 Each Accident |
| Commercial General Liability: | $1,000,000 General Aggregate<br>$500,000 Products-Completed Operations Aggregate<br>$500,000 Personal and Advertising Injury<br>$500,000 Each Occurrence |
| Employers Liability: | Bodily Injury by Accident<br>$100,000 Each Accident<br>Bodily Injury by Disease<br>$500,000 Policy Limit<br>$100,000 Each Employee |

**Advance Premium $__________**

**Forms and Endorsements**

Form(s) and Endorsement(s) attached to this policy at the time of its issuance and whose numbers appear in the Declarations Page of this Coverage Part affect your coverage even though the form(s) or endorsement(s) themselves may not so indicate.





QUICK REFERENCE
READ YOUR POLICY CAREFULLY.

# Commercial Excess Liability Coverage Part

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Limits of Insurance
Self Insured Retention
Underlying Insurance Schedule


| | Beginning on Page |
|---|---|
| **SECTION I - COVERAGE, DEFENSE AND SUPPLEMENTARY PAYMENTS** | 1 |
| Coverage - Bodily Injury, Property Damage, Personal Injury and Advertising Injury Liability | 1 |
| Defense And Supplementary Payments | 5 |
| **SECTION II - WHO IS AN INSURED** | 6 |
| **SECTION III - RETAINED LIMIT AND LIMITS OF INSURANCE** | 6 |
| **SECTION IV - COMMERCIAL EXCESS LIABILITY CONDITIONS** | 7 |
| Bankruptcy | 7 |
| Duties In The Event of an Occurrence, Claim or Suit Covered By This Insurance | 7 |
| Legal Action Against Us | 7 |
| Other Insurance | 8 |
| Changes In Underlying Insurance | 8 |
| Exhaustion Of Aggregate Limits In Underlying Insurance | 8 |
| Maintenance Of Underlying Insurance | 8 |
| Premium Audit | 8 |
| Representations | 8 |
| Separation of Insureds | 8 |
| Transfer of Rights of Recovery Against Others To Us | 8 |
| **SECTION V - DEFINITIONS** | 9 |


## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

Copyright, The Continental Corporation, 1992. Includes Copyrighted material of the Insurance Services Office used with its permission.

# Commercial Excess Liability Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I. - COVERAGE, DEFENSE AND SUPPLEMENTARY PAYMENTS

### COVERAGE - BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. But, the amount we will pay for damages is limited as described in RETAINED LIMIT AND LIMITS OF INSURANCE (SECTION III). No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under DEFENSE AND SUPPLEMENTARY PAYMENTS.

   b. This insurance applies only to the following "injury":

      (1) "Bodily injury" or "property damage" only if the "bodily injury" or "property damage":

         (a) Is caused by an "occurrence", and

         (b) Occurs during the policy period of this policy;

      (2) "Personal injury" caused by an "offense" arising out of your business but only if the "offense" was committed during the policy period of this policy and does not arise out of advertising, publishing, broadcasting or telecasting done by or for you.

      (3) "Advertising injury" caused by an "offense" committed in the course of advertising your goods, products or services, but only if the "offense" was committed during the policy period of this policy.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

   This insurance does not apply to:

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply:

      (1) Insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy; or

      (2) To liability for damages that the insured would have in the absence of the contract or agreement.

   c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion does not apply insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy.

   d. Liability imposed on the insured, or the

insured's insurer, under any of the following laws:

(1) Workers' compensation or occupational disease law;

(2) Disability benefits or unemployment compensation law;

(3) Uninsured motorists, underinsured motorists, or automobile no-fault law;

(4) Employee Retirement Income Security Act of 1974, as now or hereafter amended; or

(5) Any other laws similar to any of the foregoing.

e. Damages:

(1) Claimed against the insured in a capacity other than as an employer because of "bodily injury" to an employee of the insured; or

(2) For "bodily injury" to a spouse, child, parent, brother or sister of the employee of the insured, if such damages are the consequence of the employee's employment by the insured.

This exclusion does not apply insofar as coverage is available to the insured in "underlying insurance".

f. (1) "Injury" arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost, expense or damages arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or "suit" relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to or assessing the effects of "pollutants".

