# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONTINENTAL CASUALTY
COMPANY, et al.

              Plaintiffs

-vs.-

DEAUVILLE ASSOCIATES,
LIMITED PARTNERSHIP, et al.

              Defendants

Case: 1:07 – cv- 01818
Assigned To: Huvelle, Ellen S.
Assign Date: 10/9/2007
Description: Contract

**ANSWER TO COMPLAINT
FOR DECLARATORY
JUDGMENT AND
COUNTERCLAIM**

## DEFENDANTS DEAUVILLE ASSOCIATES, LIMITED PARTNERSHIP, DEAUVILLE LIMITED PARTNERSHIP, MOUNT PLEASANT STREET REVOCABLE TRUST, AND JOHN R. REDMOND'S ANSWER AND COUNTERCLAIM

Defendants Deauville Associates, Limited Partnership (Associates),

Deauville Limited Partnership (Deauville Limited), Mount Pleasant Street

Revocable Trust (Trust) and John R. Redmond (Redmond) in Answer the Complaint

for the Declaratory Judgment filed against them, state as follows to the numbered

paragraphs in the Complaint:

1. Admitted

2. The first two sentences of this paragraph are admitted and the third sentence
   is denied

3. Denied

4.  As these defendants lack sufficient information to satisfactorily respond to this allegation, it must be denied.

5.  Admitted upon information and belief.

6.  As these defendants lack sufficient information to satisfactorily respond to this allegation, it must be denied.

7.  Admitted upon information and belief.

8.  Admitted upon information and belief.

9.  Admitted

10. Admitted

11. Admitted

12. Admitted

13. As these defendants lack sufficient information to satisfactorily respond to this allegation, it must be denied.

14. As this paragraph simply adverts to legal rather than factual assertions, it requires no response. To the extent that an answer is required, the allegations are denied.

15. A As this paragraph simply adverts to legal rather than factual assertions, it requires no response. To the extent that an answer is required, the allegations are denied.

**Statement of Facts**

**A. Underlying Figueroa Complaint**

16. Admitted

17. The first two sentences of this paragraph are admitted. The third sentence is denied.

18. Denied

19. Admitted

### B. The Policies

20. Denied.

21. Admitted

22. Admitted

23. Denied

24. Admitted

25. Admitted

26. Denied as phrased, as this is a selective, disjointed combination of separate policy language.

27. Denied. The subject policies referenced did not include a lead exclusion and exclusionary documents attached to these reference policies have been engrafted on to said policies by the plaintiffs for the purposes of these proceedings but were never part of those policies provided to defendants.

28. Denied in that plaintiffs admit in paragraph 23 above that the policies upon which they rely to exclude otherwise available coverage to these defendants are incomplete copies of the originals.

29. Admitted as to coverage timely sought by all presently answering defendants.

30. As this paragraph, it is argumentative and self-serving rather than asserting facts, it requires no response. To the extent an answer is required, the allegations are denied as contrary to insurance law and precedent here and elsewhere.

### First Cause of Action

31. These defendants repeat the facts stated above in paragraphs 1-30 as if fully set forth herein.

32. Denied in that the pertinent policy terns and conditions extend coverage to these defendants.

33. Denied.

### Second Cause of Action

34. These defendants repeat the facts stated above in paragraphs 1-33 as if fully set forth herein.

35. Denied.

### Third Cause of Action

36. These defendants repeat the facts stated above in paragraphs 1-35 as if fully set forth herein.

37. Denied

38. Denied.

### Fourth Cause of Action

39. These defendants repeat the facts stated above in paragraphs 1-38 as if fully set forth herein.

4

40. It is a truism to assert the subject policies cover an "occurrence" and this allegation is admitted. The remainder of this paragraph is denied.

41. Denied

### Fifth Cause of Action

42. These defendants repeat the facts stated above in paragraphs 1-41 as if fully set forth herein.

43. Denied

44. Denied

### AFFIRMATIVE DEFENSES

1. The Complaint must be dismissed for failure to state a claim upon which relief can be granted.

2. The plaintiff's Complaint is barred by the doctrine of Estoppel.

3. The plaintiff's Complaint is barred by the doctrine of Waiver

4. The relief sought in the Complaint is barred by the plaintiffs' unclean hands

5. The Complaint is barred by the Statute of Limitations

6. The Complaint is barred by the plaintiffs' fraud in adding to the subject policies a lead paint exclusion not originally part of these policies and without notice to the defendant of the exclusion until after the present claim was submitted.

7. The defendants reserve the right to rely upon all defenses, legal and equitable, which may be available based upon the facts as may become known prior to or during the trial of this action, and the defendants reserve the right to amend this Answer at any time.

5

**WHEREFORE,** defendants Deauville Associates, Limited Partnership, Deauville Limited Partnership, Mount Pleasant Street Revocable Trust and John R. Redmond ask that the Complaint against them for Declaratory Relief be dismissed with prejudice, or, in the alternative, the Court enter Judgment in their favor with allowance of reasonable costs, to include attorneys fees expended in defending this baseless action and pursuing relief in the underlying case and the present coverage disputes.

## COUNTERCLAIM

Pursuant to FRCP 13(a), Deauville Associates, Limited Partnership, Deauville Limited Partnership, Mount Pleasant Street Revocable Trust and John R. Redmond Counterclaim against plaintiffs, and state as follows:

## HISTORICAL BACKGROUND

1. The pleadings in the underlying case, as referenced in paragraph 17 of the instant Declaratory Judgment action, indicate the minor C.J.F.'s claim allegedly arose against these defendants during his residence at 3145 Mt. Pleasant Street N.W., Apt. 202, in Washington D.C. during the period November 1995 to September 1996 (period of occupancy).

2. It was during the period of occupancy referenced above that the renewal of Kansas City Fire and Marine Insurance Company (Kansas City) policy 25 BC08028 780-95 and Continental Casualty Company

6

(Continental) policy 43137450 were in force at the subject location.
See Complaint at ¶ 21-22.

3. Plaintiffs here admit the have but fragmented copies of these
policies. See Complaint at ¶ 23. Yet they include in Exhibit B of
their Complaint a variety of terms, conditions and exclusions
ostensibly contained in the two (2) pertinent policies.

4. Plaintiffs reference a policy coverage limitation in the subject
policies to only one of the defendants here, Deauville Limited
Partnership, admittedly named as an insured, but ignore language in
both policies which expands the definition of an insured to:

   a. A partnership or joint venture, you are an
      insured. Your members, your partners, and
      their spouses are also insureds, but only with
      respect to conduct of your business.
   b. An organization other than a partnership or
      joint venture, you are an insured. Your
      executive officers and directors are insureds,
      but only with respect to their duties as your
      officers and directors. Your stockholders are
      also insureds, but only with respect to their
      liability as stockholders.

See Complaint at Exhibit B. (Kansas City Broad Form
Endorsement CGL Plus, at p.2 of 3 and Continental CGL
Apartment-Owners Package at p. 6 of 12). Evidence wll
show all these defendants fit within the aforesaid definitions
of an insured.

5. Equally untenable is the claim by plaintiff that the lead paint
exclusion they include in the two pertinent policies attached as

7

Exhibit B was a part of the actual policies issued to defendants for the period of occupancy related to the policy periods. The original of the Kansas City Policy 25 BX 08028780-96 has been found in the files of defendant Deauville Limited and is attached hereto as Exhibit I. It is apparent that no such lead paint exclusion is or was included in that policy nor is there any reference in the Forms and Endorsements, Limits of Insurance, Exclusions or other terms and conditions of the Kansas City policy to even intimate or infer a lead paint exclusion.

6. To the extent the Continental policy does contain a lead paint endorsement, these defendants are not in possession of the originals of the policy (CL 43137450); are disadvantaged as to the actual terms and conditions of it; and were never placed on any notice of any such diminution in coverage, as required by controlling Maryland law. Benner v. Nationwide Mut. Ins. Co., 93 F.3d 1228, 1233 and cases cited therein. See also Sun Ins. Office v. Mallick, 160 Md. 71 (1930)(insurance policy governed by Maryland law as it was obtained through Maryland broker, delivered to insured in Maryland, and premiums paid in Maryland); Aetna Cas. & Surety Co. v. Souras, 78 Md. App. 71, 77 (1989).

