## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, *et al.*, | |
| Plaintiffs, | |
| *-vs-* | Case No. 1:07-cv-01818 (ESH) |
| DEAUVILLE ASSOCIATES, LIMITED PARTNERSHIP, *et al.*, | |
| Defendants. | |

### PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Pursuant to Federal Rules Civil Procedure 12(b)(6) and 9(b), Plaintiffs Continental Casualty Company and The Continental Insurance Company, as Successor by Merger to Kansas City Fire and Marine Insurance Company (together, "Plaintiffs"), move to dismiss Counts II (waiver), III (estoppel), IV (District of Columbia Consumer Protection Procedures Act), V (negligent misrepresentation), VI (insurer bad faith) and VII (fraud) of the Counterclaims of Defendants Deauville Associates, Limited Partnership, Deauville Limited Partnership, Mount Pleasant Street Revocable Trust and John R. Redmond (collectively, the "Deauville Defendants"). In support of this motion, Plaintiffs state as follows:

1. Plaintiffs filed a complaint for declaratory judgment against the Deauville Defendants in October 2007 to determine the applicability of a lead exclusion to an underlying claim for alleged lead-related bodily injuries filed in the District of Columbia Superior Court.

2. In response to Plaintiffs' complaint, the Deauville Defendants filed counterclaims disputing Plaintiffs' denial of coverage and asserting extracontractual claims of waiver, estoppel, violation of the District of Columbia Consumer Protection Procedures Act, negligent misrepresentation, insurer bad faith, and fraud against the Plaintiffs.

3.      Counterclaims II and III, alleging coverage by waiver and estoppel are not supported by the facts set forth in the pleading and its attachments and should be dismissed.

4.      Counterclaim VI, for insurer bad faith, should be dismissed because it does not state a recognized cause of action under applicable law.

5.      Counterclaims V and VII, for negligent misrepresentation and fraud, do not plead the circumstances of the alleged misrepresentation with the requisite particularity and should be dismissed pursuant to Federal Rule of Civil Procedure 9(b).

6.      Finally, Count IV, brought pursuant to the District of Columbia Consumer Protection Act, is not supported by the facts set forth in the pleading and its attachments and, additionally, is not pled with the particularity required pursuant to Rule 9(b).

7.      The reasons supporting this motion are set forth more fully in the accompanying memorandum of law, which is incorporated by reference herein.

WHEREFORE, Plaintiffs respectfully request that this Court grant this motion and enter an order dismissing with prejudice the Deauville Defendants' Counterclaims II through VII.

Respectfully submitted,

ROSS, DIXON & BELL, LLP


By: _____
      Gabriela Richeimer, D.C. Bar No. 462520
      2001 K. Street, N.W.
      Washington, D.C. 20006-1040
      202.662.2000 (p)
      202.662.2190 (f)
      gricheimer@rdblaw.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONTINENTAL CASUALTY COMPANY,
*et al.*,

                Plaintiffs,

      *-vs-*                       Case No. 1:07-cv-01818 (ESH)

DEAUVILLE ASSOCIATES, LIMITED
PARTNERSHIP, *et al.*,

                Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

361657 v 1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

I.    The Policies ............................................................................................................. 3

II.   The Underlying Actions .......................................................................................... 3

      A.    The *Figueroa* Action ................................................................................... 3

      B.    The *Quijano* Action ..................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.    District of Columbia Law Governs This Motion ................................................... 4

II.   The Deauville Defendants' Waiver and Estoppel Claims Should Be Dismissed ............. 6

III.  The Deauville Defendants' Bad Faith Claim Should Be Dismissed Because This
      Cause of Action Is Not Recognized Under District of Columbia Law ........................... 8

IV.   The Deauville Defendants' Fraud and Negligent Misrepresentation Counterclaims
      Should be Dismissed Pursuant to Rule 9(b) ................................................................ 10

      A.    Rule 9(b) Mandates a Heightened Pleading Standard for These Causes of
            Action ................................................................................................................. 10

      B.    The Deauville Defendants' Have Not Pled Their Fraud and Negligent
            Misrepresentation Claims With the Required Specificity .................................. 10

V.    The Deauville Defendants' Fourth Cause of Action for Violation of the District of
      Columbia Consumer Protection Procedures Act Should be Dismissed ........................ 13

      A.    The Deauville Defendants Have Not Stated a Cause of Action Under the
            D.C. Consumer Protection Procedures Act ...................................................... 13

      B.    The Deauville Defendants' Allegations for Violation of the D.C.
            Consumer Protection Procedures Act Are Not Pled With the Specificity
            Required by Rule 9(b) ...................................................................................... 14

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

\* *Adams v. NVR Homes, Inc.*,
193 F.R.D. 243 (D. Md. 2000)................................................................. 15

*American National Red Cross v. Travelers Indemnity Co.*,
896 F. Supp. 8 (D.D.C. 1995)..................................................................... 8

*Anderson v. USAA Casualty Insurance Co.*,
221 F.R.D. 250 (D.D.C. 2004).................................................................. 10

*Athridge v. Aetna Casualty & Surety Co.*,
351 F.3d 1166 (D.C. Cir. 2003)................................................................ 14

\* *Athridge v. Aetna Casualty and Surety Co.*,
510 F. Supp. 2d 1 (D.D.C. 2007)............................................................... 7

*Baker v. Henderson*,
150 F. Supp. 2d 13 (D.D.C. 2001) ............................................................. 2

*Brand v. Government Employees Insurance Co.*,
No. 04-01133, 2005 WL 3201322 (D.D.C. Nov. 29, 2005)........................ 8

\* *Chelsea Condominium Unit Owners Associate v. 1815 A St., Condominium
Group, LLC*,
468 F. Supp. 2d 136 (D.D.C. 2007) ..................................................10, 12

*Ellipso, Inc. v. Mann*,
460 F. Supp. 2d 99 (D.D.C. 2006) ........................................................... 12

\* *Fireman's Fund Insurance Co. v. CTIA - The Wireless Association*,
480 F. Supp. 2d 7 (D.D.C. 2007)............................................................ 8, 9

*Independent Petrochemical Corp. v. Aetna Casualty and Surety Co.*,
645 F. Supp. 280 (D.D.C. 1983)................................................................. 5

\* *Maynard v. Westport Insurance Co.*,
208 F. Supp. 2d 568 (D. Md. 2002) ........................................................ 6, 7

*Messina v. Nationwide Mutual Insurance Co.*,
998 F.2d 2 (D.C. Cir. 1993)........................................................................ 8

*Naporano Iron & Metal Co. v. American Crane Corp.*,
79 F. Supp. 2d 494 (D.N.J. 1999) ........................................................... 15

*Nationwide Mutual Insurance Co. v. Richardson*,
  270 F.3d 948 (D.C. Cir. 2001)................................................................ 4

\* *Norment Security Group, Inc. v. Travelers Casualty and Insurance Co.*,
  505 F. Supp. 2d 97 (D.D.C. 2007) ......................................................... 12

*Patel v. Holiday Hospitality Franchising, Inc.*,
  172 F. Supp. 2d 821 (N.D. Tex. 2001).................................................. 15

*Petri v. Gatlin*,
  997 F. Supp. 956 (N.D. Ill. 1997) ......................................................... 15

*Taylor v. FDIC*,
  132 F.3d 753 (D.C. Cir. 1997)................................................................ 2

*The Potomac Electric Power Co. v. California Union Insurance Co.*,
  777 F. Supp. 968 (D.D.C. 1991) ............................................................. 5

*Toner v. Allstate Insurance Co.*,
  821 F. Supp. 276 (D. Del. 1993) ........................................................... 14

*In re United Mine Workers of America Employee Benefit Plans Lit.*,
  854 F. Supp. 914 (D.D.C. 1994) ............................................................. 2

\* *United States ex rel. Totten v. Bombadier Corp. and Envirovac, Inc.*,
  286 F.3d 542 (D.C. Cir. 2002)........................................................10, 14

*In re Universal Serv. Fund Telegraph Billing Practices Litigation*,
  300 F. Supp. 2d 1107 (D. Kan. 2003) ................................................... 15

*Washington v. Government Employees Insurance Co.*,
  769 F. Supp. 383 (D.D.C. 1991) ............................................................. 8

