**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA**

CONTINENTAL CASUALTY
COMPANY, et al.

     Plaintiffs

v.

DEAUVILLE ASSOCIATES,
LIMITED PARTNERSHIP, et al.

     Defendants

Case 1:07 – cv - 01818
Assigned to : Huvelle, Ellen S.
Assign Date: 10/9/2007
Description: Contract

**DEFENDANTS' OPPOSITION TO CONTINENTAL'S MOTION TO DISMISS
COUNTERCLAIM**

   Defendants Deauville Associates, Limited Partnership, Deauville Limited

Partnership, Mount Pleasant Street Revocable Trust and John R. Redmond (collectively

Deauville) oppose the Motion to Dismiss certain of Deauville's Counts in the

Counterclaim filed by Continental Casualty Company and the Continental Insurance

Company, as successor by merger to Kansas City Fire and Marine Insurance Company

(collectively Continental) and respectfully direct the Court's attention to the

Memorandum of Points and Authorities appended hereto and made a part of this

Opposition.

           _____/s/_____
           Joseph F. Cunningham #65532
           CUNNINGHAM & ASSOCIATES
           1600 Wilson Blvd. Suite 905
           Arlington, VA 22209
           *Attorney for Defendants John R.
Redmond, Deauville Limited
Partnership, Deauville Associates,
Limited Partnership, and Mount
Pleasant Street Revocable Trust*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CONTINENTAL CASUALTY
COMPANY, et al.

             Plaintiffs

v.

DEAUVILLE ASSOCIATES,
LIMITED PARTNERSHIP, et al.

           Defendants

Case 1:07 – cv - 01818
Assigned to : Huvelle, Ellen S.
Assign Date: 10/9/2007
Description: Contract


## MEMORANDUM OF POINTS AND AUTHROITIES IN SUPPORT OF OPPOSITION TO DISMISS PORTIONS OF DEFENDANTS' COUNTERCLAIM

i

# TABLE OF AUTHORITIES

## CASES

Adams v. NVR Homes Inc., 193 FRD 243 (D. Md. 2000) ...................................................18

Allen v. Yates, 870 A.2d 39 (D.C. 2005) ...........................................................................12

Allstate Insurance Co. v. Reliance Insurance Co., 141 Md. App. 506, 514, 786 A.2d 27 (2001)..................8

American Nat. Red Cross v. Travelers Indem. Co., 896 F. Supp 8 (D.D. C. 1995) .....................................12

Anderson v. USAA Cas. Ins. Co., 221 FRD 250 (D.D.C. 2004)......................................................14

Athridge v. Aetna Cas. & Sur. Co., 359 U.S. App. D.C. 22, 351 F.3d 1166 (2003) .........................17

Athridge v. Aetna Cas. and Ins. Co, 2006 U.S. Dist. LEXIS 71822 ..........................................7

Atkins v. Ind. Tel. Ass'n, Inc, 660 A.2d 885 (D.C. 1995) ...................................................3

Atraqchi v. GUMC Unified Billing Services, 788 A.2d 559, 561-3 (D.C. 2002) ..........................3

Banks v. D.C. Dept. of Consumer Affairs, 634 A.2d 433 (D.C. 1993)......................................17

Bennet v. Schmidt, 153 F.3d 516 (7th Cir. 1998) .............................................................2

Brand v. Gov't Employees Ins. Co., 2005 U.S. Dist. LEXIS 44787 (D.D.C. 2005)..........................12

Casco Marina Dev. LLC v. DC Redevelopment Land Agency, 834 A.2d 77 (2003) ..........................3

Central Armature Works Inc. v. Am. Motorists Ins. Co, 520 F.Supp. 283 (D.D.C. 1981).................10

Chelsea Condo. Asso. v. 1815 A. St. Condo Gp. LLC, 468 F.Supp 2d 136 (D.D.C. 2007)..................15

Cohen v. Entangible. Com., No. 00-1168 2000 U.S. Dist. LEXIS 19527 (D. Md. 2000) .................16

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2L. Ed 2d 80 (1957)..............................................1

Cooper v. First Govt. Mort. and Investors Corp., 206 F. Supp 2d 33 (D.D. C. 2002) ...................17

Darrow v. Dillingham & Murphy, LLP, 902 A.2d 135 (D.C. 2006)..........................................3

District of Columbia v. Coleman, 667 A.2d 811 (D.C. 1995) ...............................................5

Ellipso, Inc. v. Mann, 460 F. Supp 2d 99 (D.D.C. 2006) ....................................................15

Erie v. Tompkins, 304 U.S. 64 (1938).................................................................................10

Esteves v. Esteves, 680 A.2d 398, 401 n.1 (D.C. 1996)......................................................15

Evans v. Chase Manhattan Mort. Corp., No. 04-2185 (D.D. C. 2005) ...................................... 16, 17

Fairman v. D.C., 934 A.2d 438 (D.C. 2007).......................................................................9

Fireman's Fund Ins. Co. v. CTIA, 480 F. Supp. 2d 7 (D.D.C. 2007)........................................11

Fireman's Fund Ins. Co. v. Rarrigh, 59 Md. App. 305, 315-16, 475 A.2d 509 (1984)......................9

Fireman's Fund v. Continental Ins. Co., 308 Md. 315, 519 A.2d 202 (1987) ..............................13

Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (N.J. 1982)...................................................8

Hall v. Ford Enterprises, Ltd, 445 A.2d 610 (D.C. 1982) ....................................................15

Haymon v. Wilkerson, 535 A.2d 880 (D.C. 1987) ...............................................................3

Haynesworth v. Miller, 261 U.S. App. D.C. 66, 820 F.2d 1245 (1987).......................................3

Hercules & Co. v. Shama Rest. Corp., 566 A.2d 31 (D.C. 1989)..............................................5

Hishon v. King Spalding, 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) .........................2