This exclusion does not apply insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy.

g. "Injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy.

h. (1) "Injury" arising in whole or in part, either directly or indirectly out of asbestos whether or not the asbestos is:

(a) Airborne as a fiber or particle;

(b) Contained in a product;

(c) Carried or transmitted on clothing or by any other means; or

(d) Contained in or a part of:

(i) Any building;

(ii) Any building material;

(iii) Any insulation product; or

(iv) Any component part of any building, building material or insulation product.

(2) The investigation, settlement or defense of any claim, "suit" or proceeding against the insured alleging any actual or threatened "injury" which arises out of or would not have occurred but for asbestos, as described above.

i. "Property damage" to:

(1) Property you own, lease, rent, or occupy; or

(2) "Your product" arising out of it or any part of it.

j. "Property damage" to property used by or in the care, custody or control of the insured.

This exclusion does not apply to "property damage" to real property arising out of "your work" insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy.

k. "Property damage" to "your work" arising out of it or any part of it.

This exclusion does not apply insofar as coverage is available to the insured in "underlying insurance" shown on the Common Policy Declarations of this policy.

l. "Property damage" to "impaired property" or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

m. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

n. "Personal injury" or "advertising injury" arising out of:

(1) Oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Oral or written publication of material whose first publication took place before the beginning of the policy period of this policy; or

(3) The willful violation of a penal statute or ordinance committed by or with the consent of the insured.

o. "Advertising injury" arising out of:

(1) Breach of contract, other than the misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An "offense" committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

p. "Injury" arising out of the rendering or failure to render any professional service or any activities supporting professional services, such as secretarial or clerical. Professional services include but are not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Services in the performance of any claim, investigation, adjustment, appraisal, survey or audit services;

(5) Any error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; or the reporting of or reliance upon any such test, evaluation, consultation or advice;

(6) Medical, surgical, dental, x-ray or nursing services or treatment, or the related furnishing of food or beverages;

(7) Any health service or treatment;

(8) Any cosmetic or tonsorial service or treatment;

(9) The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

(10) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

(11) Ear piercing services;

(12) Services in the practice of pharmacy;

(13) Any massage, physiotherapy or chiropody; or

(14) Performing electronic data processing,

systems analysis, design, programming or consulting or other similar services.

This exclusion does not apply insofar as coverage is available to the insured in a Commercial General Liability Coverage Part shown on the Common Policy Declarations of this policy.

q. "Injury" arising out of:

(1) Goods, products or operations; or

(2) The ownership, operation, maintenance or use of any premises or locations.

This exclusion does not apply to goods, products, operations, premises or locations for which insurance is afforded by a Commercial General Liability Coverage Part shown on the Common Policy Declarations of this policy.

r. "Injury":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(3) Resulting from the "hazardous properties" of "nuclear material", if:

(a) The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The "injury" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damages" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "byproduct material", and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any

time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**DEFENSE AND SUPPLEMENTARY PAYMENTS**

1. **Defense of Claims or "Suits".**

a. We have no duty to defend any claim or "suit" that any other insurer has a duty to defend. However, we have the right to join in the defense or trial of any claim or "suit".

b. We will defend any claim or "suit" against an insured seeking damages because of "injury" to which this Coverage Part applies only when:

(1) The "injury" is covered under this Coverage Part, but not covered under any "underlying insurance"; or

(2) The underlying Limits of Insurance have been exhausted by the payment of claims.

However, this paragraph b. does not apply to a claim made or "suit" brought in a jurisdiction outside the United States of America, including its territories and possessions, Puerto Rico or Canada. In such instances, we may:

(1) Decide not to defend an insured because of laws or other reasons;

(2) Require the insured, subject to our supervision and control, to make or cause to be made such investigation and defense as we may request; or

(3) Require the insured to make, to the extent possible, such settlements as we deem prudent.

We will pay any expense incurred with our written consent for the insured's defense.

c. We may at our discretion investigate any "occurrence". We may:

(1) Settle any claim or "suit" that may result, if "underlying insurance" collectible by the insured does not exist; or

(2) Join in the settlement of any claim or "suit" that may result, if collectible "underlying insurance" does exist.

For any claim or "suit" for damages wholly or partially within the "retained limit", you will promptly reimburse us for any amount we pay within the "retained limit".

d. We have no obligation to defend any claim or "suit" once the applicable Limit of Insurance for this Coverage Part has been exhausted by the payment of judgements or settlements.