7. Moreover, when an earlier lead paint chip ingestion lawsuit was filed against various of these defendants in 1998 by the same counsel for the present plaintiff in the underlying case, related to allegedly

8

similar occurrences at this very location involving another defendant, Continental defended such claim; appointed counsel; and ultimately settled the case. See Exhibits II, III, IV and V. The earlier case covered a time period involving both the Kansas City renewal policy and the Continental policy, but the possible existence of a lead paint exclusion endorsement in the latter policy served as no impediment to a defense and ultimate coverage afforded for an identical claim, at the same location, for similar insureds, involving comparable time periods.

### FIRST CAUSE OF ACTION
### Breach of Contract

8. These defendants repeat and reallege each and every fact contained in paragraphs 1-7 above as if fully set forth herein.

9. The policies here by their very terms and conditions provide coverage for these defendants pursuant to the language employed by the drafters of these documents in regard to Section II- Who Is an Insured, par. 1(b, c), covering partnerships, their members, partners, joint ventures, officers and directors.

10. Of the two policies pertinent here to coverage periods related to the underlying lawsuit claims, the Kansas City policy, Exhibit I, clearly has no exclusion for lead paint claims. The Continental policy is alleged to have such an exclusion yet it admittedly is merely an amalgam of various specimen documents that may or may not

9

represent the actual policy sold by Continental to these defendants at
that time.  Moreover, if a lead paint exclusion was included in said
policy: it was done without notice to the insureds; without any
corresponding valid consideration for reduction in existing coverage
as required by controlling law; and was never earlier asserted by
Continental as a basis for coverage denial when prior similar lead
paint claims covering the same building, the same insureds, and even
the same plaintiff's attorney arose.

11. As a result and given the above-referenced circumstances, the
plaintiffs herein breached the duty owed defendants under the subject
policies to extend to them a defense of the underlying claims and
coverage therefore should such claims be perfected, thereby causing
them damages.

## SECOND CAUSE OF ACTION
### Waiver

12. These defendants repeat and reallege each and every fact contained
in paragraphs 1-11 above as if fully set forth herein.

13. The plaintiffs, by acting as heretofore alleged, intentionally,
voluntarily and with knowledge of all relevant facts gave up any
rights to now claim the applicability of or enforce any policy terms,
conditions and/or exclusions that would arguably deny these
defendants a defense of the underlying claims and coverage therefore
should any such claims be perfected.

10

### THIRD CAUSE OF ACTION
#### Estoppel

14. These defendants repeat and reallege each and every fact contained
    in paragraphs 1-13 above as if fully set forth herein.

15. By plaintiff's conduct described above, the defendants are entitled to
    a defense of the underlying claims and coverage therefore should any
    such claims be perfected in that defendants were led to reasonably
    believe that any supposed bars to defense and coverage for such
    claims, to the extent they existed, would be excused and defendants
    relied upon that belief.  See Exhibits II, III, IV, and V.

### FOURTH CAUSE OF ACTION
#### District of Columbia Consumer Protection Procedures Act

16. These defendants repeat and reallege each and every fact contained
    in paragraphs 1-15 above as if fully set forth herein.

17. Under the D.C. Consumer Protection Act, D.C. Code § 28-3905, the
    defendants here were consumers of services provided by plaintiffs
    and plaintiffs were involved in a trade practice of issuing insurance
    policies to consumers. The plaintiffs earlier providing of insurance
    defense and coverage to defendants related to similar claims as
    aforesaid: materially misled and deceived defendants; amounted to
    misrepresentation as to the extent of defense and coverage for
    comparable claims arising during the referenced policy periods; and

11

has caused and will continue to cause them damages – all in violation
of the statute.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation

18. These defendants repeat and reallege each and every fact contained
in paragraphs 1-17 above as if fully set forth herein.

19. By their conduct referenced above, plaintiffs negligently
misrepresented the material fact of defendants' entitlement to defense
and coverage of the underlying lead paint claims presently made
against them in that: representations, both oral and written as to
policy terms and conditions, were made contrary to subsequent
actions now taken by the plaintiffs; that these promises were material
to defendants in attempting to protect themselves and their interests;
that they were relied upon by them for such purposes; and that
plaintiffs' present change of position has caused defendants damages.

## SIXTH CAUSE OF ACTION
### Insurer Bad Faith

20. These defendants repeat and reallege each and every fact contained
in paragraphs 1-19 above as if fully set forth herein.

21. Defendants paid a substantial premium for the two pertinent
insurance policies in force during the period related to the underlying
claims.  They did so to protect themselves against, among other
things, lead paint claims and other potential catastrophic events.

12

They are now placed in a particularly vulnerable position given their reliance on the clear language of the policies extending the particular coverage sought and its also having been previously provided to them along with a defense by those carriers under nearly the exact same circumstances.

22. Plaintiffs on these facts presented, did not have a reasonable basis for denying the benefits of coverage and defense to these defendants. They nonetheless so acted knowingly, frivolously, and/or in reckless disregard of a reasonable basis for the present claim denial. Such conduct amounts to bad faith claims handling entitling defendants to a defense, coverage and damages, including punitive damages.

### SEVENTH CAUSE OF ACTION
### Fraud

23. These defendants repeat and reallege each and every fact contained in paragraphs 1-22 above as if fully set forth herein.

24. Upon consideration of the above-recited facts and present conduct, it is apparent plaintiffs made false representations of material facts to the defendants related to coverage and defense of lead based claims both orally and in the written policies; such representations were done either knowingly or in reckless disregard of the truth; with intent to deceive; and that defendant justifiably relied on the representations that they had lead based claim coverage; all to their

13

damage. Such conduct warrants an award of a defense and coverage of the underlying claims and damages including punitive damages.

WHEREFORE, defendants ask for judgment in their favor as follows:

    a.  a determination that given, at a minimum, the possibility of coverage, they are entitled to a defense of the underlying lead based paint claims;

    b.  a determination that they are entitled to coverage under one or both of the subject policies applicable to said claims as also previously so determined by plaintiffs themselves;

    c.  an award of the costs expended in their defending the underlying lead paint based claims, to include reasonable attorneys fees and interest thereon at the legal rate;

    d.  an award of the costs expended in defending the present proceeding and pursuing relief in this matter, to include reasonable attorneys fees and interest thereon at the legal rate;

    e.  an award of punitive damages in the amount of one million dollars ($1,000,000.00);

    f.  such other and further relief as the Court deems just and proper.

## JURY DEMAND

These defendants demand a jury trial on all issues raised herein.

14

Respectfully submitted,

John R. Redmond, Deauville Limited
Partnership, Deauville
Associates Limited Partnership, and
Mount Pleasant Street Revocable Trust

/s/_____
Joseph F. Cunningham, #65532
Daniel Glass, #494041
Cunningham & Associates, PLC
1600 Wilson Blvd., Suite 905
Arlington, Virginia 22209
Telephone: (703)294-6500
E-mail: cunninghamlawofc@aol.com
*Attorneys for Defendants John R.
Redmond, Deauville Limited
Partnership, Deauville Associates,
Limited Partnership, and Mount
Pleasant Street Revocable Trust*

## CERTIFICATE OF SERVICE

I hereby certify, on this 1rst day of November 2007 that the
foregoing Answer and Counterclaim were served electronically on:

Thomas C. Cardaro, Esq.
Cardaro & Peek, LLC
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
*Attorney for Defendant Figueroa*

Gabriela Richeimer, Esq.
Ross, Dixon & Bell, LLP
200 K Street, NW
Washington DC 20006-1040
*Attorney for Plaintiffs*

/s/_____
Daniel A. Glass





**business ✔choice**

---

## Renewal Certificate

Your Policy is renewed by the Stock Company(ies) indicated below in Your Coverage Overview which are members or affiliates of Continental Insurance. Their administrative offices are at One Continental Drive, Cranbury, New Jersey 08570-0001

---

## Policy Information

Named Insured   **DEAUVILLE LIMITED PARTNERSHIP**

Mailing Address  **3143 MOUNT PLEASANT STREET   NW WASHINGTON DC 20010-2709**

Renewing Policy Number  **25 BC   08028780-96**

Original Inception Date   **02/01/94**
Payment Plan   **OPTIBIL-PREPAID**

---

## Renewal Policy Period

Your Policy is in effect from **FEBRUARY 01, 1995** to **FEBRUARY 01, 1996**
at 12:01 A.M. Standard Time at your mailing address shown above.

---

## Your Insurance Representative

**ASSURANCE INCORPORATED
5025 DRUID DRIVE
KENSINGTON MD 208951223**

Telephone   **(301) 942-6166**
Producer Code   **19072263**

---

## Your Coverage Overview

In return for the payment of the premium, we agree with you to renew the Policy shown above for the period designated in the Renewal Policy Period above.