*Young Women's Christian Association of the National Capital Area, Inc. v.
  Allstate Insurance Co. of Canada*,
  275 F.3d 1145 (D.C. Cir. 2002)............................................................. 5

## STATE CASES

*Hall v. Ford Enterprises, Ltd.*,
  445 A.2d 610 (D.C. Ct. App. 1982)....................................................... 12

*Howard v. Riggs Bank*,
  432 A.2d 701 (D.C. 1981) ..................................................................... 12

\* *McCauley v. Suls,*
   716 A.2d 1129 (Md. Ct. Spec. App. 1998)................................................. 9

*Miller v. Holzmann,*
   No. 95-1231, 2006 WL. 568722 (D.D.C. Mar. 9, 2006).......................... 11

\* *Osbourne v. Capital City Mortgage Corp.,*
   667 A.2d 1321 (D.C. 1995) ...................................................................... 13

*Sass v. Andrew,*
   832 A.2d 247 (Md. 2003) ......................................................................... 12

*Travelers Indemnity Co. v. United Food & Commercial Workers International*
   *Union,*
   770 A.2d 978 (D.C. 2001) ......................................................................... 6

\* *Vaughn v. Nationwide Mutual Insurance Co.,*
   702 A.2d 198 (D.C. 1997) ......................................................................... 5

*Vigilant Insurance Co. v. Luppino,*
   723 A.2d 14 (Md. 1999) ............................................................................ 9

\* *Washington v. State Farm Fire & Casualty Co.,*
   629 A.2d 24 (D.C. 1993) ........................................................................... 6

## DOCKETED CASES

*Figueroa v. Redmond, et al.,*
   No. 0003221-07 (D.C. Super. Court) ........................................................ 3

*Quijano, et al. v. Redmon[sic],*
   No. 003202-90 (D.C. Superior Court) ....................................................... 3

## STATE STATUTES

D.C. Consumer Protection Act, D.C. Code §§ 28-3904, et al ................................... 13-14

## INTRODUCTION

Plaintiffs filed this declaratory judgment action to determine the applicability of a lead exclusion to an underlying claim for alleged lead-related bodily injuries filed in the District of Columbia Superior Court on behalf of a minor resident of the District (the "*Figueroa* Action"). *See* Complaint, D.E. 1. As noted in Plaintiffs' Complaint, the Deauville Defendants[1] requested coverage for the *Figueroa* Action under various business liability policies issued by Plaintiffs to defendant Deauville Limited Partnership. Following Plaintiffs' coverage investigation, Plaintiffs disclaimed any duty to defend or to indemnify the Deauville Defendants based upon an unambiguous lead exclusion included in all three of these policies.

In response to Plaintiffs' Complaint, the Deauville Defendants filed counterclaims disputing Plaintiffs' denial of coverage and purporting to assert extracontractual claims – including fraud, bad faith and violation of the District of Columbia Consumer Protection Procedures Act – ostensibly based upon Plaintiffs' handling of an earlier lead claim against the Deauville Defendants in Washington, D.C. (the "*Quijano* Action"). According to the Deauville Defendants, they somehow have been wronged because Plaintiffs defended and settled the *Quijano* Action on Deauville's behalf.

As explained further below, Counts II through VII of Deauville's counterclaims are fundamentally flawed as a matter of both fact and of law. Counterclaims II and III, alleging coverage by waiver and estoppel, are not remotely supported by the facts set forth in the pleading and its attachments. Plaintiffs indeed defended and settled the *Quijano* action *but expressly reserved their rights based upon the lead exclusion*. Plaintiffs could not deny coverage at that time because Plaintiffs were unable to locate all the relevant policies. Since then, however,

---

[1] The "Deauville Defendants" or "Deauville" are John R. Redmond, Deauville Associates, Limited Partnership, Deauville Limited Partnership and Mount Pleasant Street Revocable Trust.

Plaintiffs have uncovered additional policy documents establishing that all three business liability policies contained a lead exclusion.  These facts – well known to the Deauville Defendants, as they appear in the very documents attached to their Counterclaims – are fatal to Counterclaims II and III.  Counterclaim VI, purportedly for "bad faith" denial of coverage, does not state a recognized cause of action under applicable law.  As such, the counterclaim should be dismissed.  Counterclaims V and VII, for negligent misrepresentation and fraud, do not plead the circumstances of the alleged misrepresentations with the requisite particularity, and thus dismissal is warranted under Federal Rule of Civil Procedure 9(b).  Finally, Count IV, purportedly brought under the District of Columbia Consumer Protection Act, suffers from the same deficiencies as Deauville's other counterclaims and should be dismissed on the same bases.

Accordingly, for the reasons discussed further below, the Deauville Defendants' Counterclaims II through VII should be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

### I.    THE POLICIES

Kansas City issued Policy 25 BC 08028780-95 to Deauville Limited Partnership for the policy period February 1, 1993 through February 1, 1995.  This policy was renewed for the policy period February 1, 1995 through February 1, 1996 pursuant to Policy 25 08028780-96, (together with 25 BC 08028780-95, the "Kansas City Policies").  Continental Casualty issued policy C1 43137450 to Deauville Limited Partnership for the policy period February 1, 1996 to

---

[2] Plaintiffs acknowledge that, for purposes of this motion, the Deauville Defendants' well-pleaded factual allegations must be taken as true.  *See In re United Mine Workers of Am. Employee Benefit Plans Lit.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  The Court, however, is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  Moreover, in determining the adequacy of the pleading, the Court "may consider facts alleged in the complaint, any documents either attached to or incorporated in the complaint, or matters of which the court may take judicial notice … without converting the motion to dismiss into one for summary judgment."  *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001).  Accordingly, this factual background is taken solely from the allegations in Deauville's counterclaims, the documents attached thereto or incorporated therein and any admissions in Deauville's answer.

February 1, 1997 (the "Continental Casualty Policy," and together with the Kansas City Policies, the "Policies").  Subject to all terms, conditions, exclusions and limits of liability, each of the Policies provides for defense and indemnification with respect to claims alleging, *inter alia*, bodily injury that takes place during the policy period and that arises out of an occurrence.

## II.    THE UNDERLYING ACTIONS

### A.    The Figueroa Action

The Deauville Defendants seek coverage for a lawsuit filed against them on July 12, 2007 by Figueroa, on behalf of minor C.J.F., styled *Figueroa v. Redmond, et al.*, No. 0003221-07 (D.C. Super. Court) (the "*Figueroa* Action").  Complaint, Exhibit A.  The *Figueroa* Action alleges that C.J.F. resided at 3145 Mount Pleasant Street, NW, Apt 202 in Washington DC from November of 1995 until September of 1996.  Compl., Ex. A, ¶ 12, incorporated into Deauville's Counterclaims via ¶ 1.  During this time, C.J.F. was allegedly exposed to lead-based paint and ingested lead-based paint chips and powder in the apartment.  C.J.F. allegedly suffered lead poisoning as a result.  Compl., Ex. A, ¶ 12.

The Deauville Defendants sought a defense and coverage for the *Figueroa* Action from Plaintiffs.  Plaintiffs have denied coverage for the *Figueroa* Action.

### B.    The Quijano Action

Defendant Redmond also sought coverage for an earlier lawsuit filed against him on April 28, 1998, styled *Quijano, et al. v. Redmon*[sic], No. 003202-90 (D.C. Superior Court) (the "*Quijano* Action").  Counterclaims, D.E.3, Exhibit II.  Like the *Figueroa* Action, the *Quijano* Action was brought behalf on a minor child, alleging that the child suffered from lead poisoning as a result of ingesting lead-based paint chips and powder while residing at Redmond's property at 3145 Mount Pleasant Street, NW, Washington D.C.  Ctrclms., Ex. II, ¶¶ 11-12.

By letter dated April 25, 2000, Kansas City agreed to provide a defense for the *Quijano* action *subject to a full reservation of rights*, without waiving any rights under the Kansas City Policies. *See* Ex. V.1 hereto.[3] Additionally, Kansas City funded the settlement of the *Quijano* Action. Ctrclms., ¶ 7. As noted in the April 25, 2000 letter, Kansas City did not possess a complete copy of the applicable policy, no. BC 08028780-96, when it agreed to provide a defense. *See* Ex. V.1.