Horning v. Ferguson, 52 A.2d 116 (D.C. 1947)...................................................................9

Howard v. Riggs Nat'l Bank, 432 A.2d 701 (D.C. 1981) ......................................................15

Knight v. Furlow, 553 A.2d 1232 (D.C. 1989) ..................................................................13

Kremen v. Md. Auto Ins. Fund., 363 Md. 663, 770 A.2d 170, 177 (2001).................................13

Krieger v. Fadely, 341 U.S. App. DC 163, 211 F.3d 134 (2002) ..............................................2

Maynard v. Westport Ins. Corp., 208 F. Supp 2d 568 (D. Md. 2002) ........................................8

McBryde v. Amoco Oil Co., 404 A.2d 200 (D.C. 1979)........................................................3

McCauley v. Suls, 123 Md. App. 179, 716 A.2d 1129 (1997) ................................................12

Messina v. Nationwide Mut. Ins. Co., 302 U.S. App. D.C. 384, 998 F.2d 2, 4 (D.C. Cir. 1993)...........11

Miller v. Holzmann, No 95-1231, 2007 U.S. Dist. LEXIS 15598 (D.D.C. 2006)..........................15

Moore v. Ronald Hsu Constr. Co., 576 A.2d 734 (D.C. 1990)................................................5

Nat'l Cntrs. for Facial Paralysis, Inc. v. Walmart Claims, 247 F. Supp. 755 (D. Md. 2003) ...............4

Norment Sec. Grp. Inc. v. Travelers Cas & Ins. Co., 505 F.Supp 2d 97 (D.D.C. 2007)....................15

Oparaugo v. Watts, 884 A.2d 63 (D.C. 2005)....................................................................3

Osborne v. Cap. City Mort. Corp., 667 A.2d 1321 (D.C. 1995)..............................................18

Pence v. U.S., 316 U.S. 332, 86 L. Ed 1510, 62 S. Ct. 1080 (1941) ........................................15

Porter Novelli Inc. v. Bender, 817 A.2d 185 (D.C. 2003)......................................................9

Ross-Randolph v. Allstate Ins. Co., No. 99-3344, (D. Md 2001)..................................................12

Rubinstein v. Jefferson Nat'l Life Ins. Co., 268 Md. 388, 302 A.2d 49 (1973) ...............................8

Sass v. Andrew, 832 A.2d 247, 152 Md. App. 406, 432 (2003)......................................................15

St. Paul Fire & Marine Ins. Co., 291 Md. 139, 433 A.2d 1135 (1981) ............................................8

Starks v. North East Ins. Co., 408 A.2d 980 (D.C. 1979) ...............................................................9

State Farm Mut. Auto Ins. Co. v. Hoang, 682 A.2d 202 (D.C. 1996) ............................................10

Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ................................2

Thoubboron v. Ford Motor Co., 809 A.2d 1204 (D.C. 2001) ..........................................................9

Travelers Indem. Co. v. United Food & Commercial Workers Int'l, 770 A.2d 978 (D.C. 2001) ........8

U.S. ex rel McCready v. Columbia/HCA Healthcare Corp., 251 F. Supp 2d 114 (D.D.C. 2003)........16

U.S. ex rel. Joseph v. Cannon, 206 U.S. App. D.C. 405, 642 F.2d 1373 (1981)................................3

United States ex rel Tolten v. Bombadier Corp., 286 F.3d 542, 351 U.S. App. D.C. 30 (2002)........15

Vigilant Ins. Co. v. Luppino, 352 Md. 481, 723 A.2d 14 (1996) ...................................................13

Wallace v. Skadden, Arps, 715 A.2d 873 (D.C. 1998)....................................................................3

Washington v. GEICO, 769 F.Supp. 383 (D.D.C. 1991) ...............................................................12

Washington v. Group Hospitalization, Inc., 585 F. Supp 517 (D.D. C. 1984) ...............................11

Washington v. State Farm Fire & Cas. Co., 629 A.2d 24 (D.C. 1993) ............................................6

Washkoviak v. Student Loan Assc., 900 A.2d 168 (D.C. 2006)......................................................5

Windsor Ass'n Inc. v. Greenfield, 564 F. Supp 273 (D. Md. 1983)................................................16

## Introduction

The Deauville defendants oppose the Continental counter-defendants' Motion to Dismiss Defendants' Counterclaims and submit the following:

It would be difficult to fathom a more exaggerated construct for a Rule 12(b)(6) Motion than Continental's present lengthy effort. The four Counts which it seeks to have the Court dismiss are hardly "fundamentally flawed," for as will be seen below each is rooted in local case law and precedent. While subsequent discovery might present the possibility that every one of the Counts might not reach trial, this conjecture is surely not the stuff upon which a successful Rule 12 Motion turns. Moreover, the present extended exegesis on the substance of the challenged Counts seems more like an artful fishing expedition to force Deauville to disclose its entire legal bases for the present Counterclaim. While the mechanism employed here by Continental is inappropriate, the actual discovery goal of this Motion may be basically satisfied below.

## Procedural Considerations Rule 8(a)(e), Rule 12(b)(6)

Ever since <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2L. Ed 2d 80 (1957), decided some fifty years ago, the federal courts have been reluctant to preclude plaintiffs from their day in court based upon perceived difficulties of pleading as to allegations of defendants' wrongdoing. Justice Black put it nicely:

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis for both claim and defense and

1

to define more narrowly the disputed facts and issues.  Following the simple guide
of *Rule 8(f)* that "all pleadings shall be so construed as to do substantial justice,"
we have no doubt that petitioners' complaint adequately set forth a claim and
gave the respondents fair notice of its basis.  The Federal Rules reject the
approach that pleading is a game of skill in which one misstep by counsel may be
decisive to the outcome and accept the principle that the purpose of pleading is to
facilitate a proper decision on the merits.