2. **Supplementary Payments.**

We will pay, with respect to any claim or "suit" we defend, or for such investigation and defense which we require the insured to make or cause to be made;

a. All expenses we incur or the insured incurs at our request.

b. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which liability for "bodily injury" under this Coverage Part applies.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Pre-judgement interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-

judgement interest based on that period of time after the offer.

g. All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the Limits of Insurance of this Coverage Part.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations of this policy as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured. However:

   a. This insurance is excess over any other excess or catastrophe coverage afforded to the newly acquired or formed organization. However, this does not apply to coverage specifically purchased to be excess of this insurance; and

   b. This insurance does not apply to:

      (1) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; or

      (2) "Personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed the organization.

3. Any other person or organization is an insured, who is included as an additional insured in "underlying insurance", but only to the extent of the insurance provided the additional insured under "underlying insurance", and not otherwise excluded by this Coverage Part.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**SECTION III - RETAINED LIMIT AND LIMITS OF INSURANCE**

Regardless of the number of:

1. Insureds;

2. Persons or organizations who sustain "injury"; or

3. Claims made or "suits" brought on account of any "injury";

our liability is limited as follows:

   a. **Retained Limit.**

   When an "underlying insurance" aggregate limit has been exhausted by the payment of judgements, settlements, costs or expenses, the insurance afforded by this Coverage Part will drop down and apply in excess of that exhausted aggregate limit. Any payment we make in excess of an exhausted aggregate limit is included within, and is not in additio to, the Limits of Insurance for this Coverage Part.

   In any instance other than the above, the insurance afforded by this Coverage Part will apply only for the amount of damages in excess of the applicable "retained limit".

   The "retained limit" will apply separately to each "occurrence" to which this insurance applies.

   If the "retained limit" is not satisfied by "underlying insurance", we have the right but not the duty to pay all or part of the "retained limit". Upon notice of such payment, you will promptly reimburse us.

   b. **Limits of Insurance.**

      (1) The Each Occurrence Limit for this Coverage Part is the most we will pay for damages because of "injury" arising out of any one "occurrence".

      (2) The General Aggregate Limit for this Coverage Part is the most we will pay for damages arising out of all "occurrences" except damages because of:

(a) "Bodily injury" and "property damage" included in the "products-completed operations hazard"; and

(b) "Bodily injury" and "property damage" included in the "auto hazard".

(3) The Products-Completed Operations Aggregate Limit is the most we will pay for damages arising out of all "occurrences" because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL EXCESS LIABILITY CONDITIONS**

1. **Bankruptcy.**

In the event of bankruptcy or insolvency of any "underlying insurer", this insurance will not apply as a replacement of such bankrupt or insolvent "underlying insurer's" policy. Also, we will not be liable under this insurance to any greater extent than we would have been liable had the "underlying insurer" not become bankrupt or insolvent.

Bankruptcy of the insured or the insured's estate will not relieve us of any of our obligations under this insurance.

2. **Duties In the Event Of an Occurrence, Claim or Suit Covered By This Insurance.**

a. You must see to it that we are notified as soon as practicable of any "occurrence" which may result in a claim to which this insurance applies. To the extent possible, notice should include:

(1) How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any "injury" or damages arising out of the "occurrence".

b. If a claim is made or "suit" is brought against any insured to which this insurance applies, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with any claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us and any "underlying insurer" in the investigation, settlement or defense of the claim or "suit";

(4) Comply with the terms of the "underlying insurance"; and

(5) Assist us, upon our request, in the enforcement of any right against any person or organization who may be liable to the insured because of an "injury" or an "occurrence";

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance for this Coverage Part. An agreed settlement means a settlement and release of

liability signed by us, the insured and the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for loss covered hereunder, this Coverage Part will be excess of such other insurance. This condition does not apply to insurance purchased specifically to be excess of this Coverage Part.