Your Policy consists of the following coverage parts. The company issuing it and a premium are indicated for each coverage part. This premium may be subject to adjustment. In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

| Coverage Part | Company | Premium |
|---|---|---|
| Commercial Property | | |
| Commercial General Liability | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Auto | Kansas City Fire & Marine Ins. Co. | Included |
| Commercial Excess Liability | Kansas City Fire & Marine Ins. Co. | Included |
| | | |
| | | |
| | | |
| **Your Premium For This Policy is** | | **$20,073** |
| Add Companion Policy: | | |
| **TOTAL PREMIUM** | | **$20,073.00** |



BDEC 16 Ed. 1/93



**INSURED COPY**



**Continental Insurance.**

Page 1

11/15/94

## business ✔choice℠

**Renewal Certificate**

Policy No.   25 BC   08028780-96

---

**Information About Premium Computation**
This renewal policy has been issued at rates in effect on the date of the renewal and the premiums shown in YOUR COVERAGE OVERVIEW.  These premiums are subjected to adjustment as provided in your policy.

---

**Audit Information**
An annual audit is required for the following Coverage(s):

---

**Forms and Endorsements**
Any new endorsement, forms, schedules or declarations; or endorsements, forms, schedules or declarations replacing earlier editions on your expiring policy are now attached to and form part of this renewal.  These forms are shown below next to their applicable coverage part.  Any Forms, schedules, or declarations deleted from your expiring policy are shown below next to their applicable coverage part.

```
Commercial Automobile:
New And Revised Forms:
                    CA 0001 1293    CA 0140 0994    CA 0263 0994
                    SDIS 112 0394
Deleted Forms:
                    CA 0001 0692    CA 0029 1288    CA 0140 0489
Deleted Forms:
                    CA 0215 0590    CA 9921 0178
Common Policy:
New And Revised Forms:
                    BDIS 5    0394
Commercial General Liability:
New And Revised Forms:
                    CG 2011    1185
                    BC 2201    0294  CG 0001    1093
```

---

Countersigned by: _____   Date: _____

PLEASE PLACE THIS RENEWAL CERTIFICATE WITH YOUR POLICY.

# Customer Bill of Rights

**W**e are very pleased that you and your agent or broker have chosen to place your business with Continental Insurance. We're committed to consistently demonstrate that your confidence in Continental is well placed. That means we will always treat you with the respect a valued customer deserves. And you can expect that we will:

- Respond promptly to your request for policy changes or additional coverages and inquiries concerning your claim.

- Handle your claim in a professional, prompt and courteous manner and provide you with a fair and equitable settlement as quickly as possible.

- Make it as easy and convenient as possible for you to report a claim to us through your agent or broker, or after hours by using our 24-hour "Dial-a-Claim *Plus* " sm service. That means an adjuster is available for emergency claims 24 hours a day.

- Make every effort to contact you within 24 hours after we have been notified of your loss, and begin working on your claim immediately.

- Schedule our inspection appointment at times that are convenient to you.

- Provide you with information on coverages available under your policy, and make prompt payments in accordance with your policy provisions.

- Conduct a thorough investigation of any covered claim made against you, to ensure your interests are protected.

- Assist you in assessing damages to your property or car as quickly as possible. Should you wish, we will provide you with a list of building contractors, auto repair facilities or other necessary services.

- If you choose a repair facility from this list, we will work with you and the repair facility to see that the work is completed to your satisfaction.

- Ensure that all outside services we use to adjust your claim provide you with the same professional, courteous and prompt attention we at Continental have committed to.

**C**ontinental Insurance is dedicated to live up to these commitments to provide you with excellent service and prompt attention. And every employee of Continental is determined to carry out that commitment.

**1-800-955-5500**
**Dial-A-Claim** *Plus* sm





# Notice To Policyholders
# BusinessChoice Policy
# Broadenings, Restrictions And Clarifications Of Coverage

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement. This notice does not reference every editorial change made in these forms and endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

## BROADENINGS OF COVERAGE

### CG 00 01 - Commercial General Liability Coverage Form (Occurrence Version)

This coverage form is revised to broaden coverage with respect to liability of leased workers. Two new definitions ("employee" and "leased worker") have been added to give leased workers the same status (both coverage and exclusions) under the CGL program as the traditional employee. A leased worker is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include 'temporary worker'."

### CG 00 01 - Commercial General Liability Coverage Form (Occurrence Version)

These coverage forms have been revised to broaden coverage with respect to the "insured contract" definition. Previously, the exception to paragraph f. applied to any person or organization. There is now coverage for liability assumed in contracts or agreements that indemnify persons or organizations other than a railroad for injury or damage arising out of construction or demolition operations within 50 feet of railroad property and affecting such property.

### CG 03 00 - Deductible Liability Insurance

There is a broadening in coverage in these coverage forms and endorsements when a loss exceeds the occurrence limit. Previously, deductibles reduced both damages and limits. Under the revised endorsement only damages will be reduced by the deductible.

## RESTRICTIONS IN COVERAGE

### CG 20 21 - Additional Insured Volunteers

This endorsement is revised to include the consequential injury, third-party action-over and professional health care exclusions to provide for consistency with the CGL policy. In addition, there is no coverage for volunteer workers with respect to "personal injury" to other volunteer workers, the Named Insured, the Named Insured's employees and the Named Insured's partners and members.

### CG 21 47 - Employment-Related Practices Exclusion

The personal injury exclusion in this endorsement will now apply 1) when the insured may be liable as an employer or in any other capacity; and 2) when the obligation to share or repay damages arising from employment-related practices exists. Also, there is no coverage for consequential injury to a spouse, child, parent, brother or sister at whom the employment-related practice is directed because of "bodily injury" or "personal injury".

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS - COVERAGE FORMS

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies. In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage. Those changes to each individual coverage form are described below:

Copyright, The Continental Corporation 1994. Includes copyrighted material of the Insurance Services Office used with its permission.

**CG 00 01 - Commercial General Liability Coverage Form (Occurrence Version)**

The Coverage A - Bodily Injury and Property Damage Liability exclusions under Section I now contain titles to provide for easier reading. The mobile equipment exclusion is revised to clarify that liability arising from mobile equipment, which is not being raced, but being used to prepare for prearranged racing events is covered. Coverage is still excluded for mobile equipment engaging or preparing to engage in these events.

The Fire Damage Legal Liability exception and the LIMITS OF INSURANCE section in the CGL coverage forms are revised to clarify that coverage exists for situations where an insured is given permission to occupy a portion of a building without the transfer of rent in the form of money. Paragraph 1.b. under Coverage C (MEDICAL PAYMENTS) has been editorially revised to add the word "administered". The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are not insureds for "bodily injury" or "personal injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading. The title in the DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT will now include the term "OFFENSE" to reflect that Coverage B - Personal and Advertising Injury Liability is triggered by an offense.

**BC 20 01 - Liability Coverage For Designated Organization, Volunteer, Committee Member or Trustee of Designated Organization**

**BC 20 02 - Liability Coverage For Designated Organization, Volunteer, Committee Member or Trustee of Designated Organization - Kentucky & Virginia**

These endorsements are revised to include the consequential injury, third-party action-over and professional health care exclusions to provide for consistency with the CGL policy. In addition, there is no coverage for volunteer workers with respect to: "bodily injury" or "personal injury" to other volunteer workers, the Named Insured, the Named Insured's employees and the Named Insured's partners and members; and "property damage" to any property owned, occupied, used by or in the care, custody or control of the Named Insured, the Named Insured's employees or other volunteer workers.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS - ENDORSEMENTS

**CG 20 10 - Additional Insured - Owners, Lessees or Contractors (Form B)**

This endorsement has been revised to clarify that only ongoing operations performed by the insured or on the insured's behalf are intended to be covered.

Form No. SDIS 112

## Commercial Auto Multistate Revision
## Notice of Coverage Broadenings, Restrictions and Clarifications
## 1993 Commercial Automobile Multistate Revision

This Advisory Guide has been prepared in connection with the introduction of the 1993 Multistate Revision to the Commercial Auto Coverage Forms and Endorsements. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage contained in each form as part of this multistate revision, for states adopting the 1993 program.