## ARGUMENT

## I.    DISTRICT OF COLUMBIA LAW GOVERNS THIS MOTION.

Deauville's counterclaims assert that Maryland law should govern this action. Ctrclm., ¶ 6. To the contrary, as explained below, District of Columbia law should be applied for two reasons. First, District of Columbia choice of law principles point to District of Columbia rather than Maryland law. Second, there is no actual conflict between the applicable District of Columbia and Maryland law. As shown below, both jurisdictions' law regarding the relevant substantive issues of waiver and estoppel, bad faith, negligent misrepresentation and fraud are essentially the same. Thus, in all events, District of Columbia law should be applied.

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001). Therefore, District of Columbia choice of law rules should apply to this action. The District of Columbia applies a "substantial interest" test to determine which jurisdiction's choice of law should govern a particular set of issues. *See Young Women's Christian Ass'n of the Nat'l*

---

[3] Deauville attached and referred to an incomplete copy of an August 28, 2007 letter to Plaintiffs as Exhibit V to the Counterclaims. Plaintiffs have attached a complete copy of that letter, including its exhibits, to this memorandum as Exhibit V.I.

*Capital Area, Inc. v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002) (citations omitted); *Vaughn v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 202 (D.C. 1997).

To determine which jurisdiction has the most substantial relationship "in a normal contract situation, five factors should be considered: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance of the contract; (4) the location of the subject matter of the contract, and (5) the place of incorporation and the place of business of the parties." *Independent Petrochemical Corp. v. Aetna Cas. and Surety Co.*, 645 F.Supp. 280, 286 (D.D.C. 1983) (citing Restatement (Second) of Conflict of Laws § 188 (1971)).  Moreover, District of Columbia courts repeatedly have recognized the general rule that, where a liability insurance contract is at issue, the "local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy" will be the source of law for the policy.  *The Potomac Electric Power Co. v. California Union Ins. Co.*, 777 F. Supp. 968, 973 (D.D.C. 1991).  *See also Vaughn*, 702 A.2d at 201 (reasoning that the location of the risk "has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend").

Here, as admitted by the Deauville Defendants, the location of the insured risk, an apartment building, is 3145 Mt. Pleasant Street, NW, in Washington, D.C.  Deauville Defendants' Answer, D.E. 3, ¶ 9.  Also as admitted by the Deauville Defendants, the named insured, Deauville Limited Partnership, was and is a domestic partnership, with its headquarters, principal place of business and other business premises located at 3145 Mt. Pleasant Street, NW Washington, D.C., the property which is the subject of the underlying lawsuit and the *Quijano* Action.  Answer, ¶ 9.  Moreover, both the *Figueroa* and *Quijano* Actions were filed in the District of Columbia.  Although Deauville asserts that the Policies were negotiated in Maryland,

this is the only factor that points to Maryland law, and it is insignificant given the District of Columbia's more substantial interest in the dispute. As such, District of Columbia law should govern this coverage dispute and the counterclaims.

In any event, the Court need not make a choice of law determination because, as shown below, there is no actual conflict between the District of Columbia and Maryland law on the issues raised by this motion. As such, the Court should apply District of Columbia law to resolve this motion to dismiss.

## II.    THE DEAUVILLE DEFENDANTS' WAIVER AND ESTOPPEL CLAIMS SHOULD BE DISMISSED.

In their second and third causes of action, the Deauville Defendants allege that Plaintiffs do not have right to deny coverage for the *Figueroa* Action pursuant to the doctrines of waiver and estoppel. These causes of action utterly lack factual support and should be dismissed.

Under District of Columbia and Maryland law, waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Maynard v. Westport Ins. Co.*, 208 F. Supp. 2d 568, 576 (D. Md. 2002). *Accord Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 992 (D.C. 2001) ("Ordinarily, a waiver requires an intentional relinquishment of a known right.").

As a general rule, where an insurer specifically reserves its right to deny coverage, there is no waiver. *See, e.g., Washington v. State Farm Fire & Cas. Co.*, 629 A.2d 24, 27-28 (D.C. 1993) (holding that the insurer's reservation of rights letter was sufficient to preserve its right to deny coverage at a later time). Here, Plaintiffs expressly reserved their right to deny coverage by letter issued to various of the Deauville Defendants in the *Quijano* Actions. Ex. V.1. In this letter, Plaintiffs requested copies of the Policies from the Deauville Defendants and specifically reserved their right to deny coverage based on lead exclusions. Ex. V.1. Moreover, Plaintiffs

specifically stated that the "letter shall not be deemed to have waived, diminished, or altered any of the rights which an insured may have … nor shall this letter or any other act on the part of [Plaintiffs] be construed as a waiver." Ex. V.1. Therefore, at no time did Plaintiffs "intentionally relinquish a known right." Further, the express language of Plaintiffs' letter to Deauville makes any implied inference of waiver manifestly unreasonable.

Furthermore, under District of Columbia and Maryland law, Deauville must show that it was injured by Plaintiffs' alleged actions in order to prevail under a theory of waiver or estoppel. *See Athridge v. Aetna Cas. and Sur. Co.*, 510 F. Supp. 2d 1, at *7 (D.D.C. 2007) ("prejudice is crucial to a finding of estoppel"); *Maynard*, 208 F. Supp. 2d 568 (D. Md. 2002) ("while an insurer may waive or be estopped from relying on a defense …, it will not be barred where … the insured was not injured"). Under District of Columbia law, prejudice may be shown "(1) by presumption as a matter of law when the insurer assumes complete control over the insured's defense without a reservation of rights … and (2) by finding prejudice in fact through the evidence presented." *Athridge,* 510 F.Supp. 2d at *6. Here, Deauville cannot prove prejudice as a matter of law because Plaintiffs' never assumed control of its defense in the *Figueroa* Action. Further, the Deauville Defendants have not pled, nor can they plead, any allegations regarding how Plaintiffs' alleged actions have prejudiced them. Far from causing prejudice to the Deauville Defendants – if anything – Plaintiffs' actions benefited the Deauville Defendants because they received defense and indemnity in connection with the earlier *Quijano* Action.

Therefore, because the Deauville Defendants cannot show, as a matter of law, that Plaintiffs waived their right to deny coverage for lead paint claims under the Policies, and because the Deauville Defendants cannot show that they were prejudiced, their causes of action for waiver and estoppel should be dismissed.

III.    **THE DEAUVILLE DEFENDANTS' BAD FAITH CLAIM SHOULD BE DISMISSED BECAUSE THIS CAUSE OF ACTION IS NOT RECOGNIZED UNDER DISTRICT OF COLUMBIA LAW.**

Deauville's sixth counterclaim alleges that Plaintiffs engaged in "bad faith" by denying coverage for the Deauville Defendants' claim and seek recovery of damages, including punitive damages.  This is not a viable cause of action under District of Columbia or Maryland law and should be dismissed as a matter of law.

No cause of action for "bad faith" denial of coverage exists in the District of Columbia.  This Court repeatedly has held that the District of Columbia would not recognize a claim for the bad faith denial of insurance.  *See Fireman's Fund Ins. Co. v. CTIA – The Wireless Ass'n*, 480 F. Supp. 2d 7, 17 (D.D.C. 2007) (granting insurer's motion to dismiss cause of action for bad faith breach of an insurance contract for failure to state a claim under District of Columbia law); *Brand v. Government Employees Ins. Co.*, No. 04-01133, 2005 WL 3201322, at *5 (D.D.C. Nov. 29, 2005) (dismissing the insured's cause of action for bad faith failure to provide insurance coverage for failure to state a claim under District of Columbia law); *American Nat'l Red Cross v. Travelers Indem. Co.*, 896 F. Supp. 8, 11 n.4 (D.D.C. 1995) (stating that the tort of "bad faith refusal to provide insurance coverage … does not exist under District of Columbia law"); *Washington v. Government Employees Ins. Co.*, 769 F. Supp. 383, 386-87 (D.D.C. 1991) (dismissing plaintiff's cause of action for bad faith denial of an insurance claim for failure to state a claim under District of Columbia law).[4]

As a basis for dismissing a cause of action for bad faith denial of coverage, District of Columbia courts have pointed to the fact that Maryland law similarly does not allow such a cause