Id. at 47-48.  There, as here, a large and economically powerful entity was seeking to use

the federal procedural Rules to force small, under-financed respondents out of court and

such a maneuver was wisely rejected.   The U.S. Supreme Court and our Circuit has

consistently followed such course to the present.  See Swierkiewicz v. Sorema, 534 U.S.

506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), where a unanimous Supreme Court reversed

the Second Circuit and said:

> Other provisions of the federal Rules of Civil Procedure are inextricably linked to
> *Rule 8(a)*'s simplified notice pleading standard.  *Rule 8(e)(1)* states that "no
> technical forms of pleading or motions are required," and *Rule 8(f)* provides that
> "all pleadings shall be so construed as to do substantial justice."  Given the
> Federal Rules' simplified standard for pleading, "[a] court may dismiss a
> complaint only if it is clear that no relief could be granted under any set of facts
> that could be proved consistent with the allegations."  Hishon v. King  Spalding,
> 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).  If a pleading fails to
> specify the allegations in a manner that provides sufficient notice, a defendant can
> move for a more definite statement under *Rule 12(e)* before responding.
> Moreover, claims lacking merit may be dealt with through summary judgment
> under rule 56.  The liberal notice pleading of *Rule 8(a)* is the starting point of a
> simplified pleading system, which was adopted to focus litigation on the merits of
> a claim.  See *Conley, supra, at 48*.

Id. at 513.  Judge Randolf writing for a unanimous panel of this Circuit in Krieger v.

Fadely, 341 U.S. App. DC 163, 211 F.3d 134 (2002) went even further:

> The complaint claimed that "records" concerning Krieger were wrongfully
> disclosed, which necessarily means that information in records had been revealed.
>  True, this does not give much detail, but complaints "need not plead law or
> match facts to every element of a legal theory," Bennet v. Schmidt, 153 F.3d 516,
> 518 (7th Cir. 1998).  We agree with Judge Easterbrook, writing for the court in
> Bennett, that using *Rule 12(b)(6)* rather than summary judgment under *Rule 56* to

2

weed out what appear to be factually deficient cases may be incompatible with
*Rule 8*.  <u>See</u> 153 F. 3d at 518-19.

<u>Id</u>. at 135.

This is not to say Rule 12(b)(6) can never be utilized in a civil action; merely that
in fact-intensive cases such as the present dispute it is inappropriate.  <u>Compare</u>, <u>U.S. ex
rel. Joseph v. Cannon</u>, 206 U.S. App. D.C. 405, 642 F.2d 1373 (1981) (political question
lacks justiciability).  And the present dispute is such a factually controlled case as, even
at this stage, the pleadings and these motion papers show.  <u>See</u>, <u>Haynesworth v. Miller</u>,
261 U.S. App. D.C. 66, 820 F.2d 1245 (1987).

The District of Columbia Court of Appeals has also consistently been loath to
approve summary dismissals at the pleading stage in a wide variety of cases.  <u>Darrow v.
Dillingham & Murphy, LLP</u>, 902 A.2d 135, 137 (D.C. 2006) (constructive discharge
claim requires trial); <u>Oparaugo v. Watts</u>, 884 A.2d 63 (D.C. 2005) (libel and conspiracy
claims require trial); <u>Casco Marina Dev. LLC v. DC Redevelopment Land Agency</u>, 834
A.2d 77, 81 (2003)(immunity and tortious interference with contract claims require trial);
<u>Atraqchi v. GUMC Unified Billing Services</u>, 788 A.2d 559, 561-3 (D.C. 2002)
(professional liability claim requires trial); <u>Wallace v. Skadden, Arps</u>, 715 A.2d 873
(D.C. 1998) (law office administration issues and defamation claims require trial); <u>Atkins
v. Ind. Tel. Ass'n, Inc</u>, 660 A.2d 885, 887 (D.C. 1995) (any uncertainties or ambiguities
involving the sufficiency of the complaint must be resolved in favor of the pleader, and
generally, the complaint must not be dismissed because the court doubts the plaintiff will
prevail); <u>Haymon v. Wilkerson</u>, 535 A.2d 880, 882 (D.C. 1987) (medical expense claim
requires trial); <u>McBryde v. Amoco Oil Co.</u>, 404 A.2d 200, 202-3 (D.C. 1979) (negligence
claim requires trial).

The challenged Counts in the Deauville Counterclaim are clearly fact dependant. For example, Continental here took one course in dealing with an exactly similar claim at the same location involving the same insurance policies issued to the same policy holder and presently takes another, which causes the insured significant present and future damages, given its reliance on the scope of coverage in the subject policies.  See Exhibit VI attached.  The implausible defense Continental raises to the valid Deauville waiver and estoppel arguments is that somehow new policy documents surfaced over the years that did not exist closer to the time when the subject policies were first issued.  Yet the Deauville Counterclaim at Exhibit I shows the actual policy issued which has no lead paint exclusion.  Continental's lame response is that while admittedly it does not have the original, it has crabbed together various exclusions from some other unknown sources which purportedly reflect what the policy its acquired carrier, Kansas City Fire & Marine Ins. Co., ought to have issued.  By the very statement of this proposition, its absurdity is apparent.  Indeed, this may well be the topic of a forthcoming dispositive motion from the Deauville defendants once discovery is completed.   But, in any event, such circumstances are foreign to summary disposition in the carrier's favor.

Likewise, the causes of bad faith, negligent misrepresentation, fraud, and violations of the D.C. Consumer Protection Procedures Act involve factual conduct by Continental that, with all facts and legitimate inferences drawn from them taken as true, also state a legitimate claim under DC or Maryland law, as will be discussed below. Casco Marina Dev. LLC, 834 A.2d at 81; Nat'l Cntrs. for Facial Paralysis, Inc. v. Walmart Claims, 247 F. Supp. 755 (D. Md. 2003); 2A Moore's Fed Practice, p 12.07 [2-

5] (2d ed, 1987); 5A C. Wright & A. Miller, Fed Practice & Procedure, 1357 at 304-21(1990).