5. **Changes In Underlying Insurance.**

You must give us written notice as soon as practicable if the coverage or Limits of Insurance afforded in the "underlying insurance" is changed or any coverage in the "underlying insurance" is terminated. However, this does not apply to "underlying insurance" shown on the Common Policy Declarations of this policy.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

6. **Exhaustion Of Aggregate Limits In Underlying Insurance.**

You must immediately give us written notice when an aggregate limit in any "underlying insurance" has been used up by the payment of judgements, settlements, costs or expenses. However, this does not apply to "underlying insurance" shown on the Common Policy Declarations of this policy.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

7. **Maintenance Of Underlying Insurance.**

If you fail to maintain in full effect during the policy period of this policy the "underlying insurance", we will not be liable under this Coverage Part to any greater extent than we would have been liable had you complied with the obligation concerning "underlying insurance".

8. **Premium Audit.**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

9. **Representations.**

By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

10. **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specially assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

11. **Transfer Of Rights of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Recoveries will be applied in the following order:

(1) First, to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this Coverage Part;

(2) Then, to reimburse us for all amounts paid under this Coverage Part; and

(3) Finally, to reimburse all other interests (including the insured) with respect to the residue, if any.

When we have elected to participate in the exercise of the insured's right of recovery,

reasonable expenses resulting therefrom will be apportioned among all interests in the ratio of their respective recoveries.

If there should be no recovery as a result of proceedings instituted solely at our request, we will bear all expenses of such proceedings.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following "offenses":

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Auto hazard" means "bodily injury" and "property damage" arising out of the ownership, maintenance or use of any "auto," but only for damages to which the "underlying insurance" would apply but for the exhaustion of its limits.

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. Bodily injury also includes disability, mental anguish, mental injury or shock resulting in or from otherwise covered bodily injury.

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

   b. Your fulfilling the terms of the contract or agreement.

6. "Injury" means "bodily injury", "property damage", "advertising injury" and "personal injury".

7. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

8. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a. b. c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing;

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

9. "Occurrence" means:

a. With respect to "bodily injury" and "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. With respect to "personal injury" and "advertising injury", all damages sustained by any one person or organization.

10. "Offense" means any offense listed in the definitions of "personal injury" or "advertising injury".

11. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following "offenses":

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

12. "Pollutants" mean any noise, solid, semi-solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, biological and etiologic agents or materials, electromagnetic or ionizing radiation and energy, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials, waste and any irritant or contaminant. Waste includes any materials to be disposed recycled, reconditioned or reclaimed.

13. "Products-completed operations hazard" means

a. All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at the job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance correction, repair or replacement, but whi is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it.

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

(3) Products or completed operations for which the classification in our manual of rules includes products or completed operations.

14. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is physically injured. All such loss shall be

deemed to occur at the time of the "occurrence" that caused it.

15. "Retained limit" means the greatest of:

a. Limits of Insurance for any Commercial General Liability Coverage, Automobile Liability Coverage or Employers Liability Coverage shown on the Common Policy Declarations of this policy;

b. The Required Underlying Insurance and the Minimum Underlying Limits of Insurance shown in the Underlying Insurance Schedule on the Declarations for this Coverage Part; or

c. The Self-Insured Retention shown on the Declarations for this Coverage Part.

16. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Underlying insurance" means:

a. Any:

(1) Commercial General Liability Coverage;

(2) Automobile Liability Coverage; or

(3) Employers Liability Coverage;

shown on the Common Policy Declarations of this policy; or

b. Insurance that provides:

(1) The Required Underlying Insurance; and

(2) Minimum Underlying Limits of Insurance;

shown in the Underlying Insurance Schedule on the Declarations for this Coverage Part.

18. "Underlying insurer" means the provider of any "underlying insurance".

19. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

20. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

**(1)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"


Copyright, Insurance Services Office, Inc., 1983, 1984

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor;"

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, Insurance Services Office, Inc., 1983, 1984 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Professional Services

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to COVERAGES A and B (Section I):

1. This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional service or any activities supporting professional services, such as secretarial or clerical. Professional services include but are not limited to:

   a. Legal, accounting or advertising services;

   b. Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

   c. Supervisory, inspection or engineering services;

   d. Services in the performance of any claim, investigation, adjustment, appraisal, survey or audit services;

   e. Any error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; or the reporting of or reliance upon any such test, evaluation, consultation or advice;

   f. Medical, surgical, dental, x-ray or nursing services or treatment, or the related furnishing of food or beverages;

   g. Any health service or treatment;

   h. Any cosmetic or tonsorial service or treatment;

   i. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

   j. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures;

   k. Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

   l. Ear piercing services;

   m. Services in the practice of pharmacy;

   n. Any massage, physiotherapy or chiropody; or

   o. Performing electronic data processing, systems analysis, design, programming or consulting or other similar services.