### BROADENINGS IN COVERAGE

**Audio, Visual and Data Electronic Equipment Coverage:**

CA 00 01 12 93 - Business Auto Coverage Form
CA 00 05 12 93 - Garage Coverage Form
CA 00 10 12 93 - Business Auto Physical Damage Coverage Form
CA 00 12 12 93 - Truckers Coverage Form
CA 20 02 12 93 - Sound Receiving Equipment Coverage - Fire, Police And Emergency Vehicles
CA 99 30 12 93 - Tapes, Records And Discs Coverage
CA 99 37 12 93 - Garagekeepers Coverage
CA 99 60 12 93 - Audio, Visual And Data Electronic Equipment Coverage
CA 99 61 12 93 - Loss Payable Clause - Audio, Visual And Data Electronic Equipment

This program extends coverage for electronic equipment which can be easily removed from the auto as an anti-theft measure.

Electronic equipment which operates in the console or dash of an auto, but which can be removed as an anti-theft measure, is becoming increasingly popular.

The development of the Audio, Visual and Data Electronic Equipment program also provides insureds the option to purchase additional coverage for more sophisticated and expensive high-tech electronic equipment.

Prior to this change, coverage was provided for electronic stereo equipment only if the equipment was permanently installed in the auto and was not removable.

**Definition of "Suit":**

CA 00 01 12 93 - Business Auto Coverage Form
CA 00 05 12 93 - Garage Coverage Form
CA 00 12 12 93 - Truckers Coverage Form

The definition of "suit" in the Commercial Auto Coverage Part has been broadened to include alternative dispute resolution proceedings in which the insured and insurer agree to participate, in addition to arbitration proceedings.

**Garagekeepers Endorsement and Garagekeepers Coverage - Customers' Sound Receiving Equipment:**

CA 99 37 12 93 - Garagekeepers Coverage
CA 99 59 12 93 - Garagekeepers Coverage And Garagekeepers Coverage - Customers' Sound Receiving Equipment

Endorsement CA 99 37 has been revised in accordance with the format and intent of new optional endorsement CA 99 59. These changes broaden the current scope of coverage available under the Commercial Auto program, by providing, in endorsement CA 99 59, an optional endorsement which affords specified coverages for customers' sound receiving equipment.

Copyright, The Continental Corporation, 1994. Includes copyrighted material of the Insurance Services Office used with its permission.



**Fire Damage Legal Liability Endorsement:**

CA 25 10 12 93 - Fire Damage Legal Liability
CA 25 14 12 93 - Broadened Coverage - Garages

We have broadened the scope of coverage afforded for Fire Damage Legal Liability by specifying that coverage exists for situations in which an insured is given permission to occupy a portion of a building without the transfer of rent in the form of money.

**Farm Labor Contractors Endorsement:**

CA 24 01 12 93 - Farm Labor Contractors

The removal of the "Each Person" entry slot from the Schedule and the Limit Of Insurance provision broadens Farm Labor Contractors coverage for the insured because each insured is no longer subject to an "Each Person" limit of liability.

**Owned-But-Not-Insured Exclusion**

CA 21 17 12 93 - Uninsured Motorists Coverage

Today, if the named insured sustains injuries as the result of an uninsured motorists while in a family member's auto which is not insured for UM. there is no coverage under his own policy due to the application of the current owned-but-not-insured exclusion (OBNI).

The revision to the OBNI exclusion broadens uninsured and underinsured motorists coverage by applying the OBNI exclusion only to the insured responsible for insuring the occupied vehicle, if such insured fails to insure the occupied vehicle. Therefore, an insured who occupies an uninsured family member's car will have coverage under his own policy for damages he is legally entitled to recover from the uninsured and underinsured motorists.

## RESTRICTIONS IN COVERAGE

**Other Insurance - Excess Escape:**

CA 21 17 12 93 - Uninsured Motorists Coverage

In conjunction with the implementation of the liberalized OBNI exclusion, we implemented "excess escape" language in the Other Insurance provision. This "excess escape" language states that when other uninsured motorists/underinsured motorists policies are available to the insured, the total recovery for damages will be capped at the highest applicable limit for any one vehicle under any insurance providing coverage on a primary or excess basis.

However, the net effect of the implementation of both the liberalized OBNI exclusion and the Other Insurance "excess escape" language, is a broadening of coverage.

## CLARIFICATIONS OF COVERAGE

**Duty to Defend:**

CA 00 01 12 93 - Business Auto Coverage Form
CA 00 05 12 93 - Garage Coverage Form
CA 00 12 12 93 - Truckers Coverage Form
CA 25 08 12 93 - Personal Injury Liability Coverage - Garages
CA 25 14 12 93 - Broadened Coverage - Garages
CA 99 37 12 93 - Garagekeepers Coverage
CA 99 59 12 93 - Garagekeepers Coverage - Customers' Sound Receiving Equipment

The duty to defend language in the Commercial Auto Coverage Forms and multistate endorsements has been revised to clarify that:

- the insurer defends an insured named in a "suit", as opposed to defending the "suit" itself; and

- the purpose of the "suit" is to seek damages for "bodily injury" and "property damage" to which the insurance applies.

**Racing Exclusion:**

CA 00 01 12 93 - Business Auto Coverage Form
CA 00 05 12 93 - Garage Coverage Form
CA 00 10 12 93 - Business Auto Physical Damage Coverage Form
CA 00 12 12 93 - Truckers Coverage Form
CA 99 03 12 93 - Auto Medical Payments

A Racing Exclusion for implementation in the above forms and multistate endorsement, under Liability and Physical Damage Coverages, was introduced to clarify that coverage for organized racing, speeding or stunting activity has never been contemplated within the Commercial Auto program.

**Garage Liquor Liability Exclusion:**

CA 00 05 12 93 - Garage Coverage Form

The garage liquor liability exclusion has been revised to clarify its application to all premises that have a liquor liability exposure regardless of whether the named insured is the owner, lessor or lessee of the premises.

**Clarification of Definition of Personal Injury and Revisions For Consistency with Commercial General Liability (CGL):**

CA 00 05 12 93 - Garage Coverage Form
CA 25 08 12 93 - Personal Injury Liability Coverage - Garages
CA 25 14 12 93 - Broadened Coverage - Garages

The following revisions have been made to track with language contained in the CGL program and to clarify and strengthen the intent and application of coverage provided under the Garage Coverage Form (GCF):

- Exclusionary language for employment related practices when personal injury is the trigger for coverage, has been built directly into the GCF and endorsements CA 25 08 and CA 25 14.

- The format of Paragraph 8.d.2. of the Pollution Exclusion in the GCF has been revised to clearly indicate that it applies to the entire exclusion.

- Definitions of "products" and "work you performed" in the GCF have been revised to include language regarding the "providing of or failure to provide warnings or instructions".

- The definition of "personal injury" has been revised to track language contained in the CGL program.

**Limit of Insurance - Revised Non-Duplication Of Benefits And The Arbitration Condition:**

CA 00 01 12 93 - Business Auto Coverage Form
CA 00 05 12 93 - Garage Coverage Form
CA 00 12 12 93 - Truckers Coverage Form
CA 21 17 12 93 - Uninsured Motorists Coverage
CA 99 03 12 93 - Auto Medical Payments

The Limit of Insurance provisions in the Commercial Auto Coverage Forms and multistate endorsements have been revised to replace the damages offset language with revised non-duplication of benefits language. Such revised non-duplication language serves to clarify that an insured will not receive larger payment than is needed to pay for damages sustained.

The Arbitration condition in endorsement CA 21 17 was revised to clarify original underwriting intent that issues concerning whether there is coverage under the endorsement are not subject to arbitration.



# P R O P E R T Y

110082SNC 08020119072263510000000592

**business ✔choice** ℠

## Commercial Property Coverage Part Declarations
### Property Coverages/Optional Coverages

Policy No. _25 BC_ _08028780-96_

| Premises Number | Coverages and Descriptions of Premises | Value Used To Determine Premium | Premises Limit of Insurance |
|---|---|---|---|
| 001 | Building(s) (at these premises)<br><br>3143-45 MT PLEASANT STREET NW WASHINGTON DC 20010<br><br>Business Personal Property | $3,566,890 | $3,566,890 |
| | Building(s) (at these premises)<br><br><br><br>Business Personal Property | | |

| Premises Number | Mortgage Holder's Name and Address |
|---|---|
| 001 | SUBURBAN MORTG. ASSOC., INC.<br>7316 WISCONSIN AVE. NW #208<br>BETHESDA MD 20814 |

NOTE: Your deductible is $ _1000_ . The seasonal increase for Business Personal Property is _25_ %.