---

[4] In addition, the Court of Appeals for the District of Columbia "has not squarely addressed the question whether bad faith denial of an insurance claim constitutes an independent tort under D.C. law." *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 3 (D.C. Cir. 1993).  As such, this Court should continue to follow settled district court authority on this issue.

of action. *See, e.g. CTIA*, 480 F. Supp. 2d at 11 (a finding that there is no cause of action for bad

faith coverage denial under District of Columbia law is "consistent with Maryland law, which is

the basis for the District of Columbia's common law and therefore is 'an especially persuasive

authority when the District's common law is silent'") (citation omitted). Maryland courts

consistently have refused to recognize "a bad faith claim against an insurer in the first-party

context, that is, holding an insurer liable in tort for failure to pay a … claim." *McCauley v. Suls*,

716 A.2d 1129, 1133 (Md. Ct. Spec. App. 1998). Under Maryland law, any action based on an

insurer's allegedly mistaken refusal to provide coverage is entirely contractual in nature and does

not sound in tort. *See e.g. Vigilant Ins. Co. v. Luppino*, 723 A.2d 14, 17 (Md. 1999) ("An

insurer's obligation to defend is contractual and, therefore, a cause of action for breach of the

duty to defend sounds in contract."). As such, Maryland courts have insisted on "confin[ing]

actions between an insured and his or her insurer to the realm of contract law, rather than letting

such actions expand to tort proportions." *McCauley*, 716 A.2d at 1134.

Accordingly, because there is no cause of action for bad faith denial of insurance

coverage under District of Columbia or Maryland law, the Deauville Defendants' sixth

counterclaim should be dismissed as a matter of law.

## IV. THE DEAUVILLE DEFENDANTS' NEGLIGENT MISREPRESENTATION AND FRAUD COUNTERCLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 9(B).

The Deauville Defendants' fifth and seventh counterclaims, for negligent

misrepresentation and fraud, respectively, should be dismissed because they are not pled with the

particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

### A. Rule 9(b) Mandates a Heightened Pleading Standard for These Causes of Action

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *United States ex rel. Totten v. Bombadier Corp. and Envirovac, Inc.*, 286 F.3d 542, 552 (D.C. Cir. 2002).[5] Generally, "the 'circumstances' that must be pleaded with specificity" include the "time, place and contents of the *false* representations, such representations being the *element* of fraud about which the rule is chiefly concerned." *Id.* (emphasis in original). Stated in another way, "Rule 9(b) requires that the pleader provide the who, what, when, where, and how with respect to the circumstances of the fraud." *Chelsea Condominium Unit Owners Assoc. v. 1815 A St., Condominium Group, LLC*, 468 F. Supp. 2d 136, 146 (D.D.C. 2007).

### B. The Deauville Defendants Have Not Pled Their Fraud and Negligent Misrepresentation Claims with the Required Specificity.

The Deauville Defendants' pleading of the purported circumstances surrounding the alleged fraudulent conduct and negligent misrepresentations is woefully inadequate. The Deauville Defendants plead merely that Plaintiffs made false or negligent representations related to "defense and coverage of lead paint claims" and that the Deauville Defendants relied on these misrepresentations to their detriment. Ctrclms., ¶¶ 19, 24. These bare descriptions of the alleged representations that purport to form the basis of the fraud and negligent misrepresentation claims do not come close to satisfying the requirements of Rule 9(b). For instance:

- The Deauville Defendants fail to plead *what*, exactly, was represented incorrectly by Plaintiffs, and they do not specify the alleged misrepresentations regarding

---

[5] Rule 9(b) applies to claims of negligent misrepresentation as well as claims of fraud. *See Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004) ("failure to satisfy the pleading requirements of Rule 9(b) would be fatal to the plaintiff's claim of negligent misrepresentation").

coverage.  The Deauville Defendants only aver generally that representations were made that they had coverage for lead paint claims.  These bare allegations are insufficient to provide Plaintiffs with the notice required by Rule 9(b).  *See, e.g. Miller v. Holzmann*, No. 95-1231, 2006 WL 568722, at *8-9 (D.D.C. Mar. 9, 2006) (holding that the plaintiff failed to meet the requirement of Rule 9(b) when it did not specify representations made by the defendant to support its allegations of fraud), *overruled in part on other grounds, Miller v. Holzmann*, No. 95-1231, 2007 WL 710134 (D.D.C. Mar. 6, 2007).

- The Deauville Defendants further neglect to plead *when* the alleged misrepresentations were made.  Based on a very close reading of the counterclaims, it appears that some of the alleged misrepresentations purportedly were made in connection with the *Quijano* Action, filed against various Deauville Defendants in 1998.  Doc. No. 1, ¶ 7.  This, however, is not adequate to fulfill the requirements of Rule 9(b).  *See, e.g., Holzmann*, 2006 WL 568722 at *8-9 (holding that the plaintiff failed to meet the requirements of Rule 9(b) when it did not allege the specific time when the alleged fraudulent representations were made).

- The Deauville Defendants also fail to plead *where*, *how* and by *whom* the alleged misrepresentations were made.  Although the Deauville Defendants vaguely allege that the misrepresentations were made orally and written into the policies, they fail to identify who made the representations or which representations allegedly were written into the policies.

Moreover, the Deauville Defendants fail to provide any details regarding "what was retained or given up as a consequence of the fraud," as required by Rule 9(b).  *Norment Security Group, Inc. v. Travelers Cas. and Ins. Co.*, 505 F. Supp. 2d 97, 102 (D.D.C. 2007).  Under District of Columbia and Maryland law, detrimental reliance must be shown in order to prevail under a cause of action for both fraud and negligent misrepresentation.  *Sass v. Andrew*, 832 A.2d 247, 260 (Md. 2003) (setting out elements for fraud); *Howard v. Riggs Bank*, 432 A.2d 701, 706 (D.C. 1981) (same); *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610, 612 (D.C. Ct. App. 1982) (setting out elements for negligent misrepresentation).  Rule 9(b) "requires the pleader to provide a higher degree of notice" regarding "all of the requisite elements for the cause of action invoked."  *Chelsea Condominium*, 468 F. Supp. 2d at 146.  Here, the Deauville Defendants do not point to a single specific action taken in reliance on Plaintiffs' alleged misrepresentations.  Pursuant to the requirements of Rule 9(b), the "failure to identify specific acts in reliance … is fatal to a claim of fraud." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 103 (D.D.C. 2006).[6]

Therefore, the Deauville Defendants' claims for fraud and negligent misrepresentation should be dismissed for failure to plead these causes of action with specificity, as required by Rule 9(b).

## V.    THE DEAUVILLE DEFENDANTS' FOURTH CAUSE OF ACTION FOR VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT SHOULD BE DISMISSED.

In their fourth cause of action, the Deauville Defendants allege that Plaintiffs have violated the District of Columbia Consumer Protection Procedures Act.  This cause of action

---

[6] Deauville's so-called fraud allegations based upon the *Quijano* Action are all the more implausible because, as noted above, Deauville actually *benefited* from the defense and indemnity paid in that matter.  As Deauville well knows, Plaintiffs could not possibly have "misrepresented" anything about specific facts unknown to them at the time concerning the Policies or coverage for the *Quijano* Action when Plaintiffs lacked complete information about the Policies.

should be dismissed because the Deauville Defendants have failed to state a claim under this statute. Additionally, this cause of action should be dismissed for failure to plead with the particularity required by Rule 9(b).

**A.     The Deauville Defendants Have Not Stated a Cause of Action
Under the D.C. Consumer Protection Procedures Act.**

The Deauville Defendants' allege a cause of action against Plaintiffs pursuant to the D.C. Consumer Protection Act, D.C. Code § 28-3905. Section 28-3905 provides that "[a] person … may bring an action under this chapter … seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia." However, the Deauville Defendants have not alleged what law its cause of action purportedly is based upon. Furthermore, in order to state a cause of action under this Act, the Deauville Defendants must be able to prove that they have suffered actual damages as a result of Plaintiffs' alleged violation. *See Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330-31 (D.C. 1995). Though the Deauville Defendants allege generally that they have suffered damages, this vague allegation is insufficient to sustain a cause of action under the Act. *See id.* (requiring plaintiffs to demonstrate actual harm in order to seek relief under their statutory claim). Thus, this cause of action should be dismissed for failure to state a cause of action.