## <u>Governing Law</u>

Unlike the certainty expressed by movant that District of Columbia law governs (brief, p.4), this is far from a given.  Continental chooses not to deal with or discuss the Maryland cases cited by Deauville (p.8) in the Counterclaim but rather, ignoring the reality that the predicate for most of these claims arises from a contract dispute, with the choice of law in such instances related to where the contract was negotiated, formed, and to be performed (all in Maryland), concentrates instead on the location of the building when the loss allegedly occurred and the place of the underlying suit, filed against Deauville.  It fails to even cite, let alone discuss the six factor test referenced in <u>Hercules & Co. v. Shama Rest. Corp.</u>, 566 A.2d 31, 40-43 (D.C. 1989), nor <u>Moore v. Ronald Hsu Constr. Co.</u>, 576 A.2d 734 (D.C. 1990) and <u>District of Columbia v. Coleman</u>, 667 A.2d 811 (D.C. 1995).  These cases, like the instant case, involve misrepresentation issues.  Maryland, of course, was the place where Deauville relied on the Continental misrepresentations; the place where it received the misrepresentations; the place where Continental made the misrepresentations; and the place where performance was promised.  <u>Hercules</u>, 566 A.2d at 43.  And, as Judge Ferren for the D.C. Court of Appeals wrote last year in <u>Washkoviak v. Student Loan Assc.</u>, 900 A.2d 168 (D.C. 2006), the place of injury is less important in misrepresentation cases than in others and a mere counting of contacts is less important than the quality of the contacts.  Such criteria are arguably the circumstances in this case which related to the purchase in Maryland of the subject insurance policies to include protections listed therein as to lead paint claims, and

5

now wrongly denied the purchaser.  Continental is correct to cite the Restatement

(Second) of Conflict of Laws, (1971) but § 148 and not §188 applies presently.

Regardless of the above, Deauville agrees with Continental that the Court need

not at this time engage in a choice of law determination (brief p.6) since Maryland and

D.C. law are not divergent on most aspects of this dispute.

### Waiver and Estoppel

As discussed briefly above, it is too clever by half to argue that neither waiver nor

estoppel claims lie presently.  The complete reversal of position taken by the insurer to

the insured's detriment, on the most patently frivolous grounds occurred here.  That the

insured benefited on the occasion of the first lead paint claim in Quijano being defended

against and paid by the insurer is true but it suffered detriment in its reliance on the

earlier conduct of the insurer in the underlying proceedings.  To ignore this change of

position translates into the preposterous theory that: we acted properly once so we can do

the opposite now.  In thirty-seven years of insurance defense practice, the undersigned

has never read a case nor heard an argument by a carrier that posited such an odd

conclusion.

A second argument Continental makes is that reserved its rights in Quijano to

deny coverage in Figueroa, citing Washington v. State Farm Fire & Cas. Co., 629 A.2d

24 (D.C. 1993).  But Washington, albeit decided correctly on its facts, has nothing to do

with the present case.  Washington involved a defamation claim under a Homeowners

policy, neither of which are presently involved here, and the court ruled that injury to

reputation was an excluded claim, consistent with precedent elsewhere.  More

importantly, the reservation was issued by State Farm which then proceeded for a period

6

of time to defend, conduct never presently undertaken by Continental, and it involved

only a single case, unlike here.  No authority is cited, nor does it exist, which would

transpose a carrier's reservation of rights (a standard practice form notice) in one

coverage dispute to the same insured in another case, involving another claim ten years

later.  Continental in relying on such a case and such an argument must deem its readers

mentally impaired.  The subject reservation did not say it related to any claim that would

ever be brought against this insured nor was it pursued as to the claim involved in that

earlier case.  To dredge this argument up now is the height of desperation.

Likewise, the other cases cited by Continental to attack the viability of the

estoppel and waiver claims of Deauville are off the mark, albeit less completely than

Washington.  In Athridge v. Aetna Cas. and Ins. Co, 2006 U.S. Dist. LEXIS 71822,  a

dissimilar summary judgment case involving supposed control of a defense by the carrier,

Magistrate Judge Facciola made the sensible point that estoppel of the insurer can be

caused either by failure to reserve rights in a case it defends or the finding of prejudice

through the facts presented.  The later principle being the very concept put forward by

Deauville here who was lulled into a belief that it needed no extra insurance to protect

against an obviously perceived risk of lead paint claims by tenants.  Such reliance was

justified when Continental defended and paid such a claim, identical to the present one,

despite going through the motion of reserving its rights in the earlier case.  Had Deauville

suspected it needed additional coverage for such claims, the evidence will show

Deauviille could have obtained it.  It took no such action given Continental's action --

which under all the cases relied upon by movant is at least sufficient to raise a factual

issue for a jury determination.

Similarly, <u>Maynard v. Westport Ins. Corp.</u>, 208 F. Supp 2d 568 (D. Md. 2002)

and <u>Travelers Indem. Co. v. United Food & Commercial Workers Int'l</u>, 770 A.2d 978

(D.C. 2001) are not pertinent to the present facts.  Both are summary judgment cases, not

12(b)(6) cases.  In <u>Travelers</u>, the court even states "it would still be a question of fact for

the jury whether, to avoid waiver…" a carrier was absolved from future responsibility.

<u>Id</u>. at 993.  In <u>Maynard,</u> the issue was one involving the carrier's delay in denial of

coverage being reasonable, vel non, unlike the present facts.  But there too the court

pointed out that waiver or estoppel can be decided only when, as there, the facts are clear.