2. This Professional Services Exclusion does not apply to:

   a. Pharmocological services if the insured does business as a retail druggist or drugstore;

   b. Hearing aid services if the insured does business as a hearing aid service establishment.

B. The following is added to paragraph 2.a.(2) of WHO IS AN INSURED (Section II):

However,

(i) If you do business as a retail druggist or drugstore, your employees who are pharmacists are insureds with respect to acts within the scope of their duties as pharmacists; or

(ii) If you do business as a hearing aid service establishment, your employees who are hearing aid professionals are insureds with respect to acts within the scope of their duties as hearing aid professionals.

Copyright, The Continental Corporation, 1992. Includes copyrighted material of the Insurance Services Office used with its permission.

business choice[SM]

**Commercial Property Coverage Part Declarations**
**Property Coverages/Optional Coverages**

Policy No. 25 BC 08028780-96

| Premises Number | Coverages and Descriptions of Premises | Value Used To Determine Premium | Premises Limit of Insurance |
|---|---|---|---|
| 001 | Building(s) (at these premises)<br>3143-45 MT PLEASANT STREET NW WASHINGTON DC 20010<br>Business Personal Property | $3,566,890 | $3,566,890 |
| | Building(s) (at these premises)<br>Business Personal Property | | |

| | Mortgage Holder's Name and Address |
|---|---|
| 001 | SUBURBAN MORTG. ASSOC., INC.<br>7316 WISCONSIN AVE. NW #208<br>BETHESDA MD 20814 |

NOTE: Your deductible is $ 1000 . The seasonal increase for Business Personal Property is 25 %.

Forms Or Endorsements Applicable To Specific Premises:

All forms are as per the expiring policy except for those listed on BDEC 16

Forms Or Endorsements Applicable To The Commercial Property Coverage Part:

All forms are as per the expiring policy except for those listed on BDEC 16

BDEC 4 Ed. 1/93




COMPANY COPY

1100022SBC 0802801907226510000000612




## Renewal Certificate

Your Policy is renewed by the Stock Company(ies) indicated below in Your Coverage Overview which are members or affiliates of Continental Insurance. Their administrative offices are at One Continental Drive, Cranbury, New Jersey 08570-0001

## Policy Information

Named Insured DEAUVILLE LIMITED PARTNERSHIP

Mailing Address 3143 MOUNT PLEASANT STREET NW WASHINGTON DC 20010-2709

Account Number 00269162

Renewing Policy Number 25 BC 08028780-96

Original Inception Date 02/01/94

Payment Plan OPTIBIL-PREPAID

## Renewal Policy Period

Your Policy is in effect from FEBRUARY 01, 1995 to FEBRUARY 01, 1996 at 12:01 A.M. Standard Time at your mailing address shown above.

## Your Insurance Representative

ASSURANCE INCORPORATED
5025 DRUID DRIVE
KENSINGTON MD 208951223

Telephone (301) 942-6166
Producer Code 19072263
Business Team 39N

## Your Coverage Overview

In return for the payment of the premium, we agree with you to renew the Policy shown above for the period designated in the Renewal Policy Period above.

Your Policy consists of the following coverage parts. The company issuing it and a premium are indicated for each coverage part. This premium may be subject to adjustment. In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

| Coverage Part | Company | Premium |
|---|---|---|
| Commercial Property | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial General Liability | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Auto | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Excess Liability | | |
| | | |
| | | |
| Your Premium For This Policy is | | $20,073 |
| Add Companion Policy: | | |
| TOTAL PREMIUM | | $20,073.00 |

11000225BC 08028019072263100000000610






BDEC 16 Ed. 1/93

11/15/94

COMPANY COPY




Renewal Certificate

Policy No. 25 BC 08028780-96

**Information About Premium Computation**

This renewal policy has been issued at rates in effect on the date of the renewal and the premiums shown in YOUR COVERAGE OVERVIEW. These premiums are subjected to adjustment as provided in your policy.