Forms Or Endorsements Applicable To Specific Premises:
**All forms are as per the expiring policy except for those listed on BDEC 16**

Forms Or Endorsements Applicable To The Commercial Property Coverage Part:
**All forms are as per the expiring policy except for those listed on BDEC 16**

BDEC 4 Ed. 1/93


Continental Insurance.

INSURED COPY

POLICY NUMBER:   25 BC  08028780-96                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**1.** Designation of Premises (Part Leased to You):    3143-45 MT PLEASANT
STREET    NW
WASHINGTON          DC  20010

**2.** Name of Person or Organization (Additional Insured): WASHINGTON REALTY, INC.
4420 CONNECTICUT AVENW
WASHINGTON DC 20008

**3.** Additional Premium:   INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Professional Services

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to COVERAGES A and B (Section I):

  **1.** This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional service or any activities supporting professional services, such as secretarial or clerical. Professional services include but are not limited to:

  **a.** Legal, accounting or advertising services;

  **b.** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

  **c.** Supervisory, inspection or engineering services;

  **d.** Services in the performance of any claim, investigation, adjustment, appraisal, survey or audit services;

  **e.** Any error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; or the reporting of or reliance upon any such test, evaluation, consultation or advice;

  **f.** Medical, surgical, dental, x-ray or nursing services or treatment, or the related furnishing of food or beverages;

  **g.** Any health service or treatment;

  **h.** Any cosmetic or tonsorial service or treatment;

  **i.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

  **j.** The handling or treatment of dead bodies, including autopsies, organ donation or other procedures;

  **k.** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

  **l.** Ear piercing services;

  **m.** Services in the practice of pharmacy;

  **n.** Any massage, physiotherapy or chiropody; or

  **o.** Performing electronic data processing, systems analysis, design, programming or consulting or other similar services.

  **2.** This Professional Services Exclusion does not apply to:

  **a.** Pharmocological services if the insured does business as a retail druggist or drugstore;

  **b.** Hearing aid services if the insured does business as a hearing aid service establishment.

**B.** The following is added to subparagraph 2.a.(1)(d) of WHO IS AN INSURED (Section II):

However,

  **(i)** If you do business as a retail druggist or drugstore, your employees who are pharmacists are insureds with respect to acts within the scope of their duties as pharmacists; or

  **(ii)** If you do business as a hearing aid service establishment, your employees who are hearing aid professionals are insureds with respect to acts within the scope of their duties as hearing aid professionals.

Copyright, The Continental Corporation, 1994. Includes copyrighted material of the Insurance Services Office used with its permission.
**BC 22 01 02 94**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

### SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**(2)** That the insured would have in the absence of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.



**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement.

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions.

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement.

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions.

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.



**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

### SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

   **a.** Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

     **(1)** "Bodily injury" or "personal injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

       **(d)** Arising out of his or her providing or failing to provide professional health care services.

     **(2)** "Property damage" to property:

       **(a)** Owned, occupied or used by,

       **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

     you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

     **(1)** With respect to liability arising out of the maintenance or use of that property; and

     **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

   **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage A; and

   **b.** Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.



c. You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   **a. Primary Insurance**

   This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   **b. Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(2)** That is Fire insurance for premises rented to you; or

   **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

   When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(2)** The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

   **c. Method of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in **a.** above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.a.** "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned.

**b.** "Your work" will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed.

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**c.** This hazard does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**17.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**18.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**19.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

**ITEM TWO** of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

**SYMBOL        DESCRIPTION**

**1** = ANY "AUTO".

**2** = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3** = OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4** = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5** = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6** = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7** = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

**8** = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

**9** = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

**1.** If symbols **1**, **2**, **3**, **4**, **5** or **6** are entered next to a coverage in **ITEM TWO** of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.



**2.** But, if symbol **7** is entered next to a coverage in **ITEM TWO** of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

  **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

  **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

  **a.** Breakdown;

  **b.** Repair;

  **c.** Servicing;

  **d.** "Loss"; or

  **e.** Destruction.

## SECTION II - LIABILITY COVERAGE

## A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

## 1. WHO IS AN INSURED

The following are "insureds":

  **a.** You for any covered "auto".

  **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

    **(2)** Your employee if the covered "auto" is owned by that employee or a member of his or her household.

    **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

    **(4)** Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

Copyright, Insurance Services Office, Inc., 1993

**(5)** A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

## 2. COVERAGE EXTENSIONS

**a.** Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $100 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-of-State Coverage Extensions.**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. EXCLUSIONS

This insurance does not apply to any of the following:

### 1. EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. CONTRACTUAL

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

### 3. WORKERS' COMPENSATION

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily injury" to:

**a.** An employee of the "insured" arising out of and in the course of employment by the "insured"; or

**b.** The spouse, child, parent, brother or sister of that employee as a consequence of paragraph **a.** above.



This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**5. FELLOW EMPLOYEE**

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

**6. CARE, CUSTODY OR CONTROL**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. HANDLING OF PROPERTY**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. OPERATIONS**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

**10. COMPLETED OPERATIONS**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. POLLUTION**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### 13. RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.



## SECTION III - PHYSICAL DAMAGE COVERAGE

## A. COVERAGE

1. We will pay for "loss" to a covered "auto" or its equipment under:

**a.** Comprehensive Coverage. From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

**b.** Specified Causes of Loss Coverage. Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

Copyright, Insurance Services Office, Inc., 1993

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c.** Collision Coverage. Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

## 2. Towing.

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

## 3. Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles.

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4.** Coverage Extension. We will pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

## B. EXCLUSIONS

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

### a. Nuclear Hazard.

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

### b. War or Military Action.

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Equipment designed or used for the detection or location of radar.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

  **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**C. LIMIT OF INSURANCE**

The most we will pay for "loss" in any one "accident" is the lesser of:

**1.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**D. DEDUCTIBLE**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. LOSS CONDITIONS**

  **1. APPRAISAL FOR PHYSICAL DAMAGE LOSS**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

  **a.** Pay its chosen appraiser; and

  **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

  **2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS**

  **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

    **(1)** How, when and where the "accident" or "loss" occurred;

    **(2)** The "insured's" name and address; and

    **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

  **b.** Additionally, you and any other involved "insured" must:

    **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

    **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

    **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit".

    **(4)** Authorize us to obtain medical records or other pertinent information.

    **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.



c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

### 3. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

### 4. LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

### 5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. GENERAL CONDITIONS

### 1. BANKRUPTCY

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

### 2. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

### 3. LIBERALIZATION

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. NO BENEFIT TO BAILEE - PHYSICAL DAMAGE COVERAGES

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

### 5. OTHER INSURANCE

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

Copyright, Insurance Services Office, Inc., 1993

**c.** Regardless of the provisions of paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

## 6. PREMIUM AUDIT

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

## 7. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico; and

**d.** Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

## 8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand or order; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**F.** "Insured contract" means:

  **1.** A lease of premises;

  **2.** A sidetrack agreement;

  **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

  **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

  **a.** That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

  **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

  **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**G.** "Loss" means direct and accidental loss or damage.

**H.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J. "Property damage" means damage to or loss of use of tangible property.

K. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense",

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

L. "Trailer" includes semitrailer.

Copyright, Insurance Services Office, Inc., 1993

COMMERCIAL AUTO
CA 01 40 09 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DISTRICT OF COLUMBIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. SUSPENSION OF COVERAGE**

In accordance with the requirements of District of Columbia law, all coverages provided by this coverage form shall be suspended for you or any "family member" who operates any vehicle during any period when that person's driver's license is suspended or revoked.

**B. CHANGES IN MEDICAL PAYMENTS COVERAGE**

Any amount payable under this coverage shall be reduced by any amount paid or payable under any Personal Injury Protection coverage for the same element of loss.

**C. ADDITIONAL DEFINITIONS**

As used in this endorsement:

"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.



Copyright, Insurance Services Office, Inc., 1993

COMMERCIAL AUTO
CA 02 63 09 94

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DISTRICT OF COLUMBIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The CANCELLATION Common Policy Condition does not apply. The following Condition applies instead:

**ENDING THIS POLICY**

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

3. If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

4. If this policy has been in effect more than 30 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The registration of a covered auto has been suspended or revoked during the policy period and this results in no covered "auto" being validly registered;

   **c.** An insured's license has been suspended or revoked during the policy period.

5. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew or continue this policy we will mail or deliver to the first Named Insured written notice at least 30 days before the end of the policy period. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. Failure to pay the required renewal or continuation premium when due shall mean that the first Named Insured has not accepted our offer.