**B.     The Deauville Defendants' Allegations for Violation of the D.C.
Consumer Protection Procedures Act are not Pled with the
Specificity Required by Rule 9(b).**

For the same reasons stated above regarding the Deauville Defendants' causes of action for fraud and negligent misrepresentation, this cause of action should be dismissed for failure to plead with the specificity required by Rule 9(b). Forced to guess regarding the substance of this cause of action, Plaintiffs presume that the Deauville Defendants are alleging that Plaintiffs' made misrepresentations in violation of the D.C. Consumer Protection Act, D.C. Code §§ 28-

3904 9(e)-(f).  Sections 28-3904 9(e) – (f) provide that "[i]t is a violation of the Consumer

Protection Act for any person to misrepresent a material fact which has a tendency to mislead or

to fail to state a material fact if such failure tends to mislead."  *Athridge v. Aetna Cas. & Surety*

*Co.*, 351 F.3d 1166 (D.C. Cir. 2003) (citing D.C. Code §§ 28-3904).

      Rule 9(b) applies to "*all* averments of fraud or mistake."  *Bombadier*, 286 F.3d at 551.

(emphasis added).  The heightened pleading standard is not limited to common law fraud or

negligent misrepresentation causes of action, but applies to any cause of action grounded in

allegations of false statements.  *Id*.  (applying the Rule 9(b) heightened pleading standard to a

cause of action under the False Claims Act because the Act is "self-evidently an anti-fraud

statute").  *See also Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) (Rule 9(b)

applies "to all cases where the gravamen of the claim is fraud even though the theory supporting

the claim is not technically termed fraud").

      Therefore, because the Deauville Defendants' counterclaim appears to be based on

allegations of misrepresentation, Rule 9(b) should apply.  Although this Court has not addressed

directly whether the heightened pleading standard of Rule 9(b) would apply in this situation,

numerous other courts have held that Rule 9(b) applies to claims under consumer protection

statutes, particularly where the supporting allegations of the claims allege fraud or

misrepresentation.  *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 251-52 (D. Md. 2000)

(applying Rule 9(b) to allegation of unfair and deceptive trade practices under Maryland law).

*See also, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107,

1150 (D. Kan. 2003) (applying Rule 9(b) to allegations under the Kansas Consumer Protection

Act); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001)

(Texas Deceptive Practices Act); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.

Supp. 2d 494, 510 (D.N.J. 1999) (New Jersey Consumer Fraud Act); *Petri v. Gatlin*, 997 F. Supp. 956, 973 (N.D. Ill. 1997) (Illinois Consumer Fraud and Deceptive Business Practices Act). These courts have reasoned that, because allegations of deceptive trade practices often "sound in fraud," they should be subject to the same heightened pleading standard that is applied to claims of fraud or misrepresentation. *See, e.g. Naporano*, 79 F. Supp. 2d at 510 (stating that plaintiff must "detail its fraud allegations to put defendants on notice" for deceptive trade practices claim in the same way it would for a fraud claim).

Here, the allegations asserted in support of the Deauville Defendants' D.C. Consumer Protection Act cause of action are virtually identical to those asserted in its fraud and misrepresentation claims – namely that Plaintiffs purportedly made misrepresentations regarding coverage for lead paint claims under the Policies. Because these three claims are inexorably intertwined, they should be subject to the same heightened pleading standard under Rule 9(b). The Deauville Defendants have supplied no more particular information regarding their D.C. Consumer Protection Act claim than they did for their fraud and negligent misrepresentation claim. Therefore, because the Deauville Defendants have failed to plead this cause of action with specificity under Rule 9(b), it should be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Continental's Motion to Dismiss the

Deauville Defendants' Counterclaims II through VII, with prejudice.

Dated:  December 3, 2007                    Respectfully submitted,

                                            ROSS, DIXON & BELL, LLP


By: _____

    Gabriela Richeimer, D.C. Bar No. 462520
    2001 K. Street, N.W.
    Washington, D.C. 20006-1040
    202.662.2000 (p)
    202.662.2190 (f)
    gricheimer@rdblaw.com

    *Counsel for Plaintiffs*

361134 v 3

# EXHIBIT V.1

LAW OFFICES
# CUNNINGHAM & ASSOCIATES, PLC
ATTORNEYS & COUNSELORS AT LAW
1600 Wilson Boulevard, Suite 905
Arlington, Virginia 22209

VIRGINIA

WASHINGTON, D.C.

MARYLAND

(703) 294-6500
Fax: (703) 294-4885
cunninghamlawofc@aol.com
http://www.cunninghamlawyers.com

MARYLAND OFFICE

1111 BONIFANT STREET
SILVER SPRING, MD 20910-3376

WASHINGTON, D.C. OFFICE

5039 CONNECTICUT AVE, NW, BLD 3
WASHINGTON, DC 20008

JOSEPH F. CUNNINGHAM (DC, MD,
DANIEL A. GLASS (DC, NJ, PA)
EDWARD P. TRIVETTE (VA)
BRANDON S. OKES (VA)
LOUIS J. CANNON, JR. (MD)
JONATHAN A. THEYS (VA)

RECEIVED

AUG 3 0 2007

E&MT

August 28, 2007

Lisa LaConte
Claims Consultant
CNA Insurance
Environmental and Mass Tort Claims
1249 South River Road
Cranbury, NJ 08512

| | |
|---|---|
| Claimants: | Figueroa v. John Redmond, et al. |
| Insured: | Deauville Limited Partnership |
| Case No.: | 2007 CA 003221 B |
| Claim No.: | E2363873 |

Dear Ms. LaConte:

This letter is to seek reconsideration of CNA's denial of coverage for Deauville Limited Partnership in the above-captioned lawsuit. As a preliminary matter, I want to inform you that Cunningham & Associates, PLC, has been retained to defend the interests of Deauville Limited Partnership and its general partner, John Redmond, in this matter. However, I am admitted to practice on the case *pro hac vice*; the lead attorney on the case is Joseph F. Cunningham.

Your denial letter appears to set forth two bases for denial: (1) that there *may not* have been a "bodily injury" that took place "during the policy period" and (2) that a Lead Liability Exclusion, which does not explicitly appear in the language of policy 25 BC 08028780-96, the policy term that governs the above-captioned lawsuit, acts to bring the plaintiff's allegations within a policy exclusion. Both bases are defective.

First, as you must know, an insurer's duty to defend is broad. That duty is governed by the four corners of a plaintiff's complaint. If the complaint raises even a potentiality of coverage, an insurer must defend. Aetna Casualty & Sur. Co. v. Cochran,

1

337 Md. 98, 103 (1995). The merits of the complaint are not a factor; whether a plaintiff might not ultimately be able to recover, also, is not a factor. Id. You must also know that any ambiguities regarding the complaint, indeed any ambiguities at all, are generally resolved in favor of the insured. Mutual Fire, Marine & Inland Ins. Co. v. Vollmer, 306 Md. 243, 251 (1986).

The policy at issue here defines "bodily injury" and "occurrence" in the following way:

> "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The plaintiff's Complaint clearly alleged bodily injury on the part of the minor plaintiff resulting out of plaintiff's tenancy at 3145 Mount Pleasant Street, NW, Apt. 202 from November 1995 until September of 1996. That alleged bodily injury arose out of an "occurrence" as defined in the policy. To the extent that you claim there "may be" possibility that the plaintiff was exposed to lead on the premises after February 1, 1996, note that the plaintiff alleged exposure to lead paint *at the inception of* and *throughout* her tenancy at the subject premises. Again, any ambiguity regarding the date on which the minor plaintiff was allegedly injured is to be resolved in favor of coverage. Indeed, if such injury did occur at the subject premises as alleged, it ultimately may be impossible to pin down an exact date on which the minor plaintiff was injured or began to suffer the injury. This does not avoid CNA's duty to defend and indemnify Deauville Associates in the above-captioned matter.