 <u>Westport</u> at 576, ftn. 7. Interestingly, in that case the delay in a denial notice was less

than one month. <u>Id</u>. at 571.  Here it was ten years.  And the court quoted other precedent

applicable to the present circumstances and supportive of Deauville's position:

> Waiver is the intentional relinquishment of a known right or such conduct as
> warrants an inference of the relinquishment of such right. <u>Rubinstein v. Jefferson
> Nat'l Life Ins. Co.</u>, 268 Md. 388, 392-93, 302 A.2d 49 (1973).  'An insurance
> company may waive provisions of its policies by express agreement, or a waiver
> may be inferred form the company's conduct, if the conduct is 'inconsistent with
> an intention to insist upon a strict performance of the condition.' <u>Allstate
> Insurance Co. v. Reliance Insurance Co.</u>, 141 Md. App. 506, 514, 786 A.2d 27
> (2001), quoting <u>St. Paul Fire & Marine Ins. Co</u>., 291 Md. 139, 145, 433 A.2d
> 1135 (1981) (internal quotations omitted).  Estoppel and waiver are frequently
> interrelated.  In order for estoppel to apply, one must have been misled and
> sustained injury as a result of reliance on the act or statement of an authorized
> agent of the insurer. <u>Allstate</u>, 141 Md. App. At 514, citing <u>Rubinstein</u>, 268 Md. At
> 393.  In Maryland, while an insurer may waive or be estopped from relying on a
> defense by its unreasonable delay in notifying the insured that it intends to rely on
> such a defense, it will not be barred where such delay is not unreasonable, or the
> insured was not injured. <u>Bullock</u>, 68 Md. App. At 39.  In a case relied on by
> Plaintiffs, <u>Griggs v. Bertram</u>, 88 N.J. 347, 443 A.2d 163 (N.J. 1982), the court did
> find that an insurance company was estopped from relying on an exclusion, but
> only after determining that there was an unreasonable delay in disclaiming
> coverage.  <u>Id</u> at 576, (emphasis added).

<u>Id</u>. at 576.

"Reasonableness of notice is usually a question for the jury. Starks v. North East Ins. Co., 408 A.2d 980, 982 (D.C. 1979). Moreover, it has always been the law in the District that "waiver is ordinarily a question for the determination of the trier of facts." Horning v. Ferguson, 52 A.2d 116 (D.C. 1947). See also, Fireman's Fund Ins. Co. v. Rarigh, 59 Md. App. 305, 315-16, 475 A.2d 509 (1984) (estoppel argument reserved for jury).

Given the above, it may be unnecessary to point out that more recent District of Columbia cases have embraced the doctrine of equitable estoppel to preclude a party from attempting to benefit from totally inconsistent behavior in separate instances involving the same disputant. Regardless, in each case cited below, the appellate court applying a common sense evaluation of a dubious change of position, applied the doctrine to prevent unfairness in business dealings. While not involving insurance coverage disputes, the equitable principle enforced in these cases applies with equal pertinence presently. Fairman v. D.C., 934 A.2d 438 (D.C. 2007); Porter Novelli Inc. v. Bender, 817 A.2d 185, 188 (D.C. 2003); Thoubboron v. Ford Motor Co., 809 A.2d 1204, 1212 (D.C. 2001).

Therefore, given the applicable case law; the fact intensive nature of Deauville's prejudicial reliance on Continental's contract performance related to the 1998 lead paint claim; the irrelevance of a formulative reservation of rights in the earlier matter, which Continental in any event ignored in practice; the availability of broader coverage to Deauville had it been alerted that future lead paint claims would be handled differently and denied by Continental; and the general disinclination to view timely notice issues as

matters of law, the causes of action for waiver and estoppel should be reserved for the trier of fact.

## Bad Faith Claim Handling

Perhaps the strongest of a plethora of feeble arguments by Continental for dismissal of Deauville's claims is the argument that neither D.C. nor Maryland recognizes a cause of action for bad faith claims handling. This bold assertion, however, is quickly qualified by the Continental cases, which show that Maryland allows bad faith claims under certain circumstances; the District has never definitively spoken on the point through it Court of Appeals, State Farm Mut. Auto Ins. Co. v. Hoang, 682 A.2d 202, 208 (D.C. 1996); and judges of this Court have divided on the question. Continental's argument is that since District Court judges have divided four to two against the conclusion that our local court would recognize a bad faith claim, this numerical edge is definitive on the issue. Yet most practitioners over the years have understood Erie v. Tompkins, 304 U.S. 64 (1938) to direct federal judges to seek to determine the controlling local law rather than define it themselves. Given this to still be the law, this Court may and should look at the facts of this case, as did prior federal judges who split their conclusions as to each case they decided, to see whether present circumstances permit this Court to independently evaluate what amounts to bad faith on the facts alleged. Unlike the cases concluding against a bad faith cause of action, the conduct of Continental here more fully comports with that of the defendant insurer in Central Armature Works Inc. v. Am. Motorists Ins. Co, 520 F.Supp. 283 (D.D.C. 1981) (attorneys fees and punitive damages allowed insured when insurer deceptively ignored bases for duty to defend or settle despite facts which mandated contrary conduct). There,

like the instant case, the primary carrier played cat and mouse with its insured, a small

company whose very existence depended on good faith claims handling.  The

undersigned represented the excess carrier in that case whose conduct was sufficiently

distinct from the primary insurer to warrant its complete avoidance of any liability.  To

the same result was Washington v. Group Hospitalization, Inc., 585 F. Supp 517, 520

(D.D. C. 1984) (factual showing of a lack of reasonable basis for denial of duty to

defend/pay).  Presently Deauville alleges facts that are not simply predicated in contract

but involve misrepresentation, fraud and purposeful conduct involving the carrier taking a

position which is completely the opposite of the prior course of dealing between the

parties as well as an attempt to fabricate a specimen policy to argue a lead paint exclusion

exists when earlier it knew otherwise and the insured has now come up with the actual

policy which has no such exclusion.  This is not the type of claim that prompted earlier

judges in this court to disallow bad faith claims for punitive damages and attorneys' fees

stemming from contract actions, but rather the mischief of Central Armature.  And these

are facts that the evidence will establish.