**Audit Information**

An annual audit is required for the following Coverage(s):

**Forms and Endorsements**

Any new endorsement, forms, schedules or declarations; or endorsements, forms, schedules or declarations replacing earlier editions on your expiring policy are now attached to and form part of this renewal. These forms are shown below next to their applicable coverage part. Any Forms, schedules, or declarations deleted from your expiring policy are shown below next to their applicable coverage part.

Commercial Automobile:
New And Revised Forms:
CA 0001 1293 CA 0140 0994 CA 0263 0994
SDIS 112 0394
Deleted Forms:
CA 0001 0692 CA 0029 1288 CA 0140 0489
Deleted Forms:
CA 0215 0590 CA 9921 0178
Common Policy:
New And Revised Forms:
BDIS 5 0394
Commercial General Liability:
New And Revised Forms:
CG 2011 1185
BC 2201 0294 CG 0001 1093

110002250C 080280190722631000000000611

Countersigned by ______________________ Date: __________

PLEASE PLACE THIS RENEWAL CERTIFICATE WITH YOUR POLICY.

POLICY NUMBER: 25 BC 08028780-96 COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

1. Designation of Premises (Part Leased to You): 3143-45 MT PLEASANT STREET NW WASHINGTON DC 20010

2. Name of Person or Organization (Additional Insured): WASHINGTON REALTY, INC. 4420 CONNECTICUT AVENW WASHINGTON DC 20008

3. Additional Premium: INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.



 Copyright, Insurance Services Office, Inc., 1984



CNA Plaza
Chicago, Illinois 60685

DECLARATIONS
YOUR APARTMENT-OWNERS PACKAGE

RENEWAL DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 43137450 | 02/01/96 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br>KENSINGTON MD 20895 |

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

ITEM

2. POLICY PERIOD: THIS POLICY BECOMES EFFECTIVE AND EXPIRES AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS CONTAINED HEREIN, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED.

3. AUDIT PERIOD IS ANNUAL, UNLESS OTHERWISE STATED. NOT-APPLICABLE

4. LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| EACH OCCURRENCE LIMIT | $ | 1000000 | |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ | 1000000 | |
| MEDICAL EXPENSE LIMIT | $ | 5000 | ANY ONE PERSON |
| FIRE DAMAGE LIMIT | $ | 50000 | ANY ONE FIRE |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 1000000 | |
| GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | $ | 1000000 | |

5. NAMED INSURED IS:
( ) INDIVIDUAL ( ) JOINT VENTURE ( X ) PARTNERSHIP
( ) CORPORATION
( ) OTHER

BUSINESS DESCRIPTION:
APARTMENTS

LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

001 3143-45 MT PLEASANT ST, NW; WASHINGTON , DC 20010

0002022310431374500500



D.H. Chookaszian
Chairman of the Board



Secretary



CNA Plaza
Chicago, Illinois 60685

DECLARATIONS
YOUR APARTMENT-OWNERS PACKAGE

RENEWAL DECLARATION

| Policy Number | Policy Period From | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|
| C1 43137450 | 02/01/96 | 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br>KENSINGTON MD 20895 |

6. FORMS AND ENDORSEMENTS APPLICABLE AT TIME OF ISSUANCE:

| | PREMIUM |
|---|---|
| SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS | $ |
| | $ |
| | $ |
| | $ |
| | $ |

7. YEAR IN TRANSITION PROGRAM: 0

8. PREMIUM FOR THIS COVERAGE PART: PREMIUM PAYABLE AT INCEPTION $ 14743.00

9. THESE DECLARATIONS AND THE GENERAL DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

0002002310431374500501

COUNTERSIGNED________________ BY________________________
DATE AUTHORIZED AGENT



P-55170-A (1/86 ED.)

D.H. Chookaszian
Chairman of the Board

D. M. [signature]
Secretary

BRANCH

CNA
For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

RENEWAL DECLARATION

| Policy Number | Policy Period From | To | Coverage Is Provided By | Agency |
|---|---|---|---|---|
| C1 43137450 | 02/01/96 | 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br>KENSINGTON MD 20895 |

GENERAL LIABILITY SCHEDULE

THE ADDITIONAL DECLARATIONS AND SCHEDULE BELOW ARE AN EXTENSION OF THOSE ISSUED IN CONNECTION WITH COMMERCIAL GENERAL LIABILITY INSURANCE.

LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ REFER TO | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ DECLAR- | |
| MEDICAL EXPENSE LIMIT | $ ATION | ANY ONE PERSON |
| FIRE DAMAGE LIMIT | $ | ANY ONE FIRE |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | |
| GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | $ | |

SCHEDULE

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PREMISES\OPERATIONS | | * (A)<br>* (P)<br>* (S) | ** (A)<br>** (P)<br>** (S) | |
| LOCATION 001 | | | | |
| APARTMENT BUILDINGS INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | 60010 | 103<br>(U ) | 142.819 | 14,710 |
| BUILDINGS OR PREMISES-OFFICE-MERCANTILE OR MANUFACTURING (LESSOR'S RISK ONLY) OTHER THAN NOT FOR PROFIT INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | 61212 | 500<br>(A ) | 65.608 | 33 |

00020023104313745005O2




Chairman of the Board


Secretary



CNA Plaza
Chicago, Illinois 60685

RENEWAL DECLARATION

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C1 43137450 | 02/01/96 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br><br>KENSINGTON MD 20895 |

| DESCRIPTION OF HAZARDS (AND LOCATION IF DIFFERENT FROM ADDRESS SHOWN IN ITEM 1 OF DECLARATIONS) | CODE NO. | PREMIUM BASES AS DESCRIBED IN THE SCHEDULE | RATES PROPERTY DAMAGE & BODILY INJURY | ADVANCE PREMIUMS PROPERTY DAMAGE & BODILY INJURY |
|---|---|---|---|---|
| PRODUCTS/COMPLETED OPERATIONS | | * (P)<br>* (S) | ** (P)<br>** (S) | |
| | | | TOTAL | 14,743 |

| * PREMIUM BASES | ** RATES |
|---|---|
| (A) = AREA | (A) = PER 1,000 SQUARE FEET OF AREA |
| (P) = PAYROLL | (P) = PER $1,000 OF PAYROLL |
| (S) = GROSS SALES | (S) = PER $1,000 OF GROSS SALES |

00020023104313745050З



P-55172-A (1/86 ED.)

D.H. Chookaszian
Chairman of the Board



Secretary

BRANCH

| Policy Number | Named Insured and Address | From | Policy Period | To |
|---|---|---|---|---|
| 1 43137450 | DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | 02/01/1996 | | 02/01/1997 |

***** GENERAL LIABILITY ADDITIONAL INSURED SCHEDULE *****

**Location 001**

**Type:** Additional Insured-Managers or Lessors of Premises

**Additional Insured Name and Address**
WASHINGTON REALTY, INC.

4420 CONNECTICUT AVE. NW
WASHINGTON, DC 20008





CNA Plaza
Chicago, Illinois 60685

| Policy Number | From Policy Period To | | Coverage Is Provided By | Agency |
|---|---|---|---|---|
| C1 43137450 | 02/01/96 | 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br><br>KENSINGTON MD 20895 |

POLICY FORMS AND ENDORSEMENTS SCHEDULE

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| *** LIABILITY FORMS AND ENDORSEMENTS *** | | |
| P55172A | 01/86 | COMMERCIAL GENERAL LIABILITY SCHEDULE |
| CG0001 | 10/93 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2011 | 11/85 | ADDITIONAL INSURED - MANAGERS OF LESSORS OF PREMISES |
| CG2144 | 11/85 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| CG2146 | 10/93 | ABUSE OR MOLESTATION EXCLUSION |
| G16254A | 07/90 | AMENDATORY ENDORSEMENT-POLLUTION EXCLUSION |
| G16776A | 06/91 | EXCLUSION LEAD PAINT |
| G55157B | 02/88 | PREMIUM BASES |
| IL0017 | 11/85 | COMMON POLICY CONDITIONS |
| IL0021 | 11/85 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FO |
| IL0278 | 04/89 | DC CHANGES - CANCELLATION AND NONRENEWAL |

00020023104313745050505

P 55738 A 01/86



D.H. Chookaszian
Chairman of the Board


Secretary

BRANCH



CNA Plaza
Chicago, Illinois 60685

| Policy Number | From Policy Period To | | Coverage Is Provided By | Agency |
|---|---|---|---|---|
| C1 43137450 | 02/01/96 | 02/01/97 | CONTINENTAL CASUALTY CO | 935174420 |

| Named Insured And Address | Agent |
|---|---|
| DEAUVILLE LIMITED PARTNERSHIP<br>3143 MOUNT PLEASANT STREET NW<br>WASHINGTON, DC 20010 | PRIESTERSANDRA L.<br>5025 DRUID DRIVE<br><br>KENSINGTON MD 20895 |