2. If the first Named Insured obtains other insurance this policy will end on the effective date of that insurance.

**C. Mailing of Notices**

We will mail by post office receipt secured or certified mail or deliver our notice of cancellation or nonrenewal to the last mailing addresses known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1993



CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 897-1133

MARIA QUIJANO, Individually, and as Parent
and Next Friend of her Minor Daughter,
KAIDA J. QUIJANO, et al.
3200 16th St, NW, #204                     *Plaintiff*
    vs.    Washington, DC   20010

Civil Action No. 20-2-08

JOHN R. REDMON
7312 Brookstone Court
Potomac MD  20854                     *Defendant*

### SUMMONS

To the above named Defendant:   JOHN R. REDMON

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days of service of after this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 a.m. and 4:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

THOMAS C. CARDARO (# 418330)

Name of Plaintiff's Attorney
Klores & Cardaro, 3rd Floor
915-15th Street, NW
Address  Washington, DC   20005

By _____
          Deputy Clerk

202-628-7600
Telephone

Date _____APR 2 8 1998_____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIAN AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF
AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.



BEFORE THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

MARIA QUIJANO, Individually, and as Parent )
and Next Friend of her Minor Daughter, )
ZAIDA J. QUIJANO )
3200 - 16th Street, NW, Apartment 204 )
Washington, DC  20010 )
)
and )
)
MANUEL De JESUS QUIJANO, Individually, and )
as Parent and Next Friend of his Minor Daughter, )
ZAIDA J. QUIJANO )
3200 - 16th Street, NW, Apartment 204 )
Washington, DC  20010 )
)
    Plaintiffs, )
)
   v. )
)
JOHN R. REDMON )
7312 Brookstone Court )
Potomac, Maryland 20854 )
)
    Defendant. )

RECEIVED
Civil Clerk's Office

APR 2 8 1998

Superior Court
Demror of ...

00U020.1-98

Case No. _____
JURY TRIAL REQUESTED

## COMPLAINT

Come now the plaintiffs, Maria Quijano and Manual DeJesus Quijano, Individually and

as Parents and Next Friends of their minor daughter, Zaida J. Quijano, by and through their

attorneys, Thomas Cardaro, Esquire and Klores & Cardaro, P.C., and sue defendant John R.

Redmon, stating as follows:

## COUNT I

1.  Jurisdiction of the Court is invoked pursuant to 11 D.C. Code § 921, et seq.

2.  Zaida J. Quijano is the minor child of Maria Quijano and Manual DeJesus

LORES & CARDARO, P.C.
ATTORNEYS AT LAW
843 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 898-0100
TELECOPIER: (202) 898-1140

1

Quijano.  Zaida J. Quijano was born on April 21, 1995.  Maria Quijano and Manual DeJesus Quijano are bringing this lawsuit individually and on behalf of their daughter, Zaida J. Quijano.

3.      Defendant, at all times relevant hereto, regularly conducted business in the District of Columbia.  At all relevant times, defendant owned, operated, managed, supervised and maintained the premises located at 3145 Mt. Pleasant Street, NW, Washington, D.C., which the defendant offered for rental to the plaintiffs and their family.

4.      Zaida J. Quijano resided at 3145 Mt. Pleasant Street with her parents, Maria Quijano and Manual DeJesus Quijano, from August 1995 through approximately August 1996. At all times pertinent hereto, Zaida J. Quijano's residency at 3145 Mt. Pleasant Street was known to the defendant.

5.      While plaintiffs lived at 3145 Mt. Pleasant Street, NW, Washington, DC, quantities of lead-based loose paint chips and powder were exposed throughout the property including, but not limited to window sills, doors, trim, walls, baseboards, and other areas throughout property, as a direct and proximate result of the acts or omissions of the defendant and/or his agents, servants and/or employees. The lead-based paint chips and powder were left in areas easily and foreseeably accessible to small children, such as Zaida J. Quijano.

6.      Throughout plaintiffs' tenancy, lead-based paint was peeling, chipping and flaking throughout the property in areas within the reach of the minor plaintiff.

7.      On information and belief, at all pertinent times defendant was aware that plaintiffs, Maria Quijano and Manual DeJesus Quijano, would be living on the premises with their minor daughter, Zaida J. Quijano.

LOKER & CARDANO, P.C.
ATTORNEYS AT LAW
913 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 898-4100
TELECOPIER: (202) 898-1348

2

8.     On information and belief, defendant and/or his agents, servants or employees entered the property regularly and observed its condition, including loose, flaking and peeling paint chips and dust throughout the premises.

9.     Defendant either knew or should have known that the property located at 3145 Mt. Pleasant Street, NW, Washington, DC contained flaking and peeling lead paint which defendant either knew or should have known was hazardous to the health of Zaida J. Quijano. Defendant possessed this information prior to the time that Zaida J. Quijano became lead poisoned, and consequently, had a reasonable opportunity to correct this hazardous condition prior to Zaida J. Quijano's lead poisoning.

10.    Defendant, at all times pertinent to this case, negligently and intentionally failed to timely and fully correct the conditions which resulted in the exposure of Zaida J. Quijano to lead-based paint.

11.    While living at 3145 Mt. Pleasant Street, NW, Zaida J. Quijano on frequent occasions, was exposed to and ingested lead-based paint chips and powder in and about the home.

12.    As a consequence of ingesting lead-based paint chips and powder, Zaida J. Quijano has suffered lead poisoning, having lead content levels in her blood far in excess of the normal range. Zaida J. Quijano has been subjected to painful testing and treatment as a result of her lead poisoning. Upon information and belief, Zaida has suffered physical, psychological, developmental and behavioral injuries that will permanently impact on her ability to care for and support herself in the future.

13.    During all pertinent times, defendant had a duty to use reasonable care to protect

.ONES & CANDARO, P.C.
ATTORNEYS AT LAW
813 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 898-4100
TELECOPIER: (202) 898-1340

3

Zaida J. Quijano from exposure to the toxic lead-based paint on the premises. The presence of these defects in and about the home posed a clear risk and danger that foreseeably could cause Zaida J. Quijano great harm. Defendant knew, or should have known of this danger to Zaida J. Quijano.

14.    Defendant breached his duty to plaintiffs by exposing Zaida J. Quijano to flaking and peeling lead paint by, inter alia, negligently and carelessly:

(a)    failing to remove the lead-based paint, powder, and paint chips on the property prior to and during plaintiffs' tenancy;

(b)    failing to inform plaintiffs of the existence of a dangerous level of lead-based paint in the house;

(c)    failing to properly inspect the house for the existence of lead-based paint;

(d)    failing to remove the dangerous lead-based paint from the house;

(e)    failing to properly maintain the property in order to prevent exposure to lead-based paint;

(f)    failing to comply with District of Columbia Municipal Regulations and other statutory provisions which prohibit the existence of flaking, loose or peeling paint and the use of paint with lead pigment on the walls of District of Columbia dwellings; and

(g)    otherwise acting negligently and carelessly.

15.    The defendant's negligent acts and omissions directly and proximately caused Zaida J. Quijano great harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

JORDG & CARDARO, P.C.
ATTORNEYS AT LAW
14 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 628-4100
TELECOPIER: (202) 628-1140

4

16.    Plaintiffs exercised due care and were not contributorily negligent at any time pertinent to this case.

WHEREFORE, Maria Quijano and Manual DeJesus Quijano, individually and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees costs, and whatever other relief this Court deems appropriate.

### COUNT II
### (Strict Liability)

17.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 16 above as if fully alleged herein.

18.    The defendant, as a supplier of rental housing to the plaintiffs and their family, was under duty to conduct a reasonable inspection of the property located at 3145 Mt. Pleasant Street, NW, Washington, DC and to test the property for possible defects such as the existence of flaking, loose or peeling paint chips or dust that contained lead-based paint, in order to reasonably assure the safety of the rental property for its occupants.

19.    The defendant, as a supplier of rental housing, knew, or by use of reasonable care should have known, that the rental housing that he supplied the plaintiffs and their family contained flaking, loose and peeling paint chips and dust that contained lead-based paint that posed an unreasonable risk of physical and mental harm to Zaida J. Quijano.