You next point to a Lead Liability Exclusion ("Exclusion") that supposedly acts to deny coverage under the policy. In the 1995-1996 language of the policy, there appear fourteen (14) exclusions, explicitly spelled out, to the Bodily Injury and Property Damage Liability section of the Commercial General Liability Part of the policy. The Exclusion at issue here is not one of those spelled out. To the extent that there is a shred of merit to CNA's claim that it intended the Exclusion to apply to this policy term is clearly an ambiguity to be resolved in the favor of the insured. A plain reading of the contract would suggest that the only exclusions in effect are the multitude actually spelled out in the policy language.

Your position, however, apparently is that language in the Forms and Endorsements section of the policy at issue incorporates the omitted Exclusion by reference. The pertinent language reads:

> Any...endorsements, forms, schedules or declarations replacing earlier editions on your expiring policy are now attached to and form part of this renewal. These forms are shown below next to their applicable coverage part.

2

Below that paragraph appears the following:

Commercial General Liability:
New And Revised Forms:    CG 2011     1185
                                        BC 2201     0294 CG 0001 1093

You have yet to establish that the above language somehow incorporates by reference the phantom Exclusion. Nowhere is the Exclusion named or mentioned in the policy language, except, presumably, by one of the above series of codes,[1] nor was it part of the policy. How this is supposed to put your insured on notice is beyond me and smacks of unconscionability, bad faith, or at least an attempt to "sneak one past" the insured. However, the above is mooted by the fact that CNA already tendered a defense and indemnification to Deauville Associates under this same policy in a lead paint exposure lawsuit.

On April 28, 1998, Maria Quijano filed suit on behalf of herself and her minor child against John Redmond (later amended to include Deauville Associates). See the attached Complaint. The Complaint alleges that the minor plaintiff resided at 3145 Mount Pleasant Street from August 1995 until August 1996 and that the minor plaintiff was exposed to chipping, flaking and peeling lead paint. The plaintiff alleged that defendant was aware of the lead paint hazards in the premises. Plaintiff alleged that the minor plaintiff had suffered severe behavioral injuries as a result of lead paint exposure at the subject premises. Plaintiff sued on theories of, *inter alia*, negligence, negligence *per se*, and breach of express and implied warranties of habitability. Materially, the only difference between the Quijano lawsuit and the present one is the name of the plaintiff. The timeframes are nearly identical—with the latter half of the tenant's occupancy outside the February 1, 1996, termination of the policy period—as are the allegations and theories of liability. Therefore, the reasoning for your bases of denial now are the same as they would have been regarding coverage for the Quijano lawsuit, yet you waived any objections to coverage and are estopped from raising them now.

CNA defended Deauville Associates under policy BC 08028780-96, the very policy at issue here, with Anthony Romas in charge of the file. See the attached correspondence from Romas to Redmond. CNA appointed, or approved of, Mark Collins, Esq., of Carr, Goodson, Warner to handle Deauville Associates' defense. See the attached correspondence from Collins to Redmond, specifically ¶ 2.

The significance of the above is two-fold. First, to the extent that CNA ever intended the Exclusion to apply to the 1995-1996 term of the policy, it is significant that Mr. Romas and CNA in 2000 came to a conclusion different from yours in 2007. The fact that two claims examiners from the same company—the company, incidentally, charged with having drafted the contract—came to differing conclusions regarding the policy language strongly supports my point above that, at the least, there is an ambiguity as to whether the omitted Exclusion was intended to apply to the 1995-1996 term of the policy. As stated previously, that ambiguity would be construed in favor of coverage

---

[1] Even here, I must take CNA's word for it that one of the above-mentioned codes refers to the Exclusion, as I am unable to see any correspondence in your denial letter between the Exclusion and a policy code.

3

here. It also supports my point that any incorporation by reference of the Exclusion of the policy is so hidden and difficult to decipher as to be unconscionable and unenforceable. An argument in court, should this matter be litigated, that CNA itself was unable to determine consistently whether the Exclusion applied but the insured was somehow responsible for this knowledge is not likely to cut in your favor.

Second, to the extent that Mr. Romas and CNA were aware the Exclusion may have been intended to apply to the 1995-1996 term of the policy, the Exclusion was unequivocally waived and cannot be invoked arbitrarily now in order to deny coverage and a defense for the insured.

Given the facts as outlined above, it is my position that no good faith basis exists for CNA's refusal to cover and defend Deauville Associates. Also, litigating this matter would only serve to waste resources on both sides. We, of course, will be entitled to recover all our attorney's fees from CNA when we prevail. Collier v. MD-Individual Practice Ass'n, 327 Md. 1, 12 (Md. 1992); Cohen v. American Home Assurance Co., 255 Md. 334 (1969). Finally, according to the principle of *lex loci contractus*, the issue would be litigated according to the laws of Maryland, a jurisdiction quite friendly to insureds. If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Louis J. Cannon, Jr.

Enclosures

cc: John Redmond

4

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 897-1133

MARIA QUIJANO, Individually, and as Parent
and Next Friend of her Minor Daughter,
ZAIDA J. QUIJANO, et al.
3200 16th St, NW, #204          *Plaintiff*
vs.   Washington, DC  20010

Civil Action No. 20-

JOHN R. REDMON
7312 Brookstone Court
Potomac MD  20854          *Defendant*

### SUMMONS

To the above named Defendant:   JOHN R. REDMON

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days service of after this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 a.m. and 4:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

THOMAS C. CARDARO (# 418330)

Name of Plaintiff's Attorney
Klores & Cardaro, 3rd Floor          By _____
915-15th Street, NW                                     Deputy Clerk
Address Washington, DC  20005

202-628-2800                                Date  APR 28 1998
Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIAN AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C. 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

BEFORE THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

MARIA QUIJANO, Individually, and as Parent )
and Next Friend of her Minor Daughter, )
ZAIDA J. QUIJANO )
3200 - 16th Street, NW, Apartment 204 )
Washington, DC  20010 )
)
and )
)
MANUEL De JESUS QUIJANO, Individually, and )
as Parent and Next Friend of his Minor Daughter, )
ZAIDA J. QUIJANO )
3200 - 16th Street, NW, Apartment 204 )
Washington, DC  20010 )
)
        Plaintiffs, )
)
      v. )
)
JOHN R. REDMON )
7312 Brookstone Court )
Potomac, Maryland 20854 )
)
        Defendant. )

RECEIVED
Civil Clerk's Office

APR 2 8 1998

Superior Court of the
District of Columbia

00U020.-08

Case No. _____
JURY TRIAL REQUESTED

## COMPLAINT

Come now the plaintiffs, Maria Quijano and Manual DeJesus Quijano, Individually and

as Parents and Next Friends of their minor daughter, Zaida J. Quijano, by and through their

attorneys, Thomas Cardaro, Esquire and Klores & Cardaro, P.C., and sue defendant John R.

Redmon, stating as follows:

## COUNT I

1.     Jurisdiction of the Court is invoked pursuant to 11 D.C. Code § 921, et seq.

2.     Zaida J. Quijano is the minor child of Maria Quijano and Manual DeJesus

RES & CARDARO, P.C.
ATTORNEYS AT LAW
PIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 408-4100
TELECOPIER: (202) 408-1041

1

Quijano. Zaida J. Quijano was born on April 21, 1995. Maria Quijano and Manual DeJesus Quijano are bringing this lawsuit individually and on behalf of their daughter, Zaida J. Quijano.

3.      Defendant, at all times relevant hereto, regularly conducted business in the District of Columbia. At all relevant times, defendant owned, operated, managed, supervised and maintained the premises located at 3145 Mt. Pleasant Street, NW, Washington, D.C., which the defendant offered for rental to the plaintiffs and their family.

4.      Zaida J. Quijano resided at 3145 Mt. Pleasant Street with her parents, Maria Quijano and Manual DeJesus Quijano, from August 1995 through approximately August 1996. At all times pertinent hereto, Zaida J. Quijano's residency at 3145 Mt. Pleasant Street was known to the defendant.

5.      While plaintiffs lived at 3145 Mt. Pleasant Street, NW, Washington, DC, quantities of lead-based loose paint chips and powder were exposed throughout the property including, but not limited to window sills, doors, trim, walls, baseboards, and other areas throughout property, as a direct and proximate result of the acts or omissions of the defendant and/or his agents, servants and/or employees. The lead-based paint chips and powder were left in areas easily and foreseeably accessible to small children, such as Zaida J. Quijano.