   Indeed it is worth comparing the cases relied on by Continental to show their

disparity from the present dispute.  In Fireman's Fund Ins. Co. v. CTIA, 480 F. Supp. 2d

7 (D.D.C. 2007), Judge Bates acknowledged this Circuit also has never interpreted D.C.

law to exclude a bad faith insurance claim given the correct circumstances. Messina v.

Nationwide Mut. Ins. Co., 302 U.S. App. D.C. 384, 998 F.2d 2, 4 (D.C. Cir. 1993).  But

he ruled against such a claim when the carrier involved had hardly acted irresponsibly in

initially advancing *pro rata* costs of defense and there was no evidence, such as in the

case here, of a party forging a controlling policy or other deceptive conduct.  Judge Bates

principally relied on Judge Flannery's decision in <u>Washington v. GEICO</u>, 769 F.Supp.

383 (D.D.C. 1991), but again that case had no insurer misconduct and only a dispute as to

the scope of policy coverage -- a clearly contractual disagreement and hardly comparable

to the carrier fraud in this case.  <u>See</u>, <u>Allen v. Yates</u>, 870 A.2d 39 (D.C. 2005).  Likewise,

Continental cites <u>Brand v. Gov't Employees Ins. Co.</u>, 2005 U.S. Dist. LEXIS 44787

(D.D.C. 2005) which again was a simple contract dispute as to the extent of uninsured

motorist coverage:

> Plaintiff has not pled that the breach of contract merged with any tort other than
> the bad faith insurance claim.

<u>Id</u>. at 16.

   <u>Brand</u> is hardly similar to the present dispute.  And so too with <u>American Nat.</u>

<u>Red Cross v. Travelers Indem. Co.</u>, 896 F. Supp 8, 11n.4 (D.D. C. 1995), a simple

coverage dispute over exhaustion of the policy's liability limits and affirmative defenses,

with the present issue addressed without discussion by Judge Harris only in a footnote.

   The two Maryland cases cited by Continental are equally unpersuasive.  For

example, <u>McCauley v. Suls</u>, 123 Md. App. 179, 716 A.2d 1129 (1997), an

uninsured/underinsured motorist action which turned on whether the carrier had the right

to control litigation as the determinative point concerning a bad faith claim.  The court

properly concluded that as the carrier was a defendant to the insured's suit, it committed

no bad faith.  <u>But see</u>, <u>Ross-Randolph v. Allstate Ins. Co.</u>, No. 99-3344, (D. Md 2001),

declining on a 12(b)(6) Motion to dismiss a bad faith denial claim when coupled with an

allegation of fraud.  Maryland, of course, does recognize a bad faith tort claim for an

insured to improperly refuse to settle a third-party claim, such as Figueroa's in the

underlying case.  <u>Kremen v. Md. Auto Ins. Fund.</u>, 363 Md. 663, 770 A.2d 170, 177

(2001); Fireman's Fund v. Continental Ins. Co., 308 Md. 315, 519 A.2d 202 (1987). On

the other hand, Vigilant Ins. Co. v. Luppino, 352 Md. 481, 723 A.2d 14 (1996), also cited

by Continental, is not much guidance as it was a statute of limitations decision; probably

bad law in the District, Knight v. Furlow, 553 A.2d 1232 (D.C. 1989); involved a non bad

faith claim; and while "the obligation to defend is contractual" as the court stated in dicta,

its violation when combined with other misconduct of an intentional nature not present

there, creates a separate claim.

Given the above, the unusual, if not unique facts of Continental's conduct in this

case does posit a viable bad faith claim. To rule otherwise, without discovery having

taken place, is to construe the facts most favorably to the misbehaving insurer -- contrary

to Rule 12(b)(6) precedent. And given the absence of controlling District of Columbia

law to preclude such a claim, especially when coupled with the present misrepresentation

and fraud allegations, is not fair basis to preemptively rule as demanded by Continental

on tenuous unrelated precedents.

### Negligent Misrepresentation and Fraud

Clearly Rule 9(b) requires specifics but apparently Continental chooses to read

the Deauville Counterclaim with selectivity. That document indicates Continental not

only acted inconsistently and wrongfully in interpreting the same policy involving the

same claims at the same site and the same insured, but then undertook to manufacture a

false rationale, when it denied coverage and then filed its Declaratory Judgment action,

that new documents had subsequently come to light showing a policy exclusion.

Continental argues this despite admitting the policy it now puts forth to rationalize its

position is its own combination of terms and conditions which are not part of the

exclusions or endorsement of the actual policy issued to Deauville. In the interim, the actual policy was obtained from Deauville's files which contradicts the Continental argument that this policy excluded lead paint claims.  It did not.  Continental knew the policy had no such exclusion; lied as to what it hoped it could persuade a court to the contrary; and now must pay for its duplicity.  This is classic fraud and Continental is well aware of its allegations here.

The footnote cite by Continental to <u>Anderson v. USAA Cas. Ins. Co.</u>, 221 FRD 250, 254 (D.D.C. 2004), indicates lack of fraud specificity under 9(b) dooms a negligent misrepresentation claim.  This seems odd and palpably bad law.  Rule 9(b) does not advert to pleading negligence, only fraud.  It is too commonplace to require citation that a negligence claim requires no more than the elements found in the Counterclaim. Judge Urbina's opinion clearly is not as sweeping as Continental claims but rather agrees with the above point that 9(b) "does not abrogate Rule 8's general requirements" <u>Id</u>. at 253. The lack of reliance argument is met by the basic fact that the Deauville defendants did not seek other available coverage for the known risk of lead-based paint claims as it had experienced Continental's defense of such a claim in the <u>Quijano</u> action and full settlement of it.  Now it suffers the expense of defending both the underlying Figueroa clam and this present Continental adventure.  The who, when, and where of the misrepresentation may be found in the entire Deauville pleading, particularly paragraphs 23, 27, 28, 35, paragraph (c) of the *ad damnum*, as well as Exhibit I to the Counterclaim, and Exhibit VI of the Motion to Dismiss filed by Continental.