** PAYMENT PLAN SCHEDULE **

IT IS AGREED THAT THE TOTAL ESTIMATED PREMIUM SHOWN IN THE DECLARATIONS OF THIS POLICY IS PAYABLE AS FOLLOWS:

| EFFECTIVE DATE | PREMIUM | COMMISSION |
|---|---|---|
| 02/01/96 | $28,002.00 | 20.0 |
| TOTAL PREMIUM | $28,002.00 | |

ISSUE DATE 07/19/96

0002002310431374500507

POLICY NUMBER: CG 20 11 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

1. Designation of Premises (Part Leased to You):

   REFER TO ADDITIONAL INSURED SCHEDULE

2. Name of Person or Organization (Additional Insured):

   REFER TO ADDITIONAL INSURED SCHEDULE

3. Additional Premium: INCLUDED

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or orgazination shown in the Schedule.

0002002310431374500506

 Copyright, Insurance Services Office, Inc., 1984

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Premises:**

3143-45 MT PLEASANT ST. NW
WASHINGTON, DC 20010

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

 Copyright, Insurance Services Office, Inc., 1984 

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

1. Designation of Premises (Part Leased to You): 3143-45 MT PLEASANT STREET NW WASHINGTON, DC 20010
2. Name of Person or Organization (Additional Insured): WASHINGTON REALTY, INC. 4420 CONNECTICUT AVE NW
3. Additional Premium: INCL.

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.



Copyright, Insurance Services Office, Inc., 1984

□

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.


Copyright, Insurance Services Office, Inc., 1992

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".


Copyright, Insurance Services Office, Inc., 1992

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

 Copyright, Insurance Services Office, Inc., 1992 

n. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.


Copyright, Insurance Services Office, Inc., 1992

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 Copyright, Insurance Services Office, Inc., 1992 

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:
   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
2. Each of the following is also an insured:
   a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:
      (1) "Bodily injury" or "personal injury":
         (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;
         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;
         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or
         (d) Arising out of his or her providing or failing to provide professional health care services.
      (2) "Property damage" to property:
         (a) Owned, occupied or used by,
         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.
   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.
   c. Any person or organization having proper temporary custody of your property if you die, but only:
      (1) With respect to liability arising out of the maintenance or use of that property; and
      (2) Until your legal representative has been appointed.
   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.
3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:
   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or
   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.
4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:
   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

 Copyright, Insurance Services Office, Inc., 1992 

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

 Copyright, Insurance Services Office, Inc., 1992 

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

 Copyright, Insurance Services Office, Inc., 1992 

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";


Copyright, Insurance Services Office, Inc., 1992

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 Copyright, Insurance Services Office, Inc., 1992 

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**15.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**17.** "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**18.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**19.** "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.


Copyright, Insurance Services Office, Inc., 1992

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD PAINT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage" or "personal injury" arising out of the actual or alleged manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

This endorsement does not apply in Massachusetts

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Continental Casualty Company and The Continental Insurance Company, as successor by merger to Kansas City Fire and Marine Insurance Company

**DEFENDANTS**

Deauville Associates, Limited Partnership, Deauville Limited Partnership, Mount Pleasant Revocable Trust, John R Redmond, Afloresi Figueroa, as Parent and Next Friend of her Minor Son, C J.F

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) 11001
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ROSS, DIXON & BELL LLP
2001 K Street, NW
Washington, DC 20006
(202) 662-2000

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ⦿ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ⦿ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⦿ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. *Antitrust***

☐ 410 Antitrust

**○ B. *Personal Injury/ Malpractice***

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. *General Civil (Other)*** OR **○ F. *Pro Se General Civil***

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ◉ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | [X] 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action for Declaratory Judgment under 28 U.S.C. Sec. 2201 to determine the rights and legal obligations arising under contracts of insurance.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** ________ Check YES only if demanded in complaint **JURY DEMAND:** YES [X] NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO [X] If yes, please complete related case form.

**DATE** October 5, 2007 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.