20.    While living at 3145 Mt. Pleasant Street, NW, Washington, DC, Zaida J. Quijano on frequent occasions was exposed to and ingested lead-based paint chips and powder, and peeling lead-based paint in and about the home. As a result of her ingestion of lead-based

LORES & CARDARO, P.C.
ATTORNEYS AT LAW
1140 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 898-4100
TELECOPIER: (202) 898-1540

5

paint chips and powder, Zaida J. Quijano sustained serious and permanent mental and physical harm.

21.    Prior to Zaida J. Quijano's  lead poisoning, plaintiffs and their family were unaware of the unreasonably dangerous and defective condition of the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, as a result of the flaking, loose and peeling paint chips and dust that contained lead-based paint located within the property.

22.    Plaintiffs and their family did not substantially alter the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, during their tenancy and prior to the harm sustained by Zaida J. Quijano due to her ingestion of paint chips and dust that contained lead.

23.    The defendant is strictly liable for the harm sustained by Zaida J. Quijano as a result of his failure to properly inspect and test the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, and his failure to warn the plaintiffs that the property supplied to the plaintiffs and their family contained flaking, loose and peeling paint chips from the property prior to renting it to the plaintiffs and their family.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

## COUNT III
### (Nuisance)

24.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 23 above as if fully alleged herein.

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
1111 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 232-4100
TELECOPIER: (202) 234-1940

25.    The defendant's failure to remove flaking, loose or peeling lead-based paint and powder from the house located at 3145 Mt. Pleasant Street, NW, Washington, DC, at all times pertinent herein, constituted a nuisance and unreasonable conduct that greatly endangered the health of Zaida J. Quijano and caused her to sustain serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

26.    The defendant is responsible for the damages and injuries sustained by Zaida J. Quijano by continuing to allow the existence of flaking, loose or peeling lead-based paint and powder in the house located at 3145 Mt. Pleasant Street, NW, Washington, DC, thereby causing serious and permanent harm to Zaida J. Quijano.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

<div align="center">

COUNT IV
(Breach of Warranty)
</div>

27.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 26 above as if fully alleged herein.

28.    Under the terms of the lease that existed between the defendant and the plaintiffs and their family, at all times pertinent herein, and under District of Columbia law, the defendant warranted that the property occupied by the plaintiffs and their family at 3145 Mt. Pleasant Street, NW, Washington, DC, was in compliance with District of Columbia housing

.OREN & CANDARO. P.C.
ATTORNEYS AT LAW
113 FIFTEENTH STREET. N.W.
THIRD FLOOR
WASHINGTON. D.C. 20005
(202) 898-4100
TELECOPIER: (202) 898-1340

7

regulations and fit for normal human habitation and uses.

29.    By renting property that contained flaking, loose or peeling paint chips and dust that contained lead-based paint, the defendant endangered the life, health and safety of Zaida J. Quijano. Defendant breached his express and implied warranty of habitability which existed between the defendant and the plaintiffs.

30.    As a direct and proximate result of defendant's breach of his warranty of habitability, Zaida J. Quijano sustained serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, prays this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

### COUNT V
### (Breach of consumer Protection Act)

31.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 30 above as if fully alleged herein.

32.    Section 28-3904 of the District of Columbia Code (1981 ed.) prohibits unlawful trade practices including the offer for rental of consumer realty in a manner that is misleading or tends to mislead, or that otherwise misrepresents the standard, quality or safety of the offered rental property.

33.    The defendant rented the plaintiffs and their family property that contained

ORES & CARDAHO, P.C.
ATTORNEYS AT LAW
13 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 408-4100
TELECOPIER: (202) 408-1940

loose, flaking and peeling lead-based paint and dust that was dangerous to the life, health and safety of Zaida J. Quijano.

34.    By renting property without disclosing that it was dangerous to the life, health and safety of Zaida J. Quijano, defendant endangered the life, health and safety of Zaida J. Quijano and committed an unlawful trade practice as defined in the District of Columbia Code.

35.    As a direct and proximate result of the defendant's commission of an unlawful trade practice,    Zaida J. Quijano sustained serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter, Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

## COUNT VI
### (Parent's Claim)

36.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 to 35 above.

37.    As a direct and proximate result of defendant's actions described herein, plaintiffs, Maria Quijano and Manuel DeJesus Quijano, as parents responsible for Zaida J. Quijano's care and maintenance, have and will continue to incur great expenses for the medical and educational care, treatment, and attention for and to their daughter as a result of Zaida J. Quijano becoming exposed to dangerous lead-based paint.

OREN & CARDARO, P.C.
ATTORNEYS AT LAW
1st FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 638-4100
TELECOPIER (202) 638-1946

9

WHEREFORE, plaintiffs Maria Quijano and Manuel DeJesus Quijano, individually,

pray this Court award them compensatory damages against defendant in the amount of One

Million Dollars (1,000,000.00), plus attorneys fees, costs, and whatever other relief this Court

deems appropriate.

JURY TRIAL REQUESTED.

<div style="margin-left:40%">

Respectfully submitted,

KLORES & CARDARO, P.C.

By: _____

Thomas C. Cardaro (#418330)
915-15th Street, NW, 3rd Floor
Washington, DC 20005
Tel.: 202-628-8100
Attorney for Plaintiffs

</div>

k:\1043\kpl.49

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
915 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005

(202) 628-8100
TELECOPIER : (202) 628-1240

# Carr Goodson Lee & Warner

1301 K Street, NW
Suite 400, East Tower
Washington, DC 20005-3300
(202) 310-5500
(202) 310-5555 Fax
Internet: http://www.cglw.com

Tycon Towers
8000 Towers Crescent Drive
Suite 1350
Vienna, VA 22182
(703) 691-8818

The World Trade Center
401 E. Pratt Street
Suite 1622
Baltimore, MD 21202
(410) 752-1570

31 Wood Lane
Rockville, MD 20850
(301) 424-7024
**Mark A. Collins**
**202-310-5533**
Admitted in DC, MD & CA

October 21, 1998

Mr. John R. Redmond
7312 Brookstone Court
Potomac, Maryland 20854

    Re: *Quijano v. Redmond*
    (D.C. Superior Court Civil Action Number: 3202-98)
    <u>Our File No.:  04198DC002</u>

Dear Mr. Redmond:

    This letter will serve to confirm that this office has been retained by the CNA Insurance Companies to represent you in the above-referenced matter.

    Should you require any further information at this time, please do not hesitate to contact me.

        Sincerely,

        Mark A. Collins

MAC/als

981021-mac-1



# Carr Goodson Lee & Warner

Tycon Towers
8000 Towers Crescent Drive
Suite 1350
Vienna, VA 22182
(703) 691-8818

The World Trade Center
401 E. Pratt Street
Suite 1622
Baltimore, MD 21202
(410) 752-1570

31 Wood Lane
Rockville, MD 20850
(301) 424-7024

**Mark A. Collins**
**202-310-5533**
Admitted in DC, MD & CA

1301 K Street, NW
Suite 400, East Tower
Washington, DC 20005-3300
(202) 310-5500
(202) 310-5555 Fax
Internet: http://www.cglw.com

December 30, 1998

Mr. John R. Redmond
7312 Brookstone Court
Potomac, Maryland 20854

  Re: *Quijano v. Redmond*
  Our File No.: 04198DC002

Dear Mr. Redmond:

  Several weeks ago I sent you draft versions of Responses to Interrogatories and Responses to Requests for Admissions that we have prepared on your behalf. I hope that by now you have had the opportunity to review these documents. Please provide me with your input either by sending me your written additions, or giving me a telephone call to discuss the materials. Once we have agreed upon the content of your discovery responses, please execute the verification page and return it to me.

  On another subject, plaintiffs' counsel has advised me that he plans to amend the complaint to name Deauville Associates LLP and the Mount Pleasant Street Revocable Trust as defendants. I have requested that CNA authorize my firm to represent these additional defendants. As you know, Deauville Associates LLP is the named insured on Continental policy number 25 BC 08028780-96, under which CNA is already defending you. You have previously advised that Deauville Associates LLP purchased 3145 Mt. Pleasant in 1985, and placed the title into the Mt. Pleasant Street Revocable Trust sometime in 1996, where it remains to the present. I will keep you advised of developments on this front.

  Please give me a call concerning your discovery responses as soon as possible.

  Best wishes for the New Year.

       Sincerely,

       Mark A. Collins

MAC/als
Enclosures



LAW OFFICES
# CUNNINGHAM & ASSOCIATES, PLC
ATTORNEYS & COUNSELORS AT LAW
1600 Wilson Boulevard, Suite 905
Arlington, Virginia 22209

**FILE**

VIRGINIA

WASHINGTON, D.C.