6.      Throughout plaintiffs' tenancy, lead-based paint was peeling, chipping and flaking throughout the property in areas within the reach of the minor plaintiff.

7.      On information and belief, at all pertinent times defendant was aware that plaintiffs, Maria Quijano and Manual DeJesus Quijano, would be living on the premises with their minor daughter, Zaida J. Quijano.

LORES & CARDARO, P.C.
ATTORNEYS AT LAW
1717 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20009
(202) 462-4100
TELECOPY/FAX (202) 462-1200

2

8.     On information and belief, defendant and/or his agents, servants or employees entered the property regularly and observed its condition, including loose, flaking and peeling paint chips and dust throughout the premises.

9.     Defendant either knew or should have known that the property located at 3145 Mt. Pleasant Street, NW, Washington, DC contained flaking and peeling lead paint which defendant either knew or should have known was hazardous to the health of Zaida J. Quijano. Defendant possessed this information prior to the time that Zaida J. Quijano became lead poisoned, and consequently, had a reasonable opportunity to correct this hazardous condition prior to Zaida J. Quijano's lead poisoning.

10.    Defendant, at all times pertinent to this case, negligently and intentionally failed to timely and fully correct the conditions which resulted in the exposure of Zaida J. Quijano to lead-based paint.

11.    While living at 3145 Mt. Pleasant Street, NW, Zaida J. Quijano on frequent occasions, was exposed to and ingested lead-based paint chips and powder in and about the home.

12.    As a consequence of ingesting lead-based paint chips and powder, Zaida J. Quijano has suffered lead poisoning, having lead content levels in her blood far in excess of the normal range. Zaida J. Quijano has been subjected to painful testing and treatment as a result of her lead poisoning. Upon information and belief, Zaida has suffered physical, psychological, developmental and behavioral injuries that will permanently impact on her ability to care for and support herself in the future.

13.    During all pertinent times, defendant had a duty to use reasonable care to protect

3

Zaida J. Quijano from exposure to the toxic lead-based paint on the premises. The presence of these defects in and about the home posed a clear risk and danger that foreseeably could cause Zaida J. Quijano great harm. Defendant knew, or should have known of this danger to Zaida J. Quijano.

    14.    Defendant breached his duty to plaintiffs by exposing Zaida J. Quijano to flaking and peeling lead paint by, <u>inter alia</u>, negligently and carelessly:

    (a)    failing to remove the lead-based paint, powder, and paint chips on the property prior to and during plaintiffs' tenancy;

    (b)    failing to inform plaintiffs of the existence of a dangerous level of lead-based paint in the house;

    (c)    failing to properly inspect the house for the existence of lead-based paint;

    (d)    failing to remove the dangerous lead-based paint from the house;

    (e)    failing to properly maintain the property in order to prevent exposure to lead-based paint;

    (f)    failing to comply with District of Columbia Municipal Regulations and other statutory provisions which prohibit the existence of flaking, loose or peeling paint and the use of paint with lead pigment on the walls of District of Columbia dwellings; and

    (g)    otherwise acting negligently and carelessly.

    15.    The defendant's negligent acts and omissions directly and proximately caused Zaida J. Quijano great harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C.
(202)
TELECOPIER: (202)

16.     Plaintiffs exercised due care and were not contributorily negligent at any time pertinent to this case.

WHEREFORE, Maria Quijano and Manual DeJesus Quijano, individually and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees costs, and whatever other relief this Court deems appropriate.

COUNT II
(Strict Liability)

17.     Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 16 above as if fully alleged herein.

18.     The defendant, as a supplier of rental housing to the plaintiffs and their family, was under duty to conduct a reasonable inspection of the property located at 3145 Mt. Pleasant Street, NW, Washington, DC and to test the property for possible defects such as the existence of flaking, loose or peeling paint chips or dust that contained lead-based paint, in order to reasonably assure the safety of the rental property for its occupants.

19.     The defendant, as a supplier of rental housing, knew, or by use of reasonable care should have known, that the rental housing that he supplied the plaintiffs and their family contained flaking, loose and peeling paint chips and dust that contained lead-based paint that posed an unreasonable risk of physical and mental harm to Zaida J. Quijano.

20.     While living at 3145 Mt. Pleasant Street, NW, Washington, DC, Zaida J. Quijano on frequent occasions was exposed to and ingested lead-based paint chips and powder, and peeling lead-based paint in and about the home. As a result of her ingestion of lead-based

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005

TELECOPIER: (202) 682-1640

paint chips and powder, Zaida J. Quijano sustained serious and permanent mental and physical harm.

21.    Prior to Zaida J. Quijano's lead poisoning, plaintiffs and their family were unaware of the unreasonably dangerous and defective condition of the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, as a result of the flaking, loose and peeling paint chips and dust that contained lead-based paint located within the property.

22.    Plaintiffs and their family did not substantially alter the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, during their tenancy and prior to the harm sustained by Zaida J. Quijano due to her ingestion of paint chips and dust that contained lead.

23.    The defendant is strictly liable for the harm sustained by Zaida J. Quijano as a result of his failure to properly inspect and test the property located at 3145 Mt. Pleasant Street, NW, Washington, DC, and his failure to warn the plaintiffs that the property supplied to the plaintiffs and their family contained flaking, loose and peeling paint chips from the property prior to renting it to the plaintiffs and their family.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

### COUNT III
### (Nuisance)

24.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 23 above as if fully alleged herein.

COHEN & CARDARO, P.C.
ATTORNEYS AT LAW
1150 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 659-4600
TELECOPIER (202) 659-1849

25.     The defendant's failure to remove flaking, loose or peeling lead-based paint and powder from the house located at 3145 Mt. Pleasant Street, NW, Washington, DC, at all times pertinent herein, constituted a nuisance and unreasonable conduct that greatly endangered the health of Zaida J. Quijano and caused her to sustain serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

26.     The defendant is responsible for the damages and injuries sustained by Zaida J. Quijano by continuing to allow the existence of flaking, loose or peeling lead-based paint and powder in the house located at 3145 Mt. Pleasant Street, NW, Washington, DC, thereby causing serious and permanent harm to Zaida J. Quijano.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

<u>COUNT IV</u>
<u>(Breach of Warranty)</u>

27.     Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 26 above as if fully alleged herein.

28.     Under the terms of the lease that existed between the defendant and the plaintiffs and their family, at all times pertinent herein, and under District of Columbia law, the defendant warranted that the property occupied by the plaintiffs and their family at 3145 Mt. Pleasant Street, NW, Washington, DC, was in compliance with District of Columbia housing

CORES & CARDARO, P.C.
ATTORNEYS AT LAW
1919 FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20009
(202) 265-4130
TELECOPIER: (202) 265-1540

regulations and fit for normal human habitation and uses.

29.     By renting property that contained flaking, loose or peeling paint chips and dust that contained lead-based paint, the defendant endangered the life, health and safety of Zaida J. Quijano. Defendant breached his express and implied warranty of habitability which existed between the defendant and the plaintiffs.

30.     As a direct and proximate result of defendant's breach of his warranty of habitability, Zaida J. Quijano sustained serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter Zaida J. Quijano, prays this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

## COUNT V
### (Breach of consumer Protection Act)

31.     Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 through 30 above as if fully alleged herein.

32.     Section 28-3904 of the District of Columbia Code (1981 ed.) prohibits unlawful trade practices including the offer for rental of consumer realty in a manner that is misleading or tends to mislead, or that otherwise misrepresents the standard, quality or safety of the offered rental property.

33.     The defendant rented the plaintiffs and their family property that contained

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 2005
(202) 686-4150
TELECOPIER (202) 686-1360

loose, flaking and peeling lead-based paint and dust that was dangerous to the life, health and safety of Zaida J. Quijano.

34.    By renting property without disclosing that it was dangerous to the life, health and safety of Zaida J. Quijano, defendant endangered the life, health and safety of Zaida J. Quijano and committed an unlawful trade practice as defined in the District of Columbia Code.

35.    As a direct and proximate result of the defendant's commission of an unlawful trade practice,   Zaida J. Quijano sustained serious harm, including, but not limited to, pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury, as well as economic injury for which claim is made.