A claim for common law fraud and/or negligent misrepresentation requires an allegation that plaintiff acted in reliance upon the misrepresentations.  <u>See</u>, <u>Pence v. U.S.</u>,

316 U.S. 332, 338, 86 L. Ed 1510, 62 S. Ct. 1080 (1941); <u>Esteves v. Esteves</u>, 680 A.2d

398, 401 n.1 (D.C. 1996). <u>Hall v. Ford Enterprises, Ltd</u>, 445 A.2d 610, 612 (D.C. 1982).

This was pled.  <u>See</u> Counterclaim at Fifth Cause of Action.  Likewise, the falsehood as to

coverage/defense was material and this was pled.  <u>Id</u>.  The Continental cases in no way

diminish this Deauville pleading undertaking, nor are they on point. <u>United States ex rel</u>

<u>Tolten v. Bombadier Corp.</u>, 286 F.3d 542, 351 U.S. App. D.C. 30 (2002)  (unrelated Fair

Claims Act case); <u>Chelsea Condo. Asso. v. 1815 A. St. Condo Gp. LLC</u>, 468 F.Supp 2d

136 (D.D.C. 2007) (certain claims lack common nucleus of operative facts) (any pleading

deficiencies under 9(b) require a court to freely grant leave to amend) (dismissal of fraud

claim denied); <u>Miller v. Holzmann</u>, No 95-1231, 2007 U.S. Dist. LEXIS 15598 (D.D.C.

2006) (sanctions imposed against U.S.). <u>Norment Sec. Grp. Inc. v. Travelers Cas & Ins.</u>

<u>Co.</u>, 505 F.Supp 2d 97 (D.D.C. 2007) (individuals not specified nor time as to payment

dates). (amendment allowed)(fraud claims clearly separate from contract allegations);

<u>Sass v. Andrew</u>, 832 A.2d 247, 152 Md. App. 406, 432 (2003) (case "rooted in a failure

to satisfy…contractual obligations" but "fraudulent design" is "more than that"); <u>Howard</u>

<u>v. Riggs Nat'l Bank</u>, 432 A.2d 701 (D.C. 1981) (elements of the tort and bank not subject

to D.C. Consumer Protection Act); <u>Hall v. Ford Enterprises</u>, 445 A. 2d 610 (D.C. 1982)

(reliance on decal insufficient misrepresentation); <u>Ellipso, Inc. v. Mann</u>, 460 F. Supp 2d

99 (D.D.C. 2006)(plaintiff failed to allege action taken in reliance on misrepresentation

and omitted material facts).

In sum, the "who, what, when and where "question implied in Rule 9(b) as to

whether the present fraud Count is satisfactorily pled, is answered by the false submission

by Continental in its Complaint for Declaratory Relief when it adverts to a make-believe

policy it constructed to include a lead paint exclusion which never existed; which it knew never existed when it earlier defended the Quijano case and settled it; which it intentionally fabricated to deny the present duty to defend and pay; and which sets a new low in insurer claims handling conduct.  Deauville relied on the earlier false representation of such lead paint claim coverage based on the conduct of Continental in handling the Quijano claim, regardless of the pro forma reservation of rights, which was meaningless in the event.  Such apparent falsehood was material and has prejudiced Deauville by the cost to defend the Figueroa case; pay a judgment if one is entered adverse to its interests; and incur the costs of this litigation.  The responsible individuals at Continental begin with Lisa La. Conte, the claims consultant handling the Figueroa claims file (see Deauville Exhibit V to is Answer and Counterclaim) and undoubtedly others whose identity for this misconduct will be sought in discovery.  All of this detail must be a sufficient predicate to sustain the fraud, negligent misrepresentation and consumer protection procedures act claims.  Cohen v. Entangible. Com., No. 00-1168 2000 U.S. Dist. LEXIS 19527 (D. Md. 2000); (entirety of conduct by defendant false and deceitful thus sufficient for Rule 9(b));  Windsor Ass'n Inc. v. Greenfield, 564 F. Supp 273, 279-280 (D. Md. 1983)(Rule 9(b) satisfied by description of fraudulent scheme, acts undertaken, and consequences); U.S. ex rel McCready v. Columbia/HCA Healthcare Corp., 251 F. Supp 2d 114 (D.D.C. 2003) (Rule 9(b) satisfied in fraud case when party made aware of particular circumstances for which to prepare a defense); Evans v. Chase Manhattan Mort. Corp., No. 04-2185 (D.D. C. 2005) (D.C. Consumer Prot. Proc. Act to be read broadly and fraud/negligent misrepresentation go forward unless no facts alleged that permit a contrary finding); Cooper v. First Govt. Mort. and Investors Corp., 206 F.

16

Supp 2d 33 (D.D. C. 2002) (fraud action avoids 12(b)(6) dismissal of D.C. Consumer

Prot. Proc. Act claim since the statute must be read comprehensively to provide a remedy

for all improper trade practices).

**D.C. Consumer Protection Procedures Act**

Continental argues that dismissal of the District of Columbia Consumer

Protection Procedures Act claim of Deauville is warranted since no damages have been

suffered.  The expense of defending two parallel actions is ignored and the exposure to a

potential adverse judgment in the pending Superior Court proceeding is likewise viewed

as "vague." Yet in Evans, supra and Cooper, supra , this Court has rejected a narrow

reading of D.C. Code § 28-3901 et seq. and denied motions to dismiss claims far more

uncertain than at present.  Indeed, in Athridge v. Aetna Cas. & Sur. Co., 359 U.S. App.