MARYLAND

(703) 294-6500
Fax: (703) 294-4885
cunninghamlawofc@aol.com
http://www.cunninghamlawyers.com

MARYLAND OFFICE

1111 BONIFANT STREET
SILVER SPRING, MD 20910-3376

WASHINGTON, D.C. OFFICE

5039 CONNECTICUT AVE. NW, BLD 3
WASHINGTON, DC 20008

JOSEPH F. CUNNINGHAM (DC, MD, VA)
DANIEL A. GLASS (DC, NJ, PA)
EDWARD P. TRIVETTE (VA)
BRANDON S. OKES (VA)
LOUIS J. CANNON, JR. (MD)
JONATHAN A. THEYS (VA)

August 28, 2007

Lisa LaConte
Claims Consultant
CNA Insurance
Environmental and Mass Tort Claims
1249 South River Road
Cranbury, NJ 08512

|               |                                   |
|---------------|-----------------------------------|
| Claimants:    | Figueroa v. John Redmond, et al.  |
| Insured:      | Deauville Limited Partnership     |
| Case No.:     | 2007 CA 003221 B                  |
| Claim No.:    | E2363873                          |

Dear Ms. LaConte:

This letter is to seek reconsideration of CNA's denial of coverage for Deauville Limited Partnership in the above-captioned lawsuit. As a preliminary matter, I want to inform you that Cunningham & Associates, PLC, has been retained to defend the interests of Deauville Limited Partnership and its general partner, John Redmond, in this matter. However, I am admitted to practice on the case *pro hac vice*; the lead attorney on the case is Joseph F. Cunningham.

Your denial letter appears to set forth two bases for denial: (1) that there *may not* have been a "bodily injury" that took place "during the policy period" and (2) that a Lead Liability Exclusion, which does not explicitly appear in the language of policy 25 BC 08028780-96, the policy term that governs the above-captioned lawsuit, acts to bring the plaintiff's allegations within a policy exclusion. Both bases are defective.

First, as you must know, an insurer's duty to defend is broad. That duty is governed by the four corners of a plaintiff's complaint. If the complaint raises even a potentiality of coverage, an insurer must defend. Aetna Casualty & Sur. Co. v. Cochran,

1

337 Md. 98, 103 (1995). The merits of the complaint are not a factor; whether a plaintiff might not ultimately be able to recover, also, is not a factor. Id. You must also know that any ambiguities regarding the complaint, indeed any ambiguities at all, are generally resolved in favor of the insured. Mutual Fire, Marine & Inland Ins. Co. v. Vollmer, 306 Md. 243, 251 (1986).

The policy at issue here defines "bodily injury" and "occurrence" in the following way:

"Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The plaintiff's Complaint clearly alleged bodily injury on the part of the minor plaintiff resulting out of plaintiff's tenancy at 3145 Mount Pleasant Street, NW, Apt. 202 from November 1995 until September of 1996. That alleged bodily injury arose out of an "occurrence" as defined in the policy. To the extent that you claim there "may be" a possibility that the plaintiff was exposed to lead on the premises after February 1, 1996, note that the plaintiff alleged exposure to lead paint *at the inception of* and *throughout* her tenancy at the subject premises. Again, any ambiguity regarding the date on which the minor plaintiff was allegedly injured is to be resolved in favor of coverage. Indeed, if such injury did occur at the subject premises as alleged, it ultimately may be impossible to pin down an exact date on which the minor plaintiff was injured or began to suffer the injury. This does not avoid CNA's duty to defend and indemnify Deauville Associates in the above-captioned matter.

You next point to a Lead Liability Exclusion ("Exclusion") that supposedly acts to deny coverage under the policy. In the 1995-1996 language of the policy, there appear fourteen (14) exclusions, explicitly spelled out, to the Bodily Injury and Property Damage Liability section of the Commercial General Liability Part of the policy. The Exclusion at issue here is not one of those spelled out. To the extent that there is a shred of merit to CNA's claim that it intended the Exclusion to apply to this policy term is clearly an ambiguity to be resolved in the favor of the insured. A plain reading of the contract would suggest that the only exclusions in effect are the multitude actually spelled out in the policy language.

Your position, however, apparently is that language in the Forms and Endorsements section of the policy at issue incorporates the omitted Exclusion by reference. The pertinent language reads:

Any…endorsements, forms, schedules or declarations replacing earlier editions on your expiring policy are now attached to and form part of this renewal. These forms are shown below next to their applicable coverage part.

2

Below that paragraph appears the following:

Commercial General Liability:
New And Revised Forms:    CG 2011    1185
                          BC 2201    0294 CG 0001 1093

You have yet to establish that the above language somehow incorporates by reference the phantom Exclusion. Nowhere is the Exclusion named or mentioned in the policy language, except, presumably, by one of the above series of codes,[1] nor was it part of the policy. How this is supposed to put your insured on notice is beyond me and smacks of unconscionability, bad faith, or at least an attempt to "sneak one past" the insured. However, the above is mooted by the fact that CNA already tendered a defense and indemnification to Deauville Associates under this same policy in a lead paint exposure lawsuit.

On April 28, 1998, Maria Quijano filed suit on behalf of herself and her minor child against John Redmond (later amended to include Deauville Associates). See the attached Complaint. The Complaint alleges that the minor plaintiff resided at 3145 Mount Pleasant Street from August 1995 until August 1996 and that the minor plaintiff was exposed to chipping, flaking and peeling lead paint. The plaintiff alleged that defendant was aware of the lead paint hazards in the premises. Plaintiff alleged that the minor plaintiff had suffered severe behavioral injuries as a result of lead paint exposure at the subject premises. Plaintiff sued on theories of, *inter alia*, negligence, negligence *per se*, and breach of express and implied warranties of habitability. Materially, the only difference between the Quijano lawsuit and the present one is the name of the plaintiff. The timeframes are nearly identical—with the latter half of the tenant's occupancy outside the February 1, 1996, termination of the policy period—as are the allegations and theories of liability. Therefore, the reasoning for your bases of denial now are the same as they would have been regarding coverage for the Quijano lawsuit, yet you waived any objections to coverage and are estopped from raising them now.

CNA defended Deauville Associates under policy BC 08028780-96, the very policy at issue here, with Anthony Romas in charge of the file. See the attached correspondence from Romas to Redmond. CNA appointed, or approved of, Mark Collins, Esq., of Carr, Goodson, Warner to handle Deauville Associates' defense. See the attached correspondence from Collins to Redmond, specifically ¶ 2.

The significance of the above is two-fold. First, to the extent that CNA ever intended the Exclusion to apply to the 1995-1996 term of the policy, it is significant that Mr. Romas and CNA in 2000 came to a conclusion different from yours in 2007. The fact that two claims examiners from the same company—the company, incidentally, charged with having drafted the contract—came to differing conclusions regarding the policy language strongly supports my point above that, at the least, there is an ambiguity as to whether the omitted Exclusion was intended to apply to the 1995-1996 term of the policy. As stated previously, that ambiguity would be construed in favor of coverage

---

[1] Even here, I must take CNA's word for it that one of the above-mentioned codes refers to the Exclusion, as I am unable to see any correspondence in your denial letter between the Exclusion and a policy code.

3

here. It also supports my point that any incorporation by reference of the Exclusion of the policy is so hidden and difficult to decipher as to be unconscionable and unenforceable. An argument in court, should this matter be litigated, that CNA itself was unable to determine consistently whether the Exclusion applied but the insured was somehow responsible for this knowledge is not likely to cut in your favor.

Second, to the extent that Mr. Romas and CNA were aware the Exclusion may have been intended to apply to the 1995-1996 term of the policy, the Exclusion was unequivocally waived and cannot be invoked arbitrarily now in order to deny coverage and a defense for the insured.

Given the facts as outlined above, it is my position that no good faith basis exists for CNA's refusal to cover and defend Deauville Associates. Also, litigating this matter would only serve to waste resources on both sides. We, of course, will be entitled to recover all our attorney's fees from CNA when we prevail. Collier v. MD-Individual Practice Ass'n, 327 Md. 1, 12 (Md. 1992); Cohen v. American Home Assurance Co., 255 Md. 334 (1969). Finally, according to the principle of *lex loci contractus*, the issue would be litigated according to the laws of Maryland, a jurisdiction quite friendly to insureds. If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Louis J. Cannon, Jr.

Enclosures

cc: John Redmond

4