WHEREFORE, Maria Quijano and Manuel DeJesus Quijano, individually, and on behalf of their minor daughter, Zaida J.  Quijano, pray this Court award them compensatory damages against defendant in the amount of Five Million Dollars ($5,000,000.00), plus attorneys fees, costs, and whatever other relief this Court deems appropriate.

## COUNT VI
### (Parent's Claim)

36.    Plaintiffs hereby adopt and incorporate the allegations contained in paragraphs 1 to 35 above.

37.    As a direct and proximate result of defendant's actions described herein, plaintiffs, Maria Quijano and Manuel DeJesus Quijano, as parents responsible for Zaida J. Quijano's care and maintenance, have and will continue to incur great expenses for the medical and educational care, treatment, and attention for and to their daughter as a result of Zaida J. Quijano becoming exposed to dangerous lead-based paint.

ORES & CARDARO, P.C.
ATTORNEYS AT LAW
FIFTEENTH STREET, N.W.
THIRD FLOOR
WASHINGTON, D.C. 20005
(202) 466-4146
TELECOPIER: (202) 466-1341

9

WHEREFORE, plaintiffs Maria Quijano and Manuel DeJesus Quijano, individually,
pray this Court award them compensatory damages against defendant in the amount of One
Million Dollars (1,000,000.00), plus attorneys fees, costs, and whatever other relief this Court
deems appropriate.

JURY TRIAL REQUESTED.

Respectfully submitted,

KLORES & CARDARO, P.C.

By: _____
Thomas C. Cardaro (#418330)
915-15th Street, NW, 3rd Floor.
Washington, DC 20005
Tel.: 202-628-8100
Attorney for Plaintiffs

k:\1043\kpl.49

10



CNA Plaza  Chicago  IL  60685–0001

**Anthony Romas**
Claim Consultant
Environmental and Mass Tort Claims
19 South

Telephone  312-822-7325
Facsimile  312-817-3498
Internet    tony.romas@cna.com

April 25, 2000

John Redmond
7312 Brookstone Court
Potomac, MD 20854

Insured: **Deauville Limited Partnership**
Claim:      **07-103024**
Re:         **Maria Quijano et al. v. John R. Redman**
Policy(s): **BC 08028780-96 ( 2/1/95-96)**

Dear Mr. Redmond:

Please note that the undersigned will be handling the above captioned  file and as such, all future correspondence should be directed to my attention.

Please be advised that I have a partial copy of the above captioned policy; we are continuing our search for this policy and for all other relevant policy(s).  If you have a copy of policy BC 08028780-96, please forward same to my attention. I would also be interested in receiving any policy(s) that you have with a period of 1994-1995. After we have fully reviewed the policy(s) and analyzed all relevant factual information, we will at that time be able to provide you with a definitive coverage position.

In the interim, please be aware that policy(s) usually contain certain terms, conditions, definitions and exclusions that may form the basis for disclaiming coverage.

Such issues may include but are not limited to:

1. Whether any claims constitute an "occurrence" as that term is defined in the policy(s).

2. Whether the alleged "bodily injury" was expected or intended.

3. Whether any "bodily injury" occurred during the policy period of any relevant policy.

4. Whether any "bodily injury" as defined in the policies has taken place.

- 2 -

5. Whether the claim constitutes a claim for damages under the policy(s).

6. Whether a pollution exclusion applies.

7. Whether a lead exclusion applies.

8. Whether there was fraud or concealment in the application of any policy(s).

9. Whether the defendant(s) being sued are insured's under the policy(s).

10. Whether the premises, 3145 Mt. Pleasant St. Washington, DC is a covered property under the policy(s).

Please note that our excess policies generally do not obligate us to defend an insured in the underlying matter or to pay/reimburse an insured for any expense or cost that result from defense activities. Also, as an excess insurer, our duty to indemnify only arises once the limits of the underlying policies have been exhausted, should there be coverage.

Regarding the Quijano litigation, it is my understanding that your defense is being handled by the law firm of Carr, Goodson, Warner. Mark Collins is the attorney assigned to this case. His direct number is 202-310-5533.

Our acceptance of the defense is undertaken with the understanding that Kansas City Fire and Marine Insurance Company ("KCF") reserves the right, upon reasonable notice, to discontinue the defense and disclaim coverage should information arise that the claim is not covered. Please note that where any other carrier may have a defense obligation for this claim, this company will share in defense costs consistent with the terms of the applicable **"other insurance"** clause of this and any such carrier(s).

Other defenses and issues which could arise include, but are not limited to, whether public policy or the policy provisions exclude coverage for punitive or treble damages and attorneys' fees, and the limitation of coverage by the applicable limits of liability in the policies. Additionally, a policy(s) may have a deductible(s) that could apply to this loss. You should be aware that coverage may not be afforded for any claims asserting fraud, mis-representation, breach of express warranty, breach of implied warranties, or violation of consumer protection statutes.

KCF expressly reserves its rights to assert any term, condition and/or exclusion contained in the policy of insurance regardless of whether such term, condition and/or exclusion is specifically referred to herein. This letter shall not be deemed to have waived, diminished, or altered any of the rights which an insured may have by virtue of the policies of insurance as issued by KCF nor shall this letter or any other act on the part of KCF be construed as a waiver of any policy provisions or KCF's right thereunder.

If you have any questions, please feel free to call me at the number listed above.

- 3 -

Respectfully,

Anthony Romas
Kansas City Fire and Marine Insurance Company

# Carr Goodson Lee & Warner

1301 K Street, NW
Suite 400, East Tower
Washington, DC 20005-3300
(202) 310-5500
(202) 310-5555 Fax
Internet: http://www.cglw.com

Tycon Towers
8000 Towers Crescent Drive
Suite 1350
Vienna, VA 22182
(703) 691-8818

The World Trade Center
401 E. Pratt Street
Suite 1622
Baltimore, MD 21202
(410) 752-1570

31 Wood Lane
Rockville, MD 20850
(301) 424-7024
Mark A. Collins
202-310-5533
Admitted in DC, MD & CA

December 30, 1998

Mr. John R. Redmond
7312 Brookstone Court
Potomac, Maryland 20854

Re:     *Quijano v. Redmond*
Our File No.:   04198DC002

Dear Mr. Redmond:

Several weeks ago I sent you draft versions of Responses to Interrogatories and Responses to Requests for Admissions that we have prepared on your behalf. I hope that by now you have had the opportunity to review these documents. Please provide me with your input either by sending me your written additions, or giving me a telephone call to discuss the materials. Once we have agreed upon the content of your discovery responses, please execute the verification page and return it to me.

On another subject, plaintiffs' counsel has advised me that he plans to amend the complaint to name Deauville Associates LLP and the Mount Pleasant Street Revocable Trust as defendants. I have requested that CNA authorize my firm to represent these additional defendants. As you know, Deauville Associates LLP is the named insured on Continental policy number 25 BC 08028780-96, under which CNA is already defending you. You have previously advised that Deauville Associates LLP purchased 3145 Mt. Pleasant in 1985, and placed the title into the Mt. Pleasant Street Revocable Trust sometime in 1996, where it remains to the present. I will keep you advised of developments on this front.

Please give me a call concerning your discovery responses as soon as possible.

Best wishes for the New Year.

Sincerely,

*Mark Collins*

Mark A. Collins

MAC/als
Enclosures

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CONTINENTAL CASUALTY COMPANY,
*et al.*,

                Plaintiffs,

      -*vs*-                        Case No. 1:07-cv-01818 (ESH)

DEAUVILLE ASSOCIATES, LIMITED
PARTNERSHIP, *et al.*,

                Defendants.

## <u>ORDER</u>

Upon consideration of Plaintiffs' Motion to Dismiss Counterclaims, it is this _____ day of

_____, 2008 hereby

ORDERED that Plaintiffs' Motion to Dismiss is granted, and it is

FURTHER ORDERED that Counts II (waiver), III (estoppel), IV (District of Columbia

Consumer Protection Procedures Act), V (negligent misrepresentation), VI (insurer bad faith)

and VII (fraud) of the Counterclaims of Defendants Deauville Associates, Limited Partnership,

Deauville Limited Partnership, Mount Pleasant Street Revocable Trust and John R. Redmond,

are dismissed with prejudice.

IT IS SO ORDERED.


                                  _____
                                  United States District Judge