D.C. 22, 351 F.3d 1166, 1175-1176 (2003), this Circuit in a case involving a carrier's

disputed denial of coverage, indicated that the Act does not require harm if a

misrepresentation is shown. Id. at 1176.  Further it found the Act applicable to insureds as

"consumers" purchasing "services" Id. Under the Act, all that must be alleged is the

misrepresentation of a material fact which has a tendency to mislead subsequently.  See

Banks v. D.C. Dept. of Consumer Affairs, 634 A.2d 433, 439 (D.C. 1993).  This

misleading is precisely what Continental did here by its earlier conduct in the Quijano

case in 1998 and by its manufacturing of a policy exclusion never present in the actual

document sold to Deauville in 1995.  As this misconduct is clearly alleged in the

Counterclaim and the cases from this Court require, no more, the present effort to dismiss

Deauville's Count related to violations of the Act by Continental is just silly.

17

In <u>Osborne v. Cap. City Mort. Corp.</u>, 667 A.2d 1321 (D.C. 1995), cited by Continental, the D.C. Court of Appeals reversed summary judgment by the trial court as to consumer protection claims and inter alia indicated allegations of misrepresentation by a consumer are sufficient to proceed to trial, with proof of damages at trial a prerequisite for recovery of punitive damages.  Continental also cites <u>Adams v. NVR Homes Inc.</u>, 193 FRD 243 (D. Md. 2000) involving Maryland's, not DC's Consumer Protection Act, and the court there failed to address any aspects of that statute in simply dismissing some general fraud claims for lack of specificity.  It also cites cases form Delaware, Kansas, Texas, New Jersey and Illinois which also do not deal with the D.C. Act nor similar facts to those present in the instant matter.  They are beside the point and reflect a certain uncertainty as to the efficacy of its motion on this particular claim.  It should be so treated and the argument rejected.

### <u>Conclusion</u>

For the good and valid reasons provided above, the pertinent case law in the District and in Maryland, and a common sense reading of the factual assertions in the Counterclaim, the Motion to Dismiss Counts II through VII should be denied.

Respectfully submitted

<u>            /s/            </u>
Joseph F. Cunningham #65532
CUNNINGHAM & ASSOCIATES
1600 Wilson Blvd. Suite 905
Arlington, VA 22209
Telephone: (703) 294-6500
E-mail: cuninghamlawofc@aol.com
*Attorney for Defendants John R.*
*Redmond, Deauville Limited*

18

*Partnership, Deauville Associates,
Limited Partnership, and Mount
Pleasant Street Revocable Trust*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of December, 2007, a true and accurate copy of the foregoing **Memorandum and Points of Authority in Opposition to Continental's motion to Dismiss Counterclaims** was sent by facsimile and first-class mail, postage prepaid, to:

Thomas C. Cardaro, Esq.
Cardaro & Peek, LLC
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
*Attorney for Defendant Figueroa*

Gabriela Richeimer, Esq.
Ross, Dixon & Bell, LLP
200 K Street, NW
Washington DC 20006-1040
*Attorney for Plaintiffs*

_____/s/_____
Daniel A. Glass

20

*A Partnership Including
Professional Corporations*
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
202-756-8000
Facsimile 202-756-8087
www.mwe.com

Boston
Chicago
London
Los Angeles
Miami
Moscow
New York
Orange County
Silicon Valley
Vilnius
Washington, D.C.

**Mark A. Collins**
Attorney at Law
macollins@mwe.com
202-756-8239

## McDermott, Will & Emery

November 9, 2001

Mr. John Redmond
7312 Brookstone Court
Potomac, Maryland  20854

    RE:   *Quijano v. Redmond*
           Our file No. 59218-037



Dear Mr. Redmond:

      I am pleased to report that we have reached a settlement in this matter, to be funded in its entirety by CNA.  We are in the process of drafting and agreeing upon the language of the settlement documents, and the settlement must still be approved by the Court.  Nonetheless, I am confident that the matter will be resolved completely in the next few weeks.

      Once the settlement documents are finalized, I will forward copies to you for your review and execution.  Your presence will not be required at the hearing to approve the settlement, although you are welcome to attend if you wish.

      I will continue to keep you informed of developments.  Of course, should you have any questions or comments regarding the case, please do not hesitate to contact me.

                  Sincerely,

                  Mark A. Collins

MAC:jeh

WDC99 518488-1.059218.0037


EXHIBIT
VI

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA**

CONTINENTAL CASUALTY
COMPANY, et al.                                    Case: 1:07 – cv- 01818 (ESH)

               Plaintiffs

v.

DEAUVILLE ASSOCIATES,
LIMITED PARTNERSHIP, et al.

               Defendants

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion to Dismiss the Counterclaims and

Defendants Deauville Associates, Limited Partnership, Deauville Limited Partnership,

Mount Pleasant Street Revocable Trust, and John R. Redmond's Memorandum and

Points of Authority in Opposition to Continental's Motion to Dismiss Counterclaims, on

this _____ day of _____, 2007 it is hereby,

ORDERED, that defendant Continental's Motion to Dismiss is hereby, DENIED.

_____
JUDGE ELLEN S. HUVELLE

Copies to:


Thomas C. Cardaro, Esq.
Cardaro & Peek, LLC
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
*Attorney for Defendant Figueroa*

Gabriela Richeimer, Esq.
Ross, Dixon & Bell, LLP
200 K Street, NW
Washington DC 20006-1040
*Attorney for Plaintiffs*

Joseph F. Cunningham, #65532
Cunningham & Associates, PLC
1600 Wilson Blvd., Suite 905
Arlington, Virginia 22209
*Attorneys for Defendants John R. Redmond,*
*Deauville Limited Partnership,*
*Deauville Associates, Limited Partnership,*
*and Mount Pleasant Street Revocable Trust*